LAW OFFICES OF BRIAN C. LEIGHTON
BRIAN C. LEIGHTON (SBN 090907)
701 Pollasky Avenue
Clovis, CA  93612
Phone: (559) 297-6190
Fax (559) 297-6194
bleighton@arrival.net

LAWRENCE M. HADLEY (SBN 157728)
hadleyl@hbdlawyers.com
OMER SALIK (SBN 223056)
saliko@hbdlawyers.com
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:      (213) 694-1200
Facsimile:      (213) 694-1234

THE LAW OFFICES OF RALPH B. WEGIS
RALPH B. WEGIS (SBN 67966)
1930 Truxtun Avenue
Bakersfield, CA  93301
Telephone:  (661) 635-2100
Facsimile:  (661) 635-2107

Attorneys for Plaintiffs
DELANO FARMS COMPANY; FOUR STAR FRUIT, INC.; GERAWAN FARMING, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANO FARMS COMPANY; FOUR STAR FRUIT, INC.; GERAWAN FARMING, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CALIFORNIA TALE GRAPE COMMISSION,<br><br>Defendants. | Case No. 1:07-cv-01610-OWW-SMS<br><br>**PLAINTIFFS' OPPOSITION TO THE CALIFORNIA TABLE GRAPE COMMISSION'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date:      January 18, 2008<br>Time:      10:00 a.m.<br>Judge:     Hon., Oliver W. Wanger<br>Crtrm:     #3 |

*Side margin (vertical):* HENNIGAN, BENNETT & DORMAN LLP / LAWYERS / LOS ANGELES, CALIFORNIA

TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................1

ARGUMENT .......................................................................................................3

I.     THE UNITED STATES IS NOT AN INDISPENSABLE PARTY IMMUNE FROM
       SUIT..........................................................................................................3

       A.     THE UNITED STATES IS NOT A NECESSARY PARTY TO THIS
              LAWSUIT .......................................................................................5

       B.     JOINDER OF THE UNITED STATES IS FEASIBLE, BECAUSE IT IS
              NOT IMMUNE FROM THIS LAWSUIT ................................11

       C.     EVEN IF THE UNITED STATES WERE A NECESSARY PARTY AND
              SOVEREIGN IMMUNITY PREVENTED IT JOINDER IN THIS ACTION,
              THE UNITED STATES IS NOT AN INDISPENSABLE PARTY
              REQUIRING DISMISSAL ...........................................................13

II.    PLAINTIFFS HAVE PLEAD AN INTENT TO DECEIVE SUFFICIENT TO
       SUSTAIN A CLAIM OF INEQUITABLE CONDUCT..................................17

III.   PLAINTIFFS HAVE PROPERLY PLEAD A "WALKER PROCESS" ANTITRUST
       CLAIM.....................................................................................................19

       A.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A RELEVANT
              MARKET .......................................................................................19

       B.     THE COMMISSION ACTIVELY PARTICIPATES IN THE RELEVANT
              MARKETS, AND PLAINTIFFS HAVE SO ALLEGED. ...................22

       C.     PLAINTIFFS HAVE STANDING TO SUE FOR ANTITRUST DAMAGES....23

IV.    THE FACTS ALLEGED BY PLAINTIFFS SUPPORTS A CLAIM FOR PATENT
       MISUSE...................................................................................................24

V.     PLAINTIFFS HAVE ALLEGED UNLAWFUL CONDUCT AND HARM
       SUFFICIENT TO SUSTAIN A CAUSE OF ACTION FOR UNFAIR
       COMPETITION.........................................................................................27

VI.    PLAINTIFFS CLAIM FOR UNJUST ENRICHMENT AND CONSTRUCTIVE
       TRUST SHOULD NOT BE DISMISSED. ....................................................29

VII.   THE ALLEGATIONS THE COMMISSION SEEKS TO STRIKE ARE
       RELEVANT AND DIRECTLY RELATED TO PLAINTIFFS' CAUSES OF
       ACTION...................................................................................................29

VIII.  IF ANY CLAIMS ARE DISMISSED, PLAINTIFFS SHOULD BE ALLOWED TO
       AMEND THEIR PLEADING.......................................................................31

CONCLUSION ..................................................................................................32

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 1:07-cv-01610-OWW-SMS                    OPPOSITION TO MOTION TO DISMISS

<u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*A.L. Smith Iron Co. v. Dickson,*
  141 F.2d 3 (2d Cir. 1944) ...............................................................................5

*Agron, Inc. v. Chien-Lu Lin,*
  2004 U.S. Dist. LEXIS 26605 (C.D. Cal. 2004) .........................................24

*Airweld, Inc. v. Airco, Inc.,*
  742 F.2d 1184 (9th Cir. 1984) ....................................................................24

*Anderson Company v. Trico Products Corp.,*
  237 F. Supp. 834 (W.D.N.Y.1964) ..............................................................26

*Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.,*
  300 F.3d 620 (5th Cir. 2002) .......................................................................22

*Bauer & Cie v. O'Donnell,*
  229 U.S. 1 (1913) .........................................................................................27

*Big Bear Lodging Association v. Snow Summit, Inc.,*
  182 F.3d 1096 (9th Cir. 1999) .....................................................................22

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) .....................................................................31

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962) .....................................................................................20

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
  157 F.3d 1340 (Fed.Cir.1998) .....................................................................25

*California v. American Stores Co.,*
  495 U.S. 271 (1990) .....................................................................................30

*Cal-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) .................................................................................28

*Capri Jewelry Inc. v. Hattie Carnegie Jewelry Enter., Ltd.,*
  539 F.2d 846 (2d Cir. 1976) ..........................................................................5

*Carpenters Local Union No. 1846 etc. v. Pratt-Farnsworth, Inc.,*
  690 F.2d 489 (5th Cir. 1982) .......................................................................21

*Chatham Brass Co., Inc. v. Honeywell, Inc.,*
  512 F. Supp. 108 (S.D.N.Y. 1981) ..............................................................24

*Conceptual Engineering Associates, Inc. v. Aelectronic Bonding, Inc.,*
  714 F. Supp. 1262 (D.R.I. 1989) .................................................................21

*Conley v. Gibson,*
  355 U.S. 41 (1957) .......................................................................................21

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 1:07-cv-01610-OWW-SMS                    OPPOSITION TO MOTION TO DISMISS

TABLE OF AUTHORITIES (continued)

Page

*Dainippon Screen Mfg. Co., Ltd. v. CFMT,*
   142 F.3d 1266 (Fed. Cir. 1998) ...........................................................................14

*DCD Programs, Ltd. v. Leighton,*
   833 F.2d 183 (9th Cir. 1987) .................................................................................31

*Eastman Kodak Co. v. Image Technical Service, Inc.,*
   504 U.S. 451 (1992) ...............................................................................................21

*Eminence Capital, LLC, v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ..............................................................................31

*Enzo APA & Son, Inc. v. Geapag A.G.,*
   134 F.3d 1090 (Fed. Cir. 1998) ..............................................................................6

*Extractol Process v. Hiram Walker & Sons,*
   153 F.2d 264 (7th Cir. 1946) .................................................................................27

*General Industries Corp. v. Hartz Mountain Corp.,*
   810 F.2d 795 (8th Cir. 1987) .................................................................................24

*H.J., Inc. v. International Telephone & Telegraph Corp.,*
   867 F.2d 1531 (8th Cir. 1989) ..............................................................................24

*Heighley v. J.C. Penny Life Ins. Co.,*
   257 F.Supp.2d 1241 (C.D. Cal. 2003) (quoting *Walker v. Countrywide Home Loans, Inc.,* 98
   Cal. App. 4th 1158 (2002) .....................................................................................28

*Helen Curtis Indus., Inc. v. Sales Affiliates, Inc.,*
   199 F.2d 732 (2d Cir. 1952) .................................................................................14

*Hook v. Hook & Ackerman, Inc.,*
   187 F.2d 52 (3d Cir. 1951) ...................................................................................14

*Howey v. United States,*
   481 F.2d 1187 (9th Cir. 1973) ..............................................................................31

*Illinois Tool Works, Inc. v. Independent Ink, Inc.,*
   126 S. Ct. 1281 (2006) ..........................................................................................22

*In re Allustarte,*
   786 F.2d 910 (9th Cir. 1986) ..................................................................................6

*Key Pharmaceuticals, Inc. v. Lowey,*
   373 F. Supp. 1190 (1974) .....................................................................................25

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) (quoting *Cal-Tech,* 20 Cal. 4th at 180) .........................28

*Krampe v. Ideal Industries, Inc.,*
   347 F. Supp. 1384 (N.D.Ill.1972) .........................................................................25

*Levine v. Safeguard Health Enterprises, Inc.,*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-iii-

OPPOSITION TO MOTION TO DISMISS

TABLE OF AUTHORITIES (continued)

Page

32 Fed. Appx. 276, 2002 WL 464466 (9th Cir.2002) ...........31

*LoneStar Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001)...........31

*Lunsford v. United States*,
570 F.2d 221 (8th Cir.1977) ...........29

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed.Cir.1992)...........25

*Massa v. Jiffy Products Co.*,
240 F.2d 702 (9th Cir. 1957)...........7

*Massachusetts v. Russell Stover Candies, Inc.*,
541 F. Supp. 143 (D. Ma. 1982) ...........30

*McKell v. Washington Mutual, Inc.*,
142 Cal. App. 4th 1457 (Cal. Ct. App. 2006) ...........28

*McLain v. Real Estate Board, Inc.*,
444 U.S. 232 (1980) ...........21

*MedImmune, Inc. v. Genentech, Inc.*,
127 S. Ct. 764 (U.S. 2007)...........3

*Monsanto Co. v. McFarling*,
302 F.3d 1291 (Fed. Cir. 2002) ...........26

*N.V. Akzo v. E. I. Du Pont de Nemours & Co.*,
810 F.2d 1148 (Fed. Cir. 1987) ...........18

*Network Signatures, Inc. v. ABN-AMRO, Inc.*,
2007 U.S. Dist. LEXIS 48332 (C.D. Cal. Apr. 10, 2007) ...........10

*New York Univ. v Autodesk, Inc.*,
466 F Supp 2d 563 (S.D.N.Y. 2006) ...........12

*Nutrition 21 v. Thorne Research, Inc.*,
130 F.R.D. 671 (D. Wash. 1990) ...........12

*Nutrition 21 v. Untied States*,
930 F.2d 862 (Fed. Cir. 1991)...........10, 12

*Pennsalt Chemicals Corp. v. Dravo Corp.*,
240 F.Supp. 837 (E.D.Penn. 1965)...........10

*Reich v. Reed Tool Co.*,
582 S.W.2d 549 (Tex. App. 1979) ...........26

*Resolution Trust Corp. v. Gibson*,
829 F.Supp. 1103 (W.D.Mo.1993)...........29

Case No. 1:07-cv-01610-OWW-SMS          OPPOSITION TO MOTION TO DISMISS

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

TABLE OF AUTHORITIES (continued)

Page

*Shuffle Master, Inc. v. Awada,*
 2006 U.S. Dist. LEXIS 71748, 14-15 (D. Nev. 2006) ...........................................21

*Silver v. New York Stock Exchange,*
 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) ........................................30

*Speedplay, Inc. v. Bebop Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) ...................7

*Stanbury Law Firm, P.A. v. Internal Revenue Service,*
 221 F.3d 1059 (8th Cir. 2000) ..............................................................................29

*Tanaka v. University of Southern California,*
 252 F.3d 1059 (9th Cir. 2001) ..............................................................................22

*The Dow Chem. Co. v. Exxon Corp.,*
 139 F.3d 1470 (Fed. Cir. 1998) ...............................................................................5

*Vaupel Textilmaschinen KP v. Maccanica Euro Italia S.P.A.,*
 944 F.2d 870 (Fed. Cir. 1991) .................................................................................8

*Walker Distributing Co, v. Lucky Lager Brewing Co.*,
 323 F.2d 1 (9th Cir. 1963) .....................................................................................21

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
 382 U.S. 172 (1965) ...............................................................................................19

*Zenith Radio Corp. v. Hazeltine Res., Inc.,*
 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) ..................................25, 30

**Statutes**

Cal. Bus. & Prof. Code
 Section 17200..........................................................................................................28

Federal Rules for Antitrust Claims
 Section 2.................................................................................................................21

Sherman Act
 Section 2.................................................................................................................19

Title 28, U.S.C.
 Section 1498.....................................................................................................11, 12

Title 35, U.S.C.
 Section 207(a)(2).............................................................................................10, 12

**Other Authorities**

2 James Wm. Moore et al., Moore's Federal Practice
 Section 12.37[1] (3d ed. 2000)..............................................................................29

Case No. 1:07-cv-01610-OWW-SMS          OPPOSITION TO MOTION TO DISMISS

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Page

5 Wright & Miller, Federal Practice and Procedure: Civil
Section 1380 (1969) ........................................................................................29

Chisum, Donald S., Chisum on Patents
Section 19.03[4] (2007) ...................................................................................18

**Rules**

Fed. R. Civ. P.
Rule 19(a) .......................................................................................................12

Fed. R. Civ. P.
Rule 9(b) ..................................................................................................18, 19

U.S. Department of Agriculture
Rule 19(b) ..............................................................................................passim

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 1:07-cv-01610-OWW-SMS                OPPOSITION TO MOTION TO DISMISS

# INTRODUCTION

In an effort to avoid adjudication of its enforcement of invalid and fraudulently procured patents, the California Table Grape Commission ("the Commission") raises a litany of purported grounds for which to dismiss the Complaint of Plaintiffs Delano Farms Company, Four Star Fruit, Inc. and Gerwan Farming, Inc. (collectively "Plaintiffs"). Each of the issues raised by the Commission is based on either a misstatement or omission of controlling law, a mischaracterization of the allegations in Plaintiffs' Complaint, or both.

The Commission first argues that the Complaint should be dismissed, because the United States Department of Agriculture ("USDA") is a necessary and indispensable party, who cannot be joined due to sovereign immunity, and because the discretionary factors of Rule 19(b) dictate dismissal rather than proceeding. The Commission is incorrect on each point. The USDA is not a necessary party, because (1) declaratory relief actions challenging validity may proceed against exclusive licensees who do not have an absolute right to sue, and (2) the USDA transferred all substantial rights to the patents-in-suit to the Commission in an exclusive license agreement. Additionally, the Administrative Procedure Act waives federal sovereign immunity for non-monetary claims against the United States, and this case seeks no monetary relief against the United States. Finally, even if the USDA were a necessary party and even if its joinder were not feasible, the factors of Rule 19(b) dictate that this lawsuit should proceed and not be dismissed. Whereas the Commission fails to cite a single case in which a declaratory relief claim for invalidity against an exclusive licensee has been dismissed for failure to join the patent owner, many courts have held that such suits for patent invalidity should proceed without the patent owner, even when the owner is a necessary party who cannot be joined.

The Commission next argues that Plaintiffs have failed to state a claim for inequitable conduct with respect to the Sweet Scarlet patent, because the Complaint does not recite the words "fraudulent intent." The Commission ignores nearly all of the allegations made by Plaintiffs regarding inequitable conduct, including (1) the named inventors knew of material prior art – the public use and sale by growers ultimately given "amnesty" more than a year before the filing of the

OPPOSITION TO MOTION TO DISMISS

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   patent application, (2) the named inventors new that the prior art was material to patentability, (3)

2   the named inventors failed to adequately disclose their knowledge of the prior art to the Patent and

3   Trademark Office ("PTO"), and (4) the named inventors breached their duty of candor to the PTO.

4   Under controlling law, these allegations are more than sufficient to state a claim for inequitable

5   conduct.

6          The Commission next seeks to dismiss Plaintiffs' antitrust claim by alleging that Plaintiffs

7   have failed to identify a relevant market.  But Plaintiffs have alleged a proper market, namely the

8   worldwide markets for Sweet Scarlet, Autumn King and Scarlet Royal grapevines.  While the

9   Commission may disagree with this relevant market definition, such an identification plainly

10  suffices at the pleading stage.  The Commission also asserts that the Commission does not

11  participate in the relevant market, and that Plaintiffs lack standing to sue for antitrust violations.  In

12  doing so, the Commission ignores wholesale portions of the Complaint identifying the

13  Commission's active participation in the market for grapevines of the the patented varieties, and

14  improperly narrows the damages to Plaintiffs arising from the Commission's anticompetitive

15  activities.  Properly read, the Complaint more than satisfies the pleading requirements for an

16  antitrust claim.

17         The Commission next argues that Plaintiffs have failed to state a claim for patent misuse.

18  The Commission once again attempts to narrow and ignore relevant allegations.  Plaintiffs'

19  Complaint contains several allegations pertaining to the Commission's attempt to extend improperly

20  the scope of its patent monopoly.  Taken as a whole, these allegations support a claim of misuse.

21         The Commission then contends that Plaintiffs have failed to state a claim for unfair

22  competition under California law.  As the Commission has noted to this Court in the past,

23  California's unfair competition law is "broad" and "sweeping" and may include a vast range of

24  unlawful or unfair conduct.  The Complaint contains numerous allegations of such unlawful and

25  unfair conduct by the Commission to support a claim of unfair competition.

26         The Commission also seeks to dismiss the unjust enrichment claims and constructive trust

27  claims on the basis that Plaintiffs' other claims should be dismissed.  The Commission concedes that

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    if Plaintiffs' other claims are not dismissed, these claims should be allowed to remain.

2           Finally, the Commission seeks to strike various portions of Plaintiffs' Complaint.  Each of

3    the portions the Commission seeks to strike are either highly relevant to Plaintiffs' claims or are not

4    the proper subject of a motion to strike.  Indeed, the controlling law makes clear that striking any

5    portion of a Complaint is an extreme measure that rarely should be granted.  For these reasons, the

6    Commission's motion should be denied in its entirety.  If the Court should grant any of the

7    Commission's grounds for dismissal, leave to amend should be granted.

8                                                    **ARGUMENT**

9    **I.     THE UNITED STATES IS NOT AN INDISPENSABLE PARTY IMMUNE FROM**

10   **        SUIT**

11          Last year, the Supreme Court held that patent licensees need not "break or terminate" license

12   agreements, thus exposing themselves to infringement suits, before seeking a declaratory judgment

13   that the underlying patents are invalid or unenforceable.  *MedImmune, Inc. v. Genentech, Inc.*, 127

14   S. Ct. 764, 777 (U.S. 2007).  Here, to acquire and grow the Sweet Scarlet, Autumn King, and Scarlet

15   Royal table grape varieties (the "Patented Varieties"), Plaintiffs were required to enter into patent

16   license agreements with the Commission, which obligated Plaintiffs to pay royalties and subjected

17   Plaintiffs to detailed restrictions on the use of the Patented Varieties – all subject to severe penalties

18   for violation.  In accordance with *MedImmune*, Plaintiffs seek relief in this action from the

19   Commission's improper licensing requirements by requesting a declaration that the patents are

20   invalid and unenforceable.

21          In moving to dismiss, the Commission argues that the USDA – the owner of the patents – is

22   a necessary and indispensable party, who cannot be joined based on sovereign immunity.  The

23   Commission concedes that if it sued Plaintiffs for infringement or breach of the license agreements,

24   Plaintiffs could counterclaim for invalidity, without joining the USDA, just as in the case previously

25   before this Court.  (Mot. at 9, 14; *California Table Grape Comm'n v. RB Sandrini, Inc.*, No. 06-

26   00842 (E.D. Cal.).)  Moreover, the Commission does not (and cannot) dispute that it could

27   adequately represent the USDA's interests in any claim for declaratory relief for invalidity, just as it

28                                                        -3-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

did in the prior Sandrini case.  But here, where Plaintiffs sued for relief under the license, without first breaching the license agreements and exposing themselves to an infringement lawsuit, the Commission argues that the case cannot proceed without the USDA.  The Commission offers only one reason:  In the exclusive license agreements between the Commission and the USDA, "the Commission cannot file an infringement action without first obtaining authorization from the USDA." (Mot. at 8.)  In other words, the Commission asks this Court to find that the federal government can exclusively license its patents for sublicensing and enforcement, while completely avoiding invalidity and unenforceability challenges, so long as it reserves the final "o.k." before allowing its exclusive licensee to sue an alleged infringer.  Accepting this argument would turn *MedImmune* on its head when the federal government owns the patent at issue – a result particularly disturbing since the Supreme Court began its *MedImmue* analysis "with the recognition that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."  *MedImmune*, 127 S.Ct. at 772.

Aside from the Supreme Court's *MedImmune* analysis, the Commission's Rule 19(b) arguments still fail on each point.  First, the Commission is flat wrong in its argument that the necessary defendants to a claim for declaratory relief of invalidity are the same as the necessary plaintiffs to a patent infringement action.  Also, even by reserving authorization for patent infringement suits, the USDA still has transferred to the Commission more than enough rights in the patents to allow suits against the Commission alone for declaratory judgment of invalidity.  Second, the doctrine of sovereign immunity does not shield the USDA from declaratory judgment lawsuits for patent invalidity and unenforceability, particularly where (as here) the USDA has exclusively licensed its patents for sublicensing.  Indeed, sovereign immunity to such actions is expressly waived under 5 U.S.C. § 702.  Third, even if the USDA were a necessary party (which it is not), and even if it could not be joined based on sovereign immunity (which it can), the Rule 19(b) factors for discretionary dismissal still demand that this case proceed.  At the very least, the Commission has already proven it can fully protect the USDA's interest in the face of an invalidity challenge.  Moreover, the USDA can intervene at any time, and the public interest demands that the validity of

1  these patents be adjudicated.

2       **A.      The United States Is Not A Necessary Party To This Lawsuit**

3            The Commission contends that the United States is a necessary party because the United

4  States "owns" the patents-in-suit.  (Motion, pp. 5-10.)  The Commission's argument rests entirely on

5  the premise that the necessary and indispensable defendants in an action for declaratory judgment of

6  patent invalidity are the same as the necessary and indispensable plaintiffs in an action for patent

7  infringement.  They are not.  In cases overlooked by the Commission, courts have applied a different

8  standard in determining the Rule 19 necessary and indispensable defendants in actions for

9  declaratory judgment of invalidity.  Even if patent owners must join as plaintiffs in actions for patent

10 infringement, courts have allowed declaratory judgment actions for invalidity to proceed against

11 exclusive licensees without joining the patent owner.  See *A.L. Smith Iron Co. v. Dickson*, 141 F.2d

12 3, 6-7 (2d Cir. 1944); *Capri Jewelry Inc. v. Hattie Carnegie Jewelry Enter., Ltd.*, 539 F.2d 846, 852-

13 53 (2d Cir. 1976); *The Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1479 (Fed. Cir. 1998).  In

14 *A.L. Smith*, the parties and the Court agreed that a licensee would have lacked standing to sue for

15 patent infringement without joining the patent owner as a necessary plaintiff.  *A.L. Smith*, 141 F.2d

16 at 5.  Nonetheless, the Second Circuit held that in a declaratory judgment action by the infringer

17 against the licensee, the patent owner was not a necessary party.  Judge Learned Hand explained the

18 rationale for a different rule for declaratory judgment actions against licensees:

19          The ordinary case of a suit by a licensee against an infringer is in no sense the same.
            It is indeed true that a mere licensee may have an interest at stake in such a suit….
20          The reason why he is not permitted to sue is not because he has nothing to protect.
            But against that interest is the interest of the infringer to be immune from a second
21          suit by the owner of the patent; and also the interest of the patent owner to be free to
            choose his forum….  These two interests in combination have been held to
22          overweigh any interest of the licensee; and whether or not the conclusion was right, it
            is at least clear that there is no comparison between that situation and the one at bar.
23          As res integra there can therefore be no warrant for making the presence of the
            [patent owner] a condition upon this action.

24

25 *Id.* at 6.

26          Most recently, in *Dow Chemical*, the Federal Circuit reached the same conclusion.

27 Specifically, the Federal Circuit affirmed that the patent owner was not an indispensable party to the

28                                                    -5-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   declaratory judgment suit for patent invalidity.  *The Dow Chem. Co.*, 139 F.3d at 1479.  In allowing

2   a declaratory judgment suit for patent infringement to proceed against an exclusive licensee without

3   joinder of the patent owner, the Federal Circuit reasoned that "'as a practical matter, [the licensee]

4   has both the duty and the capability of protecting [the patent owner's] interests.'…See *In re*

5   *Allustarte*, 786 F.2d 910, 919 (9th Cir. 1986) ("Joinder is not required when the absent parties'

6   interests are adequately protected by those who are present.")." *Id*.  Thus, even if the Commission

7   could not sue for infringement alone without receiving "authorization" from the USDA under the

8   exclusive license agreements, the Commission still retains sufficient interest, and freely exercises

9   sufficient rights in the patents, to stand as the sole defendant in actions for declaratory judgment of

10  invalidity and unenforceability when asserted by a licensee of the Commission.

11          The Commission fails to cite a single case in which a claim for declaratory relief for

12  invalidity against an exclusive licensee has been dismissed for failing to join the patent owner.

13  Rather, in arguing that a patent owner must be joined in an action seeking to declare a patent invalid

14  if he would be a necessary party to a suit for infringement, the Commission relies on *Enzo APA &*

15  *Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998).  (Mot. at 7.)  But *Enzo* is entirely

16  inapposite.  In *Enzo*, the parties did not dispute that the alleged exclusive licensee in fact held ***no***

17  ***rights*** to the patent at issue at the time it sued the accused infringer.  *Id*. at 1092.  After filing suit,

18  the owner and alleged exclusive licensee attempted to "clear the chain of title" through a "*nunc pro*

19  *tunc* assignment."  *Id*.  But the Federal Circuit held that *nunc pro tunc* assignments cannot

20  retroactively confer standing to sue for infringement.  Rather, a plaintiff must have standing to sue

21  for infringement at the time an infringement action is filed.  *Id*. at 1093-94.  Since the alleged

22  licensee had ***no*** rights in the patent at the time it sued for infringement, it had no rights in the patent

23  at the time the accused infringer sued for declaratory relief for non-infringement.  Nor had the

24  alleged exclusive licensee granted any licenses.  Unlike *Enzo*, there is no dispute that the

25  Commission was an exclusive licensee at the time Plaintiffs filed this action seeking declaratory

26  relief, and had licensed all three patents to Plaintiffs.[1]

27  _____

    [1] The only other case that the Commission cites in support of its "reciprocity" argument is *Massa v.*

28                                                  -6-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    Even if the Commission were correct in its assertion that patent owners must be joined in

2    suits for declaratory judgment of invalidity if the owners are necessary plaintiffs in infringement

3    suits, which it is not, the United States is still not a necessary party to this case because the

4    Commission holds all substantial rights in the patent.  In its motion, the Commission agrees that an

5    exclusive licensee may sue for patent infringement on its own if it holds "all substantial patent

6    rights."  (Mot. at 7 (quoting *Intellectual Prop. Dev. Inc., v. TCI Cablevision of Cal.*, 248 F.3d 1333,

7    1347 (Fed. Cir. 2001).)  But the Commission never explains what constitutes "all substantial patent

8    rights."  Instead, the Commission simply argues, *ipse dixit*, that the Commission lacks it, because

9    the USDA must authorize infringement suits.  (Mot. at 8-10.)

10    In arguing that this authorization deprives the Commission of all substantial patent rights, the

11    Commission ignores both the facts and law.  Under patent law, "[a] party that has been granted all

12    substantial rights under the patent is considered the owner regardless of how the parties characterize

13    the transaction that conveyed those rights."  *Speedplay, Inc. v. Bebop Inc.*, 211 F.3d 1245, 1250

14    (Fed. Cir. 2000).  In considering the proper parties to patent litigation where rights are divided

15    between owners and exclusive licensees, the Federal Circuit has held that "the proper focus is on

16    'the substance of what was granted.'"  *Id*.  In other words, courts must consider the ***effect*** of the

17    license in determining whether all substantial rights are granted to a licensee.  *Id*.  In determining

18    whether a license has the effect of conveying all substantial rights in a patent, courts must "ascertain

19    the intention of the parties and examine the substance of what was granted."  *Vaupel*

20    *Jiffy Products Co.*, 240 F.2d 702 (9th Cir. 1957) (Mot. at 7.)  But *Massa* is equally off base.  First,
21    *Massa* involved a counterclaim to an infringement suit for patent invalidity.  Even the Commission
      concedes that a counterclaim for a declaration of invalidity would be proper without joining the
22    United States, just as in the *Sandrini* case.  (Mot. at 14.)  Second, in *Massa*, it was unclear what
      patent rights, if any, had been granted to the original counterclaim defendant.  Thus, the trial court
23    joined the patent owner (Massa) as a involuntary defendant to the invalidity counterclaim (among
      others).  After Massa defaulted, the trial court declared the patent invalid.  *Id*. at 704-05.  On appeal,
24    Massa argued that the invalidity judgment should be set aside because he was not properly joined.
      In rejecting Massa's argument, the Ninth Circuit only found the joinder proper; the Court never
25    considered whether the declaratory relief counterclaim could have proceeded without the patent
      owner.  Thus, *Massa* only confirms that a trial court has the discretion under Rule 19 to join a patent
26    owner.  It provides no support for the Commission's argument that a claim for declaratory relief of
27    invalidity cannot proceed against an exclusive licensee alone.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-7-

*Textilmaschinen KP v. Maccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991). "It is well settled that 'whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Id.* at 875.

Here, the licenses between the USDA and the Commission expressly transfer the following rights in the Patented Varieties:

• The Commission has an "exclusive license" to "make, use, offer for sale, propagate, maintain, sell and otherwise exploit" the patented varieties. (EL §2.1)[2]

• The Commission has the exclusive right to sublicense the patented varieties. (EL §§ 2.1, 2.2)

• The exclusive licenses extend to all conceivable forms of intellectual property protection, both in the U.S. and abroad, in the patented varieties, including any "renewal, division, continuation, continued prosecution application or continuation-in-part…all patents issuing therefrom, including any reissues, reexaminations, extensions, divisions, renewals, substitutions, confirmations, registrations, revalidations, revisions, and additions [and] any Plant Variety Protection applications or certificates protecting the Licensed Variety…and…any international equivalents of the foregoing." (EL §1.1)

• The exclusive licenses extend to all parts of the patented varieties, "including plants, plant parts, rootstock and other tissues, and fruit thereof." (EL §1.2)

• The exclusive license has no territorial restriction. (EL §1.3)

• The exclusive license has no expiration date. (EL §7.1)

• The Commission is entitled to "use all commercially reasonable efforts to protect USDA's property rights in the Licensed Variety" and the USDA is required to confer with and reach a mutual agreement with the Commission regarding infringement of the patents. (EL §8.1)

In addition to the rights conferred by these exclusive license agreements, the Commission

---

[2] "EL" refers to the exclusive licenses for the Patented Varieties attached as Exhibits 1-3 to the Commission's motion.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   has even further rights to the Patented Varieties through the sub-licenses approved by the USDA

2   (EL §2.2):

3          •      Right to inspect grower's property to verify compliance with sub-license.  (DGL

4   §5.1)[3]

5          •      Right to terminate the sub-license.  (DGL §8.2)

6          •      Right to prevent grower from selling and/or marketing fruit.  (DGL §8.4)

7          •      Right to force grower to destroy all wood of the Patented Variety.  (DGL §8.4)

8          •      Right to force grower to provide an accounting of the Patented Varieties on the

9   grower's premises and sales thereof.  (DGL §8.4)

10         Significantly, each of these rights carry the ability to enforce through legal action.  Legal

11   action to enforce these rights, including the right to force the removal and destruction of the

12   Patented Varieties,  requires no "authorization" by the USDA since the USDA has already agreed to

13   the terms of these sublicenses.  (EL §2.2).

14         Based on these agreements, the overall effect of the licenses between the USDA and the

15   Commission and the USDA-approved Domestic Grower Licenses with Plaintiffs undoubtedly

16   transfers to the Commission all substantial rights to the patents-in-suit, including the exclusive right

17   to make, use, sell, or offer for sale the Patented Varieties, the right to sub-license, and substantial

18   enforcement rights.  These rights constitute the entire bundle of rights conferred by any patent.

19         The Commission not only fails to consider the effect of its rights under both the exclusive

20   licenses with the USDA, and the licenses with Plaintiffs, the Commission's argument that it lacks all

21   substantial rights based on the "lawsuit authorization" clause lacks legal support.  First, the

22   Commission has entered into Domestic Grower License Agreements for the Patented Varieties,

23   which the Commission can enforce without "authorization" from the USDA.  Second, many courts

24   have allowed exclusive licensees to prosecute infringement actions without joining the patent owner,

25   even where the exclusive licensee held even fewer rights than the Commission.  *See Vaupel*, 944

26   _____

27   [3] "DGL" refers to the Domestic Grower License Agreements for the Patented Varieties, attached as
    Exhibits 1 to 3 to this Opposition.

28                                             -9-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  F.2d at 875 (patent owner not a necessary party, even though the patent owner retained (1) a veto

2  right on sublicensing, (2) the right to obtain patents on the invention in other countries, (3) a

3  reversionary right to the patent, and (4) a right to receive infringement damages); *Speedplay*, 211

4  F.3d at 1251 (patent owner not a necessary party, even though the license allowed the patent owner

5  to bring an infringement action in its own name if the licensee failed to halt an infringement within 3

6  months).  Indeed, in a declaratory judgment action, at least one court has allowed a suit against a

7  licensee who had no enforcement rights.  *Pennsalt Chemicals Corp. v. Dravo Corp.*, 240 F. Supp.

8  837, 839 (E.D.Penn. 1965) ("The fact that the agreement does not specifically authorize defendant to

9  sue alleged infringers does not preclude a finding that defendant is the substantial owner of the

10  patent for purposes of declaratory judgment action.").

11         Finally, when the United States owns a patent and grants an exclusive license to another

12  entity for sublicensing and enforcing, courts have allowed the exclusive licensee to sue without

13  joining the United States as a plaintiff.  As the Commission notes, the Federal Circuit allowed an

14  exclusive licensee of the United States to proceed with an infringement suit alone when the United

15  States granted enforcement rights under 35 U.S.C. § 207(a)(2).  (Mot. at 8 (citing *Nutrition 21 v.*

16  *Untied States*, 930 F.2d 862 (Fed. Cir. 1991).)  More recently, where an exclusive licensee of a

17  patent owned by the United States required owner-approval before "enforcing" in any manner, a

18  California federal court allowed the exclusive licensee to maintain an infringement action without

19  joining the United States.  *Network Signatures, Inc. v. ABN-AMRO, Inc.*, 2007 U.S. Dist. LEXIS

20  48332 (C.D. Cal. Apr. 10, 2007).  Here, the exclusive license between the USDA and the

21  Commission grants far more enforcement rights than the license at issue in *Network Signatures*.

22  Rather than granting the USDA a "veto" over infringement suits, the USDA's exclusive license

23  demands that the Commission "use all commercially reasonable efforts to protect USDA's property

24  rights in the Licensed Variety" and requires both parties to act reasonably and reach a mutual

25  agreement on how to proceed against infringers.  (EL § 8.1.)  Certainly, if the Commission can

26  undertake at least some patent enforcement actions without the United States' participation, it has

27  more than enough interest to face claims that the patents are invalid and unenforceable.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**B.     Joinder of the United States Is Feasible, Because It Is Not Immune From This Lawsuit**

The Commission argues that, assuming the United States is a necessary party to this action, it cannot be joined because it enjoys sovereign immunity over the declaratory relief claims asserted against the Commission, which it has not waived.  But the Commission overlooks the express waiver statute.  Title 5, United States Code, section 702 eliminates, in almost every circumstance, the defense of sovereign immunity to actions seeking non-monetary relief against unlawful action by government agencies and officials:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, **is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority <u>shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States</u>**:  Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

5 U.S.C. § 702 (emphasis added).

The only exceptions to this waiver of sovereign immunity for non-monetary actions against the United States is if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. §702(2).  But as the Commission concedes, the only statute addressing patent suits naming the United States as a party is 28 U.S.C. §1498, "which authorizes private parties to bring patent *infringement* suits for *money damages* against the government in the Court of Federal Claims."  (Mot. at 11 (emphasis in original).)  As the Commission further admits, "[b]y its plain terms, this provision does not cover a declaratory judgment action seeking to render a government-owned patent invalid or unenforceable.  The statutes addressing government-owned patents make no mention of sovereign immunity or waiver."  (*Id.*)  No patent statute limits or otherwise addresses "consent to suit or impliedly forbids the relief which is sought" for a declaratory judgment action seeking to hold invalid and unenforceable a United States-owned patent.  Thus, the

-11-

1    federal government waiver of sovereign immunity under 5 U.S.C. § 702 governs here.[4]

2          Tellingly, the only cases the Commission cites relating to sovereign immunity in declaratory

3    judgment actions seeking to invalidate government-owned patents are lawsuits involving state

4    sovereign immunity under the Eleventh Amendment.  Obviously, the United States cannot waive

5    sovereign immunity of states through the enactment of a federal statute.  Nor can the United States

6    assert sovereign immunity under the Eleventh Amendment.  Thus, all of the cases cited by the

7    Commission in support of sovereign immunity in patent cases for state government entities under

8    the Eleventh Amendment lack any relevance to whether the United States can be joined in this case.

9          In contrast, at least one federal district court has joined the United States as an involuntary

10   plaintiff to a patent infringement case where the USDA exclusively licensed a patent owned by it.

11   *Nutrition 21 v. Thorne Research, Inc.*, 130 F.R.D. 671 (D. Wash. 1990), *rev'd on other grounds*,

12   *Nutrition 21 v. Untied States*, 930 F.2d 862 (Fed. Cir. 1991).  In *Nutrition 21*, an exclusive licensee

13   joined the United States as a party defendant pursuant to Fed. R. Civ. P. 19(a) when the United

14   States refused to join an infringement suit against an accused defendant.  *Id.* at 671.  Notably, in

15   moving to dismiss, the United States did not argue that sovereign immunity precluded its joinder.

16   Rather, the United States argued that the exclusive licensee could sue without its participation under

17   the terms of the license agreement and the authority provided to federal agencies under 35 U.S.C. §

18   207(a)(2).  Instead of dismissing the United States, the district court realigned the United States as

19   an involuntary plaintiff under Fed. R. Civ. P. 19(a).  *Id.*  Again on appeal, the United States did not

20   assert sovereign immunity (as the lawsuit sought no money damages against the United States).

21   Rather, as the Federal Circuit "happily" noted, both the United States and the exclusive licensee

----

[4] The Commission cites *Robishaw Eng'g, Inc. v. United States*, 891 F.Supp. 1134 (E.D. Va. 1995) to support its contention that the U.S. has not waived sovereign immunity in patent declaratory judgment actions.  *Robishaw* involved a claim of **infringement** against the United States, and the court held that 28 U.S.C. § 1498 limited the waiver of sovereign immunity.  As the Commission admits, 28 U.S.C. § 1498 does not apply to declaratory judgment actions relating to U.S.-owned patents.  Thus, the limitation on the waiver of sovereign immunity contained in section 1498 has no application here.  On the other hand, courts have held that the section 702 waiver of sovereign immunity in actions seeking non-monetary relief from the Untied States applies in patent cases as well as other cases.  *New York Univ. v Autodesk, Inc.*, 466 F Supp 2d 563 (S.D.N.Y. 2006).

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   agreed that the infringement lawsuit could proceed without the United States' participation.

2   Nutrition 21, 930 F.2d at 864.

3        Just as in *Nutrition 21*, Plaintiffs do not seek monetary damages from the United States or its

4   agencies, but merely a declaration that patents owned by a U.S. government agency – the USDA –

5   are invalid and unenforceable.  Such relief falls squarely within the waiver provided under 5 U.S.C.

6   §702, which allows parties to bring "a claim that an agency or an officer or employee thereof acted

7   or failed to act in an official capacity or under color of legal authority."  In the words of the statute,

8   these claims "shall not be dismissed nor relief therein be denied on the ground that it is against the

9   United States or that the United States is an indispensable party."  *Id.*  Thus, even if the United

10  States is a necessary and indispensable party (which it is not) joinder of the United States is feasible

11  and not subject to sovereign immunity.

12  **C.     Even if the United States Were a Necessary Party and Sovereign Immunity**

13  **Prevented its Joinder in this Action, the United States is not an Indispensable**

14  **Party Requiring Dismissal**

15       Rule 19(b) provides that even if a party is necessary and its joinder is not feasible, the Court

16  has discretion to proceed without the absent party, weighing four non-exclusive factors:

17       [T]he court shall determine whether in equity and good conscience the action should
         proceed among the parties before it, or should be dismissed, the absent person being
18       thus regarded as indispensable.  The factors to be considered by the court include:
         first, to what extent a judgment rendered in the person's absence might be prejudicial
19       to the person or those already parties; second, the extent to which, by protective
         provisions in the judgment, by the shaping of relief, or other measures, the prejudice
20       can be lessened or avoided; third, whether a judgment rendered in the person's
         absence will be adequate; fourth, whether the plaintiff will have an adequate remedy
21       if the action is dismissed for nonjoinder.

22  Fed. R. Civ. P. 19(b).

23       Applying the Rule 19(b) factors in a closely analogous case, the Federal Circuit reversed the

24  dismissal of a declaratory relief action for patent invalidity and non-infringement, in which the

25  district court had found it lacked personal jurisdiction over an indispensable patent owner.  In

26  reversing, the Federal Circuit explained that an action challenging the validity of a patent could

27  proceed without the patent owner:

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-13-

> [E]ven if [a patent owner] is a necessary party under Rule 19(a) because it would be prejudiced by a holding of invalidity of its patent, this prejudice does not automatically make [the patent owner] indispensable.  Instead, as Rule 19(b) prescribes, all of the factors recited by that rule must be assessed and weighed by a court to determine whether in equity and good conscience the action should proceed among the parties before it.

*Dainippon Screen Mfg. Co., Ltd. v. CFMT*, 142 F.3d 1266, 1272 (Fed. Cir. 1998) (internal citations and quotations omitted).[5]

Instructively, the Federal Circuit provided a detailed analysis of why a patent owner is not an indispensable party when an accused infringer asserts a declaratory judgment action:

1.   ***Rule 19(b) Factor 1***

> As to the first factor, party prejudice, the Ninth Circuit has recognized that ***prejudice to an absent party is mitigated when the interests of that party are "adequately protected by those who are present."***  In re Allustiarte, 786 F.2d 910, 919 (9th Cir. 1986).  ***If so, the "person is not indispensable." Id.*** Here, [the patent owner's] interests are adequately protected by [the licensee]…[The patent owner and licensee] share the common goal of assuring that the…patent not be held invalid or be infringed…and have jointly sought legal assistance in furtherance of that goal. Courts have expressed the view that, under these circumstances, ***an argument that the patentee is indispensable under Rule 19(b) is "wholly unconvincing"*** [citations]. Moreover, to the extent it would be prejudiced if the suit were to proceed in its absence, [the patent owner] may intervene in the suit, and this "***opportunity to intervene may be considered in calculating [any] prejudicial effect.***" Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 820 n. 5 (9th Cir. 1985).

*Id.* at 1272 (emphasis added).

Here, there is no doubt that the Commission can and will adequately protect the USDA's interest in preserving the validity of the patents-in-suit – just as it did in the *Sandrini* case.  The Commission conceived the patenting program that resulted in the Patented Varieties and lobbied for its acceptance by the USDA.  Further, a Memorandum of Understanding between the Commission and the USDA recognizes that their interests in the patenting program are aligned.  The Commission has aggressively enforced and litigated the patents-in-suit in the past, using the same attorneys that

---

[5] Prior to the establishment of the Federal Circuit, other federal appellate courts reached the same result.  *See Helen Curtis Indus., Inc. v. Sales Affiliates, Inc.*, 199 F.2d 732, 733 (2d Cir. 1952) (patent owner is not indispensable when the defendant/licensee was an affiliate with the power to control and represent the patent owner in matters concerning the patent.); *Hook v. Hook & Ackerman, Inc.*, 187 F.2d 52, 58 (3d Cir. 1951) (reversing dismissal of complaint).

OPPOSITION TO MOTION TO DISMISS

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

represent the Commission in this case.  In the prior *Sandrini* case, neither the Commission nor the USDA sought to include the United States as a party, even though Sandrini affirmatively sought the very same invalidity relief at issue here.  Undoubtedly, the Commission has a direct financial and contractual interest in defending this suit in the form of royalty income.  In short, the Commission does not and cannot contend that the United States' interests will be prejudiced by proceeding without it.  If its interests were prejudiced, the United States could always intervene.

2.    ***Rule 19(b) Factor 2***

The second factor, the court's ability to shape relief to avoid prejudice, is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court.

*Id.* at 1272-73.  The same lack of relevance applies equally here.

3.    ***Rule 19(b) Factor 3***

The third factor, adequacy of the judgment, ***favors maintenance of the suit in [the patent owner's] absence*** because a declaration of invalidity or noninfringement would fully serve [plaintiff's] interest in ensuring that it is free from claims of patent infringement irrespective of [the patent owner's] absence.  In this regard, it is relevant that a declaratory judgment suit is not one in which "the plaintiff seeks relief that will require an affirmative act by the absentee," therefore making the case "essentially hollow" if it were to proceed in [the patent owner's] absence.  *See* Moore's § 19.05[4].

*Id.* at 1273 (emphasis added).  As in *Dainippon*, Plaintiffs claims for declaratory relief of invalidity and unenforceability will ensure that Plaintiffs are not bound by the onerous – and never before imposed – restrictions on their use and reproduction of USDA-developed table grape varieties, without the need of any affirmative action by the United States.

4.    ***Rule 19(b) Factor 4***

As to the fourth factor, whether the plaintiff will have an adequate remedy if the case is dismissed, the district court correctly noted that this factor favors dismissal if there exists another forum in which all parties could be joined in the suit.

*Id.* at 1273.  In this case, no alternative forum exists for Plaintiffs unless, as the Commission argues, Plaintiffs are "sued for patent infringement by the Commission or the United States…"  (Mot. at 14) The Supreme Court's *MedImmune* decision rejects the notion that Plaintiffs should be forced to breach their license agreements and risk infringement litigation before challenging the validity of the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-15-

1   patents at issue and the legality of the Commission's ability to collect royalties.  *MedImmune*, 127

2   S.Ct. at 772

3          Rather than analyzing the four Rule 19(b) factors in the context of a patent declaratory

4   judgment action and the *Dainippon* case (which the Commission tellingly does not cite), the

5   Commission argues that the United States' purported immunity alone makes it an indispensable

6   party.  In support, the Commission cites a series of inapposite cases relating to Native American

7   tribes and real property disputes.  Plainly, cases involving disputes over Native American interests

8   and real property held by the United States differ significantly from the patent declaratory relief

9   claims asserted in case.  Unlike cases where sovereign immunity (which only protects the United

10  States' monetary resources) outweighs a plaintiff's interest in litigation, this case only challenges the

11  validity and enforceability of three USDA patents.  More importantly, the USDA affirmatively

12  elected to license these patents exclusively to the Commission for financial and commercial reasons,

13  and granted the Commission significant rights to protect those financial and commercial interest.

14  Under these circumstances, Supreme Court and Federal Circuit authority permits licensees to

15  challenge validity before facing lawsuits for infringement.

16         Two final considerations support proceeding without the United States (even accepting the

17  incorrect assumptions that the United States is a necessary party but shielded by sovereign

18  immunity).  First, allowing the Commission to hide behind the United State's supposed immunity –

19  immunity to which the Commission is not itself entitled – would be fundamentally unfair.  The

20  terms of the Commission's exclusive license with the USDA expressly state:

21         Nothing relating to the grant of this license, nor the grant itself, shall be construed to
           confer upon THE COMMISSION or its sublicensees, ***any immunity*** from or defenses
22         under the antitrust laws or from a charge of patent misuse, and the acquisition and use
           of rights pursuant to this license shall not be immunized from the operation of state or
23         Federal law by reason of the source of the grant."

24  (EL § 12.4.)  The Commission has aggressively enforced the patents-in-suit by suing for

25  infringement, threatening litigation, and extracting millions of dollars of royalty revenues from

26  California table grape farmers.  The Commission should not be allowed to continue threatening

27  litigation, imposing onerous licensing terms on the ability to grow the Patented Varieties, and

28                                              -16-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    extracting royalty revenues on invalid patents while avoiding adjudication of the validity of the

2    patents.

3    Second, Plaintiffs' claims raise important public policy considerations. Based on the prior

4    *Sandrini* case, the facts supporting Plaintiffs' invalidity and unenforceability claims are well known.

5    Whether the Commission can legally continue licensing and enforcing patents under the facts and

6    law already known to the parties and this Court is keenly important to the California table grape

7    growing community. These issues should be decided now, not when the Commission decides to

8    launch its next infringement assault on a small, ill-funded farmer. Accordingly, this Court should

9    exercise its equitable discretion under Rule 19(b) and allow this matter to proceed without the

10   United States.

11   **II.      PLAINTIFFS HAVE PLEAD AN INTENT TO DECEIVE SUFFICIENT TO**

12   **          SUSTAIN A CLAIM OF INEQUITABLE CONDUCT.**

13   In its inequitable conduct claim for relief, Plaintiffs allege that (1) the named inventors knew

14   of the prior public use of Sweet Scarlet that would render the patent invalid, (2) that their failure to

15   disclose this public use "breached the duty of candor" owed to the U.S. Patent & Trademark Office

16   ("USPTO"), and (3) that this "breach of the duty of candor constitute inequitable conduct."

17   (Complaint, ¶ 92.) Plaintiffs also allege that one of the named inventors, Dr. Ramming, knew that

18   this public use was material to patentability, but nevertheless withheld the information from the

19   USPTO. (Complaint, ¶¶ 64-65.)

20   The Commission argues that Plaintiffs' fail to plead an actionable claim for inequitable

21   conduct because they do not use the magic words "fraudulent intent," and because Plaintiffs "allege

22   only that Dr. Ramming and the USDA's counsel knew about the alleged prior use and for some

23   unstated reason did not notify the PTO." (Mot. at 15.) The Commission is wrong both legally and

24   factually. Legally, none of the cases cited by the Commission, including the unpublished district

25   court cases, demand specific words like "fraudulent intent" to state an inequitable conduct cause of

26   action. Rather, an inequitable conduct action requires the pleading of facts, which if proven, would

27   establish an intent to deceive. *N.V. Akzo v. E. I. Du Pont de Nemours & Co.*, 810 F.2d 1148, 1153

28

-17-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   (Fed. Cir. 1987) ("The elements of materiality and intent must be determined separately and then

2   weighed together to ascertain whether the patentee engaged in inequitable conduct. The tribunal

3   must then carefully balance the materiality and intent: … a lesser degree of intent must be proven

4   when the information has a great degree of materiality. Indeed, gross negligence can be the intended

5   level of intent when the misrepresentation has a high degree of materiality.").  Factually, Plaintiffs

6   did not merely allege that Dr. Ramming and the USDA's counsel simply did not disclose, "for some

7   unstated reason" the alleged prior use.  Rather, Plaintiffs expressly allege that the named inventor

8   and USDA counsel knowingly withheld information material to patentability *in a manner that*

9   *breached the duty of candor owed to the USPTO*.  (Complaint, ¶ 92.)  It is well settled that a breach

10  of the duty of candor to the USPTO inherently involves an intent to deceive.  Chisum, Donald S.,

11  Chisum on Patents §19.03[4] (2007) ("To be guilty of a breach of the duty of candor, the patent

12  applicant must have had some culpable state of mind with respect to a misrepresentation or

13  omission.").  Thus, Plaintiffs easily plead all elements required to state a claim for inequitable

14  conduct.

15       The Commission further argues that Plaintiffs' inequitable conduct allegations fall short of

16  the pleading standard required under Fed. R. Civ. P. 9(b).  In support, the Commission only argues

17  that Plaintiffs do not allege the "particular facts" relating to the prior use of Sweet Scarlet, how

18  many growers reproduced Sweet Scarlet before the critical date, and the "circumstances" of the prior

19  uses. (Mot. at 16.)  Yet the Commission cites no authority that such allegations are required even

20  under the Rule 9(b) pleading standard.  Even if such facts had to be pled, the Commission's

21  assertion that Plaintiffs do not plead them is simply false.  Plaintiffs expressly allege the following

22  facts:  "Specifically, approximately nine growers received Sweet Scarlet from Dr. Ramming for

23  trials in 1999 and 2000.  At least three of these growers sold fruit produced into commercial markets

24  before 2002.  Additionally, at least 17 other growers, who were not part of trials, received and

25  reproduced the Sweet Scarlet variety.  On information and belief, these reproductions took place

26  prior to 2002.  Neither the USDA nor Dr. Ramming oversaw or controlled the reproductions created

27  by these 17 growers." (Complaint, ¶¶ 54-55.)  Together with all the other facts contained in the

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-18-

1  complaint, Plaintiffs easily satisfy the pleading standard of Rule 9(b).

2  **III.     PLAINTIFFS HAVE PROPERLY PLEAD A "WALKER PROCESS" ANTITRUST**

3  **CLAIM**

4          In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172

5  (1965), the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent

6  Office may be violative of §2 of the Sherman Act…" *Id.* at 174.  As the Supreme Court explained,

7  obtaining a patent "by knowing and willfully misrepresenting facts to the Patent Office….would be

8  sufficient to strip [the patentee] of its exemption from the antitrust laws." *Id.* at 177.  "This

9  conclusion applies with equal force to an assignee who maintains and enforces the patent with

10 knowledge of the patent's infirmity." *Id.* at 177 n.5.  Consistent with *Walker Process* and hundreds

11 of cases that follow *Walker Process*, Plaintiffs allege that the Commission violated federal antitrust

12 laws by maintaining and enforcing patents, which it knows the USDA obtained by willfully

13 misrepresenting facts to the Patent Office.  Inexplicably, in moving to dismiss Plaintiffs' *Walker

14 Process* action, the Commission never cites the *Walker Process* case.  Instead, the Commission

15 argues that Plaintiffs' antitrust claims must be dismissed because (1) Plaintiffs have not alleged a

16 relevant market that the Commission could have monopolized, (2) Plaintiffs have not alleged that

17 the Commission participates in that market, and (3) Plaintiffs lack standing to assert antitrust claims.

18 But Plaintiffs plainly allege all three elements in a manner that more than satisfies the pleading

19 standard in antitrust cases.

20         **A.     Plaintiffs Have Sufficiently Alleged A Relevant Market**

21         The Commission contends that Plaintiffs' claims under Section 2 of the Sherman Act must

22 be dismissed, because Plaintiffs have failed to allege a cognizable relevant market.  (Mot. at 17-20.)

23 While the Supreme Court in *Walker Process* stated that it is "necessary to appraise the exclusionary

24 power of the illegal patent claim in terms of the relevant market for the product involved," *Walker

25 Process*, 382 U.S. at 177, the Supreme Court did not preclude the possibility that the patented

26 product itself may constitute the relevant market.  To the contrary, the Supreme Court expressly

27 recognized that the patented product may define the relevant market depending on the existence of

28

HENNIGAN, BENNETT & DORMAN LLP / LAWYERS / LOS ANGELES, CALIFORNIA

"effective substitutes for the device which do not infringe the patent." *Id.* at 177-78.  Moreover, for antitrust claims in the patent context, the Supreme Court emphasized the definition of the relevant market "is a matter of proof" not appropriate for determination (or dismissal) on the pleadings.  *Id.* at 178.

In the case of plant patents, like here, the relevant market can be defined only by the patented variety, for no effective substitute, by definition, can exist.  To illustrate, even if someone patents a new mousetrap by fraudulent misrepresentations to the Patent Office, it is unlikely that the patentee could monopolize the mousetrap market because effective substitutes exist.  In contrast, each of the Patented Varieties – Sweet Scarlet, Autumn King and Scarlet Royal – are inherently unique.  Every subsequent Sweet Scarlet, Autumn King, and Scarlet Royal grapevine and fruit, by definition, must derive from a single parent plant.  There is simply no way of creating a Sweet Scarlet, Autumn King or Scarlet Royal grapevine or fruit without using the patents on those varieties.  Indeed, the Commission itself argued to this Court in prior *Sandrini* case that the Autumn King variety is unique and lacks any substitute in the market.  The Commission further argued that Autumn King possessed distinctive growing, size, coloring, taste, and harvesting characteristics that distinguished it from any other grapevine or grape known to man.  These arguments apply equally to the other Patented Varieties.

Even if the Commission now contends that substitutes do exist and that the relevant market should be defined more broadly, factual disputes over the proper definition of the relevant market are not appropriate for resolution on a motion to dismiss.  The relevant market is the area of effective competition.  *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962).  In *Brown Shoe*, the Supreme Court set forth the standards for defining relevant product markets and submarkets in antitrust cases.  These standards include many fact-intensive considerations:

> The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes.... The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.

*Brown*, 370 U.S. 294 at 325.  As later courts have explained, "[t]he purpose of market definitions is not to frustrate antitrust plaintiffs by requiring the proof of bright lines which do not exist, but is to help identify monopoly power, that is, the power to control prices or exclude competition." *Conceptual Engineering Associates, Inc. v. Aelectronic Bonding, Inc.*, 714 F. Supp. 1262, 1268 (D.R.I. 1989).  "The Ninth Circuit has held that 'there are no special rules of pleading in antitrust cases,' and that a party asserting an antitrust action is required only to comply with the rules of pleading under Federal Rule Civil Procedure 8, and not the particularity requirement of Rule 9(b)." *Shuffle Master, Inc. v. Awada*, 2006 U.S. Dist. LEXIS 71748, 14-15 (D. Nev. 2006) (quoting *Walker Distributing Co, v. Lucky Lager Brewing Co.*, 323 F.2d 1, 3 (9th Cir. 1963)).  "[A]ntitrust allegations in particular are to be construed liberally.  Moreover,… 'it is axiomatic that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Carpenters Local Union No. 1846 etc. v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 534 (5th Cir. 1982) (citing *McLain v. Real Estate Board, Inc.*, 444 U.S. 232, 246 (1980) and *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Here, Plaintiffs easily satisfy the pleading requirements by identifying the worldwide market for the Patented Varieties in general and specifically the sub-markets for each of the Patented Varieties of grapevines.  (Complaint ¶¶ 99, 102.)  While the Commission may disagree with Plaintiffs' definition of the relevant markets, there is no credible dispute that the markets as defined by Plaintiffs state a claim under the liberal pleading requirements of the Federal Rules for antitrust claims.  Indeed, the Supreme Court has recognized that the relevant market in Section 2 antitrust claims can be limited to even a single brand of product, and that the determination of the relevant market is factual, not a legal question on a motion to dismiss.  *Eastman Kodak Co. v. Image Technical Service, Inc.*, 504 U.S. 451, 482 (1992).  As the *Eastman Kodak* Court reasoned, "prior cases support the proposition that in some instances one brand of a product can constitute a separate market.  [citations.]  The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Id.*  Thus, even if the factual inquiry

-21-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

into the commercial realities of the Patented Varieties ultimately demand a change in the relevant market definition, Plaintiffs' pleading suffices.

None of the cases cited by the Commission involves *Walker Process* antitrust claims and none supports dismissal. In *Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999), the Court did not take issue with the plaintiffs' definition of the relevant market, but merely with the failure to allege "the area of effective competition" and "that Defendants' conduct resulted in anticompetitive effects." Despite these deficiencies, which do not exist here, the Court still held that "Plaintiffs should be granted leave to amend their complaint to allege anticompetitive effects within a particular market…" *Id. Tanaka v. University of Southern California*, 252 F.3d 1059 (9th Cir. 2001) and *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620 (5th Cir. 2002) are equally unavailing, as each involves Section 1 claims and both involved allegations providing an extremely limited geographic scope of the relevant markets – in *Tanka*, a single school's athletic program in a specific city, and in *Apani*, specific venues within a single city. In this case, Plaintiffs provide no such arbitrary limits on the geographic scope of the relevant market, but instead identify the worldwide market for each particular, unique grapevine. Finally, *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 126 S. Ct. 1281, 1293 (2006) has nothing to do with the proper definition of the relevant market at the pleading stage, but merely holds that a patent does not create a presumption of market power. Plaintiffs here have not based their allegations on any presumption of market power by the Commission, but rather have defined the Commission's market power in the context of the relevant markets for the Patented Varieties.

**B.** **The Commission Actively Participates In The Relevant Markets, And Plaintiffs Have So Alleged.**

The Commission next asserts that Plaintiffs have not alleged that the Commission participates in the relevant markets, and that Plaintiffs cannot do so. The Commission's assertions simply ignore the language in the Complaint.[6] Plaintiffs' Complaint is replete with allegations of the

---

[6] The Commission's argument appears to be predicated on the assumption that it must directly sell the Patented Varieties to be considered a market participant. First, the relevant market includes not

Case No. 1:07-cv-01610-OWW-SMS                    OPPOSITION TO MOTION TO DISMISS

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   Commission's participation in the relevant markets, including (1) the collection of on-going

2   royalties for each sale of the Patented Varieties, (2) the threat of enforcement and enforcement of the

3   patents for the Patented Varieties, (3) threatening and seeking removal of plant material for the

4   Patented Varieties from growers' land, including growers who have licensed the Patented Varieties,

5   (4) requiring growers to pay for and obtain new licenses in order to expand existing crops of the

6   Patents Varieties, (5) the granting of "amnesty" to growers in exchange for royalty fees for the

7   Patented Varieties under the threat of enforcement of fraudulently procured patent(s), and (6) the

8   granting of licenses to a limited number of nurseries to distribute the plaint material for the Patented

9   Varieties to the exclusion of other nurseries and on terms dictated by the Commission.  These

10  actions are direct and significant anticompetitive activities in the relevant market, sufficient to

11  uphold a claim of antitrust violation.  "We have concluded that the enforcement of a patent procured

12  by fraud on the Patent Office may be violative of §2 of the Sherman Act…"  *Walker Process*, 382

13  U.S. at 177.  None of the cases cited by the Commission even relate to *Walker Process* antitrust

14  claims.

15  **C.    Plaintiffs Have Standing To Sue For Antitrust Damages.**

16       Citing *Illinois Brick*, the Commission argues that Plaintiffs lack standing to sue the

17  Commission for its anticompetitive activities, because Plaintiffs obtained licenses from nurseries

18  and not directly from the Commission.  The Commission's argument is based on the false premise

19  that Plaintiffs' only alleged basis for their antitrust claims is "the prices of the grape vines they

20  bought from the nurseries was inflated by reason of royalties they claim the Commission

21  impermissibly charged nurseries."  (Mot. at 22.)

22       Unlike the allegations in *Illinois Brick*, Plaintiffs' antitrust claim is not solely premised on

23  inflated prices by indirect purchasers.  Rather, Plaintiffs' antitrust claim is more broadly premised on

24  the enforcement of a patent, knowingly procured through fraud, by an exclusive licensee.  More

25  

26  only the fruit of the patented varieties, but also the plant material used to grow the Patented

27  Varieties.  Regardless, the Commission cites no case supporting its assumption that it must sell a
    product in the relevant market to be considered a participant for antitrust purposes.

28  

Case No. 1:07-cv-01610-OWW-SMS                    OPPOSITION TO MOTION TO DISMISS

1   specifically, Plaintiffs allege that the Commission's threat of enforcement and enforcement of a

2   fraudulently obtained patent caused Plaintiffs to obtain a license it would not have otherwise been

3   forced to obtain.  Under that license, Plaintiffs must comply with a number of anticompetitive

4   clauses.  For example, Plaintiffs cannot themselves reproduce the Patented Varieties they licensed

5   for any purpose, including the development of additional acreage on their own farms or distribution

6   to other growers.  Instead, Plaintiffs must purchase all new plant material for the Patented Varieties

7   from the nurseries hand-selected by the Commission – some with family ties to Commission

8   members.  In *Walker Process*, which the Commission never cites, the Supreme Court expressly

9   recognized that when an exclusive licensee enforces a patent "with knowledge of the patent's

10  infirmity" antitrust liability can result.  *Walker Process*, 382 U.S. at 177 n.5.  Because Plaintiffs'

11  antitrust claim is not based on an inflated price paid by an indirect purchaser, *Illinois Brick* is wholly

12  inapplicable.  *See Agron, Inc. v. Chien-Lu Lin*, 2004 U.S. Dist. LEXIS 26605, 32-33 (C.D. Cal.

13  2004) (citing *H.J., Inc. v. International Telephone & Telegraph Corp.*, 867 F.2d 1531, 1541-42 (8th

14  Cir. 1989); *General Industries Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 801 (8th Cir. 1987);

15  *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1192 (9th Cir. 1984); *Chatham Brass Co., Inc. v.*

16  *Honeywell, Inc.*, 512 F. Supp. 108, 116 (S.D.N.Y. 1981)).

17  **IV.     THE FACTS ALLEGED BY PLAINTIFFS SUPPORTS A CLAIM FOR PATENT**

18          **MISUSE.**

19          The Commission contends that Plaintiffs have failed to state a claim for patent misuse.  In

20  doing so, the Commission attempts to parse its various misconduct into discrete acts and to dismiss

21  each act as insufficient by itself to establish misuse.  In doing so, the Commission fails to recognize

22  that it is the combination of these improper acts, taken as a whole, that creates the basis for

23  Plaintiffs' allegation of misuse under the rule of reason.  Taken as a whole, there is no question that

24  Plaintiffs have alleged sufficient facts to support a claim for patent misuse.

25          Patent misuse is an equitable doctrine that "arose to restrain practices that did not in

26  themselves violate any law, but that drew anticompetitive strength from the patent right, and thus

27  were deemed to be contrary to public policy."  *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700,

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-24-

704 (Fed. Cir.1992). The primary purpose of the misuse doctrine, therefore, is "to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Id.* The Supreme Court has explained that the doctrine of patent misuse bars a patentee from using the "patent's leverage" to "extend the monopoly of his patent to derive a benefit not attributable to the use of the patent's teachings," such as requiring a licensee to pay a royalty on products that do not use the teaching of the patent. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 135-36 (1969). The "key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir.1998); Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir.1986).

Besides improperly focusing on three discrete instances of misuse rather than the totality of the Commission's misconduct, the Commission further errs in its arguments regarding the individual acts. First, the Commission contends that demanding licenses from growers prior to the issuance of the patent cannot constitute misuse. Yet courts have found that activities prior to the issuance of the patent can constitute misuse. For example, in *Key Pharmaceuticals, Inc. v. Lowey*, 373 F. Supp. 1190, 1193 (S.D.N.Y. 1974), an exclusive licensee of the right to make certain pharmaceuticals according to a process described in a patent application sued to rescind the agreement. During the lawsuit, the court allowed the licensee to assert a misuse claim on the ground that the patent owner required the licensee to pay royalties on specified products, regardless of whether the products were produced by the processes described in the patent application. In so allowing, the court implicitly agreed that misuse could apply prior to the issuance of a patent. *Id.*

Other decisions apply the doctrine of patent misuse to pre-issuance activities. For example, in *Krampe v. Ideal Industries, Inc.*, 347 F. Supp. 1384, 1386-87 (N.D. Ill.1972) a patent applicant made a "licensing" agreement after filing a patent application but before the patent issued. After the patent issued, the applicant sought to enforce a license restriction. In response to a challenge to a misuse claim, the district court observed that the applicant "possessed inchoate rights" in the invention from the time he filed his application. Accordingly, the district court held "that plaintiff's

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  use of the rights which he possessed in his invention to secure an additional right to which he was

2  not entitled, combined with his maintaining the objectionable terms of the contract after these rights

3  had ripened into a patent monopoly, constitutes misuse of his patent…"  *Id.  See also Reich v. Reed*

4  *Tool Co.*, 582 S.W.2d 549, 553 (Tex. App. 1979) ("Neither is it essential to the misuse doctrine that

5  the inventor continue to use the leverage of his monopoly after the patent has been issued.  If he has

6  obtained a promise of benefits unrelated to the patent on condition of an assignment of his patent

7  rights, whether actual or prospective, such a promise is within the rationale of the misuse doctrine,

8  as stated by the Supreme Court in *Zenith*.  Consequently, we hold in this case that the defense of

9  patent misuse is available, even though Reich had no patent when he sold his invention and his

10  prospective rights under the patent application."); *Anderson Company v. Trico Products Corp.*, 237

11  F. Supp. 834, 838 (W.D.N.Y.1964).

12      In the Complaint, Plaintiffs allege that the Commission not only licensed patents and

13  collected royalties outside the scope of the patents, it did so using the threat of enforcement of a

14  fraudulently procured patent.  Further, Plaintiffs allege that the rights obtained by the Commission

15  under those license agreements, including the right to order the removal and destruction of

16  grapevines already purchased and licensed, extend indefinitely into and beyond the life of the patent.

17  (Complaint ¶¶ 27, 31-33.)  These activities, all imposed prior to issuance of the patents, and

18  enforced following issuance of the patents, give rise to patent misuse.

19      Second, the Commission contends that its restrictions on propagation of new vines and

20  distribution to third parties do not constitute misuse.  While this may be true, the Commissions

21  licensing agreements do not simply limit growers from distributing new vines.  Rather, the

22  Commission's licensing terms go much further by giving the Commission the right to order the

23  removal and destruction of plant material that licensees already purchased.  Once a patentee sells a

24  patented product, the patent monopoly exhausts under the "first sale doctrine."  *Monsanto Co. v.*

25  *McFarling*, 302 F.3d 1291, 1298 (Fed. Cir. 2002) ("when a patented product has been sold the

26  purchaser acquires the right to use and sell it, and the authorized sale of an article which is capable

27  of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   article sold.") (internal citations an quotations marks omitted).  Requiring growers to accept license

2   terms which illegally extend the patent monopoly beyond the exhaustion of rights under the first sale

3   doctrine constitutes classic patent misuse.  *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 18 (1913) ("when

4   the patentee…sells a…instrument whose sole value is in its use, he receives the consideration for its

5   use and he parts with the right to restrict that use…[T]he patentee…having in the act of sale

6   received all the royalty or consideration which he claims for the use of his invention…it is open to

7   the use of the purchaser without further restriction on account of the monopoly of the patentees.").

8   Moreover, the Commission's restriction on the third party distribution, which extends beyond the

9   geographic scope of the patent and into foreign territories, constitutes misuse.  *Extractol Process v.*

10  *Hiram Walker & Sons*, 153 F.2d 264 (7th Cir. 1946).

11          Finally, the Commission contends that its enforcement of the fraudulently procured Sweet

12  Scarlet patent cannot constitute misuse, because Plaintiffs have supposedly not identified a

13  cognizable market.  As discussed above, Plaintiffs have sufficiently alleged a cognizable market

14  under the antitrust laws, and those allegations are equally sufficient in the context of Plaintiffs'

15  misuse claims.

16          In sum, the totality of the Commissions actions in obtaining and enforcing its patent rights

17  demonstrates an improper expand beyond that allowed under the law.  Plaintiffs' misuse claim

18  should not be dismissed.

19  **V.      PLAINTIFFS HAVE ALLEGED UNLAWFUL CONDUCT AND HARM**

20  **         SUFFICIENT TO SUSTAIN A CAUSE OF ACTION FOR UNFAIR COMPETITION**

21          The Commission's argument in support of dismissing Plaintiffs' unfair competition claim

22  rests on two false premises: (1) Plaintiffs' unfair competition claims are based entirely on its

23  antitrust claims, and (2) because Plaintiffs' antitrust claims are purportedly deficient, so is the unfair

24  competition claim.  Plaintiffs unfair competition claims are based upon unfair actions by the

25  Commission that extend well beyond the Commission's actions that give rise to Plaintiffs' antitrust

26  claims.  Additionally, and as explained above, Plaintiffs have stated a cognizable antitrust claim for

27  relief under *Walker Process*, including the allegation of a relevant market.

28

1    Not surprisingly, when the Commission sued Sandrini for unfair competition, the

2    Commission provided this Court with a much different statement of California unfair competition

3    law that it offers now when it faces a similar charge.  In seeking summary judgment on its unfair

4    competition claim against Sandrini, the Commission argued that California law prohibits any "unfair

5    competition," which includes "any unlawful, unfair or fraudulent business act or practice."  Cal.

6    Bus. & Prof. Code §17200.  As the Commission described, a business act or practice needs to meet

7    only one of the three criteria – unlawful, unfair, or fraudulent – to constitute unfair competition.

8    *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).  The Commission

9    emphasized that coverage of California's unfair competition law is "broad" and "sweeping."  *Cal-*

10   *Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The California

11   Legislature intended "this sweeping language to permit tribunals to enjoin on-going wrongful

12   business conduct in whatever context such activities might occur."  *Id.* at 181 (quotation omitted).

13   Thus, "[w]hen a scheme is evolved which on its face violated fundamental rules of honesty and fair

14   dealing, a court of equity is not impotent to frustrate its consummation."  *Id.* (quotation omitted).

15   As described by the Commission, the "unlawful" criteria encompasses the violation of "any

16   law, civil or criminal, statutory or judicially made, federal, state or local."  *McKell*, 142 Cal. App.

17   4th at 1474 (citation omitted).  In addition, a practice may be considered "unfair" under §17200

18   "'even if not specifically proscribed by some other law.'"  *Korea Supply Co. v. Lockheed Martin*

19   *Corp.*, 29 Cal. 4th 1134, 1143 (2003) (quoting *Cal-Tech*, 20 Cal. 4th at 180).  An unfair act under

20   §17200 is defined as one that "offends an established public policy or…is immoral, unethical,

21   oppressive, unscrupulous or substantially injurious to consumers.'"  *Heighley v. J.C. Penny Life Ins.*

22   *Co.*, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003) (quoting *Walker v. Countrywide Home Loans,*

23   *Inc.*, 98 Cal. App. 4th 1158, 1170 (2002)).

24   Under the very standards articulated by the Commission when it sued Sandrini, Plaintiffs

25   allege that the Commission has engaged in a broad range of unlawful and unfair activities, including

26   the enforcement of a patent known to be fraudulently procured, improperly seeking to extend the

27   scope of the patent monopoly, and collecting patent royalties from growers who paid for the

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-28-

1    research and development of the patented varieties through assessment fees.  (Complaint ¶¶ 10, 13,

2    16, 17, 34-42, 58-65.)  These allegations easily satisfy the "broad" and "sweeping" unfair

3    competition laws of California, as the Commission described them in suing Sandrini.  Finally, in

4    suing Sandrini for unfair competition, the Commission disagreed that a valid antitrust claim must be

5    pled to state an unfair competition claim, and never even pled such a claim against Sandrini.  Thus,

6    even if Plaintiffs did not state a valid antitrust claim against the Commission (which they do), by the

7    Commission's own admission, the unfair competition claim should proceed.

8    **VI.    PLAINTIFFS CLAIM FOR UNJUST ENRICHMENT AND CONSTRUCTIVE**

9         **TRUST SHOULD NOT BE DISMISSED.**

10        The Commission's request that Plaintiffs' constructive trust and unjust enrichment claims be

11   dismissed is based entirely on the requested dismissal of Plaintiffs' other claims.  Because Plaintiffs

12   have sufficiently plead other claims upon which their claim for a constructive trust and unjust

13   enrichment can stand, including antitrust, misuse and unfair competition claims, these claims should

14   also stand and not be dismissed.

15   **VII.   THE ALLEGATIONS THE COMMISSION SEEKS TO STRIKE ARE RELEVANT**

16        **AND DIRECTLY RELATED TO PLAINTIFFS' CAUSES OF ACTION**

17        "[S]triking a party's pleadings is an extreme measure, and, as a result… 'motions to strike

18   under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'"  *Stanbury Law*

19   *Firm, P.A. v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v.*

20   *United States*, 570 F.2d 221, 229 (8th Cir.1977) and citing 5 Wright & Miller, Federal Practice and

21   Procedure: Civil § 1380 at 783 (1969); *Resolution Trust Corp. v. Gibson*, 829 F. Supp. 1103, 1106

22   (W.D.Mo.1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000)

23   ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.' ").

24        In seeking to strike several portions of Plaintiffs' Complaint, the Commission once again

25   misreads the Complaint and the allegations therein.  The Commission first contends that allegations

26   regarding the Commission's amnesty program should be stricken, assuming that the only relevance

27   of those allegations is antirust damages suffered by Plaintiffs.  This is false.  The Commission's

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

granting of amnesty to 17 growers who were in possession of Sweet Scarlet prior to February 2002 is relevant and important to several issues in this case, including: (1) the Commission's knowledge that the patent on Sweet Scarlet was fraudulently procured, (2) the Commission's attempts to avoid invalidity challenges to the patent on Sweet Scarlet, knowing it was fraudulently procured, (3) the Commissions threat of enforcement and enforcement of a patent known to be fraudulently procured, and (4) the Commission's attempt to extend the scope of its patents beyond their legal bounds. Thus, the Commission's argument that the amnesty program is irrelevant simply because Plaintiffs did not participate in that program completely misses the mark, as the amnesty program is relevant to issues beyond Plaintiffs' antitrust damages.  Under these circumstances, allegations cannot be stricken.

The Commission next seeks to strike certain prayers for relief from Plaintiffs' Complaint. First, prayers for relief are not the proper subject of a motion to strike.  *Massachusetts v. Russell Stover Candies, Inc.*, 541 F. Supp. 143, 145 (D. Ma. 1982) ("The request for an award of expenses and costs does not fall within any of the categories referred to in the rule [12(f)].").  Even if prayers for relief were the proper subject of motions to strike, this Court has broad equitable powers to fashion a judgment sufficient to remedy the Commission's anticompetitive conduct under federal antitrust laws, California unfair competitions law and the equitable doctrines of unjust enrichment and constructive trusts.  *California v. American Stores Co.*, 495 U.S. 271, 283-284 (1990) (holding that divestiture is an appropriate injunctive remedy under Clayton Act private suits) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 129-133 (1969) (reinstating injunction that required defendants to withdraw from patent pools); *see also Silver v. New York Stock Exchange*, 373 U.S. 341, 345 (1963) (reinstating judgment for defendants in suit to compel installation of wire services)). "We have recognized when construing § 16 that it was enacted not merely to provide private relief, but to serve as well the high purpose of enforcing the antitrust laws…. We have accordingly applied the section with this purpose in mind, and with the knowledge that the remedy it affords, like other equitable remedies, is flexible and capable of nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."  *Id.*

-30-

1

2

3

4

(internal citations and quotation marks omitted).  Because this Court has the equitable discretion to fashion a judgment that will reach the ill-gotten royalties collected by the Commission, beyond those paid by Plaintiffs, a motion to strike Plaintiffs' prayer for relief of these royalties is inappropriate.

5

6

**VIII.    IF ANY CLAIMS ARE DISMISSED, PLAINTIFFS SHOULD BE ALLOWED TO AMEND THEIR PLEADING**

7

8

9

10

11

12

Ninth Circuit law is well settled that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Levine v. Safeguard Health Enterprises, Inc.*, 32 Fed. Appx. 276, 278, 2002 WL 464466 (9th Cir.2002) (unpublished) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  In *Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048, 1051-1052 (9th Cir. 2003), the Ninth Circuit reconfirmed the extreme liberality with which leave to amend should be granted:

13

14

15

16

> Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires."  This policy is "to be applied with extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).  In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court offered the following factors a district court should consider in deciding whether to grant leave to amend:

17

18

19

20

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."  *Id.* at 182, 83 S.Ct. 227.

21

22

23

24

25

26

27

28

Not all of the so-called *Foman* factors merit equal weight in determining whether leave to amend should be granted.  The Ninth Circuit, as well as other appellate courts, have repeatedly held that the consideration of prejudice to the opposing party carries the greatest weight in determining whether to allow a pleading amendment.  *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).  Indeed, prejudice is the "touchstone of the inquiry under Rule 15(a)." *LoneStar Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (stating that "the crucial factor is the resulting prejudice to the opposing party").  Moreover, prejudice to the pleader is also paramount in determining whether leave to

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-31-

1    amend should be granted: the Ninth Circuit has repeatedly recognized that "[d]ismissal with

2    prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the

3    complaint could not be saved by amendment." *Eminence Capital*, 316 F.3d at 1052.  Here, the

4    Commission will suffer no prejudice if leave to amend is granted, but if leave is not granted,

5    Plaintiffs will suffer extreme prejudice.  Accordingly, should the Court be inclined to dismiss any of

6    Plaintiffs' claims, Plaintiffs respectfully request leave to amend to cure any defects.

7                                    **<u>CONCLUSION</u>**

8            For the foregoing reasons, Plaintiffs respectfully ask that the Commission's motion to

9    dismiss and to strike be denied.

10

11   DATED:   January 9, 2008                    HENNIGAN, BENNETT & DORMAN LLP

12                                               By_____/S/ Lawrence M. Hadley_____
                                                         Lawrence M. Hadley

13
                                                 Attorneys for Plaintiffs
14                                               DELANO FARMS COMPANY; FOUR STAR
                                                 FRUIT, INC.; GERAWAN FARMING, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 1:07-cv-01610-OWW-SMS                          OPPOSITION TO MOTION TO DISMISS

**Certificate of Service**

***Delano Farms Company, et al. v. The California Table Grape Commission***
USDC Eastern District Case No. 1:07-cv-01610-OWW-SMS

I certify that on January 9, 2008, I have caused the following document:

**PLAINTIFFS' OPPOSITION TO THE CALIFORNIA TABLE GRAPE
COMMISSION'S MOTION TO DISMISS AND MOTION TO STRIKE**

to be filed electronically with the Clerk of the Court through ECF will send an e-notice of the

electronic filing to be the following:

Brian M. Boynton
(brian.boynton@wilmerhale.com)
WilmerHale
1875 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  (202) 663-6044
Facsimile:   (202) 663-6363

     Dated:  January 9, 2008                                  /S/ Lawrence M. Hadley
                                                              Lawrence M. Hadley

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

649567.02

Case No. 1:07-cv-01610-OWW-SMS                          OPPOSITION TO MOTION TO DISMISS