1 WILMER CUTLER PICKERING
     HALE AND DORR LLP
2 Randolph D. Moss     (pro hac vice)
Brian M. Boynton     (SBN 222193)
3 1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
4 (202) 663-6000
(202) 663-6363 (fax)
5 randolph.moss@wilmerhale.com
brian.boynton@wilmerhale.com
6
Attorneys for Defendant THE CALIFORNIA
7 TABLE GRAPE COMMISSION

8
                **UNITED STATES DISTRICT COURT**
9                **EASTERN DISTRICT OF CALIFORNIA**

10

11 | DELANO FARMS COMPANY; FOUR ) | CASE NO. 1:07-cv-01610-OWW-SMS |
STAR FRUIT, INC.; AND GERAWAN )

12 FARMING, INC.,                              )
                                                       )            **MEMORANDUM IN SUPPORT OF**
13                          Plaintiffs,         )            **DEFENDANT THE CALIFORNIA TABLE**
                                                       )            **GRAPE COMMISSION'S MOTION TO**
14                 v.                              )            **DISMISS PLAINTIFFS' SECOND**
                                                       )            **AMENDED COMPLAINT**
15 THE CALIFORNIA TABLE GRAPE   )
COMMISSION; UNITED STATES OF )
16 AMERICA; UNITED STATES           )            Date:     April 12, 2010
DEPARTMENT OF AGRICULTURE; )            Time:     10:00 a.m.
17 AND TOM VILSACK, SECRETARY    )            Judge:    Hon. Oliver W. Wanger
OF THE UNITED STATES               )            Ctrm.:    #3
18 DEPARTMENT OF AGRICULTURE   )
(IN HIS OFFICIAL CAPACITY),         )
19                                                      )
                          Defendants.         )
20 _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

ARGUMENT ................................................................................................................6

    I.     PLAINTIFFS' APA CHALLENGE TO THE USDA'S LICENSING
           DECISIONS FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS
           DID NOT EXHAUST AN AVAILABLE ADMINISTRATIVE REMEDY..........6

          A.    Plaintiffs Have Not Established That Ignorance Excuses A Failure To
                Exhaust..................................................................................................8

          B.    Plaintiffs Were On Inquiry Notice But Failed To Act With Reasonable
                Diligence ...............................................................................................9

          C.    Plaintiffs Had Actual Knowledge Of The Facts .......................................12

    II.    PLAINTIFFS' UNFAIR COMPETITION CLAIM MUST BE DISMISSED......14

          A.    Plaintiffs' Claim Is Preempted By Federal Law ........................................15

          B.    The Commission Is Not A Proper Defendant Under § 17200 ...................19

          C.    Plaintiffs' Unfair Competition Claim Fails As A Matter of Law .............22

    III.    PLAINTIFFS' UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST
           CLAIMS MUST BE DISMISSED ......................................................................23

CONCLUSION............................................................................................................23

MEM. ISO CTGC MTD SAC

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Ashcroft v. Iqbal,*
        129 S. Ct. 1937 (2009) ........................................................................9

*Bernardo v. Planned Parenthood Federation of America,*
        115 Cal. App. 4th 322 (2004) ..........................................................22

*Bicycle Trails Council of Marin v. Babbitt,*
        No. C-93-0009, 1994 WL 508892 (N.D. Cal. Sept. 1, 1994)............8, 10

*Biotechnology Industry Organization v. District of Columbia,*
        496 F.3d 1362 (Fed. Cir. 2007) ...................................................16, 17

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
        489 U.S. 141 (1989) ......................................................................15, 17

*Branch v. Tunnell,*
        14 F.3d 449 (9th Cir. 1994) ..............................................................11

*California Medical Ass'n, Inc. v. Regents of University of California,*
        79 Cal. App. 4th 542 (2000) .........................................................19, 20

*California Table Grape Commission v. RB Sandrini, Inc.,*
        No. 06-00842, 2007 WL 1847631 (E.D. Cal. June 27, 2007).........20, 22

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
        973 P.2d 527 (Cal. 1999) ....................................................................22

*Community Memorial Hospital of San Buena Ventura v. County of Ventura,*
        50 Cal. App. 4th 199 (1996) .........................................................19, 20

*Compco Corp. v. Day-Brite Lighting, Inc.,*
        376 U.S. 234 (1964)............................................................................15

*Delano Farms Co. v. California Table Grape Commission,*
        586 F.3d 1219 (9th Cir. 2009) ...........................................................20

*Felder v. Casey,*
        487 U.S. 131 (1988)............................................................................15

*Free v. Bland,*
        369 U.S. 663 (1962)............................................................................15

*Friends of Sierra Railroad, Inc. v. ICC,*
        881 F.2d 663 (9th Cir. 1989) ...............................................................7

MEM. ISO CTGC MTD SAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Goodyear Atomic Corp. v. Miller*,
    486 U.S. 174 (1988) ........................................................................................19

*Hancock v. Train*,
    426 U.S. 167 (1976) ........................................................................................19

*Hastings v. Judicial Conference of United States*,
    829 F.2d 91 (D.C. Cir. 1987) ...........................................................................9

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ..........................................................................................15

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) ......................................................................16

*International Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ........................................................................................18

*Janis v. California State Lottery Commission*,
    68 Cal. App. 4th 824 (1998) ...........................................................................18

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ...........................................................11

*Marathon Oil Co. v. United States*,
    807 F.2d 759 (9th Cir. 1986) .............................................................................6

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) .........................................................................23

*McKell v. Washington Mutual, Inc.*,
    142 Cal. App. 4th 1457 (2006) .......................................................................22

*Mir v. Little Co. of Mary Hospital*,
    844 F.2d 646 (9th Cir. 1988) ...........................................................................11

*Mittal Steel Point Lisas Ltd. v. United States*,
    548 F.3d 1375 (Fed. Cir. 2008) .........................................................................8

*National Wildlife Federation v. EPA*,
    286 F.3d 554 (D.C. Cir. 2002) ...........................................................................6

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ......................................................11

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
    150 Cal. App. 4th 384 (2007) .........................................................................23

*PETA, Inc. v. California Milk Producers Advisory Board*,
    125 Cal. App. 4th 871 (2005) ...................................................................19, 20

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964)..................................................................15, 16, 17

*Sola Electric Co. v. Jefferson Electric Co.*,
    317 U.S. 173 (1942).........................................................................17

*Southern Research Institute v. Griffin Corp.*,
    938 F.2d 1249 (11th Cir. 1991) .........................................................6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................9, 11

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ..........................................................18

*Trinkle v. California State Lottery*,
    71 Cal. App. 4th 1198 (1999) ...........................................................19

*United States v. Lansing*,
    424 F.2d 225 (9th Cir. 1970) ............................................................11

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
    344 F.3d 1294 (11th Cir. 2003) .........................................................16

*Wells v. One2One Learning Foundation*,
    39 Cal. 4th 1164 (2006)....................................................................20

*Woodford v. Ngo*,
    548 U.S. 81 (2006)..............................................................................8

*Wyatt v. Terhune*,
    315 F.3d 1108 (9th Cir. 2003) ..........................................................11

## CONSTITUTIONAL AND STATUTORY PROVISIONS

Cal. Const. art. IX, § 9 ............................................................................20

5 U.S.C. § 706 ..........................................................................................5

28 U.S.C.
    § 2409 ...................................................................................................5
    § 2410 ...................................................................................................5

35 U.S.C.
    § 207 ...................................................................................................18
    § 209 .........................................................................................1, 5, 6, 9

44 U.S.C. § 1507 ......................................................................................7

Unfair Practices Act, Cal. Bus. & Prof. Code
    §§ 17000 *et seq.* ........................................................................................20
    § 17021 ............................................................................................................20

The California Unfair Competition Law, Cal. Bus. & Prof. Code
    §§ 17200 *et seq.* ........................................................................................14
    § 17200 ..............................................................................................3, 4, 15, 19
    § 17201 ................................................................................14, 19, 20, 21
    § 17203 ................................................................................................14, 19

Cal. Food & Agric. Code
    § 65500 ............................................................................................................19
    § 65550 ....................................................................................................20, 21
    § 65551 ....................................................................................................11, 20
    § 65604 ..............................................................................................................8
    § 65650.5 ................................................................................................20, 21
    § 65651 ............................................................................................................21

Cal. Gov't Code
    § 11123 ............................................................................................................12
    § 23003 ............................................................................................................20

D.C. Code
    § 28-4553 ........................................................................................................16
    § 28-4554 ........................................................................................................16

**RULES**

Fed. R. Evid. 201 ....................................................................................................11

**ADMINISTRATIVE MATERIALS**

68 Fed. Reg. 22,671-01 (Apr. 29, 2003).....................................................7, 10

69 Fed. Reg. 76,902 (Dec. 23, 2004).........................................................7, 10

1

**INTRODUCTION**

2          This case began principally as a challenge to the validity of three patents owned by the

3    United States and licensed to the California Table Grape Commission ("Commission").  In two

4    decisions issued last year, the Court held that plaintiffs' invalidity claims could not proceed because

5    the United States is a necessary and indispensable party but cannot be joined due to sovereign

6    immunity.  All that now remains of plaintiffs' complaint is a procedurally barred claim under the

7    Administrative Procedure Act ("APA") and a meritless state unfair competition claim.  The Court

8    should dismiss these claims with prejudice and thereby finally dispose of this case.

9          **The APA Claim**.  Unable to pursue their primary contention that the United States' patents

10   are invalid, plaintiffs' remaining claim under the APA challenges only the decisions by the United

11   States Department of Agriculture ("USDA") to license the Sweet Scarlet, Scarlet Royal, and

12   Autumn King grape varieties ("patented varieties") to the Commission pursuant to the Bayh-Dole

13   Act (35 U.S.C. § 209).[1/]  This claim—which was asserted for the first time when plaintiffs purported

14   to invoke the APA to waive the United States' sovereign immunity—must be dismissed because

15   plaintiffs failed to exhaust available administrative remedies.

16          The Bayh-Dole Act requires an agency that intends to grant an exclusive license to a

17   government-owned invention to announce its intent in the Federal Register and to provide an

18   opportunity for public comment.  The USDA did so for each of the patented varieties licensed to the

19   Commission.  But plaintiffs never raised *any* objection to *any* of the proposed licenses.

20   Accordingly, this Court held that plaintiffs' claims must be dismissed for failure to exhaust

21   administrative remedies unless they can "demonstrate[] that exhaustion should be excused."  Dkt.

22   No. 84, at 59.

23          Plaintiffs have not met this burden in their Second Amended Complaint ("SAC").  The only

24   basis plaintiffs offer for excusing their undisputed failure to exhaust is that they allegedly "did not

25

---

26   [1/]     The Commission has filed a motion to intervene as of right or, in the alternative, by
     permission of the Court, as a defendant in plaintiffs' APA claim against the United States.  The
27   Commission is a party to the challenged license agreements, and to the extent intervention is
     necessary to permit the Commission to defend those licenses, it is appropriate for the reasons given
28   by the Commission in the memorandum supporting its motion.

know and could not have known" that the Commission intended to charge royalties for use of the patented varieties, to distribute those varieties through licensed nurseries, and to restrict self-propagation by growers.  SAC ¶ 79.  Plaintiffs' attempt to excuse their failure to exhaust fails for at least three reasons:

*First*, the requirement to exhaust administrative remedies is not waived simply because a party alleges it did not know facts it later contends were relevant.  Indeed, such a rule would render the exhaustion requirement meaningless, since in virtually every case someone who is unhappy with an agency decision could claim a lack of personal knowledge about some arguably relevant fact and thereby seek to challenge the agency's decision years after the administrative process has closed.  Here, moreover, the Bayh-Dole Act does not require publication of the type of details cited by plaintiffs and therefore does not condition plaintiffs' obligation to object on knowledge of such information.

*Second*, plaintiffs cannot rely on their alleged lack of knowledge to excuse their failure to exhaust when it is clear that they could have discovered the relevant information through the exercise of reasonable diligence.  The statement in the Federal Register that the USDA intended to grant the Commission an "exclusive," "royalty-bearing" license was more than sufficient to notify plaintiffs that the Commission would be receiving authority to charge royalties, grant sub-licenses, and restrict the distribution and propagation of patented plant material.  It was therefore more than sufficient to put plaintiffs on notice of the need to file any comments objecting to that grant of authority.  And if there were any doubt, plaintiffs could have contacted the USDA, which listed an address and telephone number "for further information," or the Commission itself.  Finally, the Commission held multiple public meetings at which it discussed the features of its patenting and licensing program that plaintiffs now claim they "could not have known."

*Third*, there is overwhelming evidence that plaintiffs were on *actual notice* of the alleged details in question *before* the licenses to Scarlet Royal and Autumn King were granted.  Not only had the Commission sent multiple communications to growers about its patenting and licensing program, but the very plaintiffs in this case had filed a lawsuit against the Commission that

MEM. ISO CTGC MTD SAC

1    demonstrated detailed knowledge of that program.[2/]

2        **<u>The Unfair Competition Claim</u>**.  Plaintiffs' second claim—brought against the Commission

3    under California Business and Professions Code § 17200—also should be dismissed.  Like their

4    APA claim, plaintiffs' claim under § 17200 has been reduced to but a sliver of its former self.  The

5    claim initially alleged that the Commission had exploited the patents "in a manner that violates

6    antitrust laws" because the patents are allegedly invalid.  Compl. ¶ 111.  But that claim was

7    dismissed with the other invalidity claims.  *See* Dkt. No. 84, at 63.  The only portion of the claim

8    still in the case is plaintiffs' argument—never even expressly pled in their complaint, *see* SAC

9    ¶¶ 85-88—that it is somehow unfair for the Commission to collect royalties from nurseries on sales

10   to plaintiffs because they (like every other California grower) previously paid assessments to the

11   Commission, which the Commission used in small part to fund a portion of the USDA grape

12   breeding program.

13       The Court previously concluded that the limited briefing the Commission was able to devote

14   to this ancillary issue was insufficient to demonstrate that the claim failed as a matter of law.  The

15   Court therefore denied the Commission's motion but did so "without prejudice," finding merely that

16   plaintiffs had asserted conduct that was "arguably" unfair.  *See* Dkt. No. 84, at 64-65 (capitalization

17   removed).  As explained below, however, plaintiffs' alleged "double-payment" theory fails for three

18   independent reasons:

19       *First*, the claim is preempted by federal patent law.  Plaintiffs' challenge to the

20   Commission's collection of patent royalties strikes at the heart of the rights granted by a federal

21   patent.  It also conflicts with the Bayh-Dole Act, which permits the collection of royalties from those

22   who benefit from using an invention even though they may have contributed to the invention's

23   development, and impermissibly burdens the federal government's rights in the patents.

24       *Second*, the Commission is not even a proper defendant to this claim.  The Commission is a

25   public entity and therefore not a "person" subject to suit under § 17200.  To challenge the

26

27   _____

[2/]      As discussed *infra* n.6, the Court may look beyond the complaint in ruling on exhaustion
28   issues.  In addition, it may take judicial notice of public records, such as the minutes of Commission
     meetings and plaintiffs' prior complaint.

Commission's acts as "unfair," plaintiffs must pursue relief through the administrative review mechanism established by the Ketchum Act, not by filing suit under § 17200.

*Third*, plaintiffs' double-payment theory fails as a matter of law and logic. There is nothing unfair about charging a user fee to those who benefit most directly from a program. Moreover, plaintiffs have never alleged that their assessments, either alone or in combination with other growers, covered the entire cost (or even most of the cost) of developing the patented varieties.

Accordingly, plaintiffs' unfair competition claim—along with their entirely derivative third and fourth claims alleging unjust enrichment and seeking imposition of a constructive trust—should also be dismissed with prejudice.

## BACKGROUND

The Court is well acquainted with the background of this case, having twice dismissed almost all of plaintiffs' claims. Plaintiffs' original complaint, which named only the Commission as a defendant, challenged the validity and enforceability of the United States' patents and asserted federal antitrust, state unfair competition, and derivative unjust enrichment and constructive trust claims against the Commission. On February 20, 2009, the Court dismissed most of plaintiffs' claims. *See* Dkt. No. 42. The Court held that the United States is a necessary party under Rule 19(a) to the claims challenging its patents, that the United States could not be joined because plaintiffs had failed to identify a clear waiver of sovereign immunity, and that under Rule 19(b) the challenges to the United States' patents could not continue in its absence. The Court also dismissed plaintiffs' antitrust claims because the Complaint did not adequately allege that each of the patented varieties constitutes its own relevant market. And the Court dismissed all but a limited aspect of plaintiffs' unfair competition claim and their purely derivative unjust enrichment and constructive trust claims.

Plaintiffs responded by filing a First Amended Complaint ("FAC") that attempted to avoid the sovereign immunity of the United States by recasting their challenges to the government's patents as APA claims against the United States, the USDA, and the Secretary of Agriculture. Plaintiffs dropped their patent misuse claim, but added two claims against the Commission seeking to declare its license agreements void under federal and state law on the ground that the patents were invalid. On October 27, 2009, the Court once again dismissed all but a small portion of plaintiffs'

MEM. ISO CTGC MTD SAC

1   claims.  Dkt. No. 84.  It rejected plaintiffs' argument that they could challenge the United States'

2   patents without identifying a valid waiver of sovereign immunity, and rejected plaintiffs' attempt to

3   identify such a waiver under the APA.  On the latter point, the Court concluded that the Patent Act

4   and 28 U.S.C. §§ 2409(a) & 2410(a) preclude review of plaintiffs' patent-related claims, *id*. at 29-36

5   & n.4, and that "USDA's decision to grant exclusive licenses to the Commission is the only action

6   about which plaintiffs complain that even arguably falls with[in] the definition of 'agency action,'"

7   *id*. at 51.  Accordingly, the Court dismissed all of plaintiffs' APA and declaratory judgment claims

8   based on the alleged invalidity or unenforceability of the patents, *id*. at 29-36, 59; the antitrust claim

9   (which the Court also dismissed, once again, for failure to allege a cognizable market), *id*. at 60; the

10  claims to void the license agreements due to alleged patent invalidity, *id*. at 62-63; and "the portion

11  of the Unfair Competition claim that relies upon the Commission's enforcement of an allegedly

12  'fraudulently' procured patent," *id*. at 63.

13         With respect to the APA claim challenging the USDA's decision to exclusively license the

14  patented varieties to the Commission, the Court held that plaintiffs had Article III standing and that

15  the Bayh-Dole Act did not commit the licensing decisions to agency discretion.[3/]  *Id*. at 42-45.  But

16  the Court held that plaintiffs had failed to show how they could challenge the alleged

17  anticompetitive effect of the licenses without challenging the underlying patents, *id*. at 47-48,[4/] and

18  concluded that plaintiffs lacked prudential standing because it was not clear how plaintiffs had been

19  harmed by the USDA's alleged violation of 35 U.S.C. § 209(a)(1), *id*. at 48.  In addition, the Court

20  held that because plaintiffs did not file comments in response to the Federal Register notices

21  announcing the USDA's intention to grant the exclusive licenses, they had failed to exhaust an

22  available administrative remedy.  *Id*. at 54-59.  Although plaintiffs "assert[ed] that they could not

---

23  [3/]     The Commission preserves the arguments it raised in its motion to dismiss plaintiffs' First

24  Amended Complaint and related briefing, including its arguments that plaintiffs lack Article III
    standing and that the licensing decisions they challenge are committed to agency discretion as a

25  matter of law.  *See* Dkt. Nos. 66, 67, & 73.

    [4/]     In fact, among other substantive defects, plaintiffs' SAC does not adequately allege that the

26  licenses lessen competition in any relevant sense.  The Commission, however, has limited the
    present motion to the plain procedural defect in plaintiffs' APA claim: their undisputed failure to

27  exhaust.  The Commission reserves the right to seek dismissal of plaintiffs' APA claim on the merits
    after the United States lodges the administrative record necessary to conduct on-the-record review as

28  required by the APA.  *See* 5 U.S.C. § 706.

1   have been aware of certain facts necessary to object to the USDA's Federal Register notice," the

2   court held that most of the alleged facts "concern[ed] the validity of the patents" and "cannot be

3   adjudicated here because of sovereign immunity." *Id*. at 58.  It also held that plaintiffs' alleged lack

4   of knowledge regarding the nurseries selected as sub-licensees by the Commission was too

5   insubstantial, "in light of all other known facts," to excuse their failure to exhaust.  But the Court

6   held that "Plaintiffs shall be afforded the opportunity to amend on this issue and shall allege their

7   excuse-from-exhaustion theory in any amended complaint."  *Id.* at 59.

8         Finally, with respect to the limited portion of plaintiffs' unfair competition claim alleging a

9   double-payment theory, along with their derivative unjust enrichment and constructive trust claims,

10   the Court noted that the Commission's arguments for dismissal required further explanation and

11   stated that "[t]he Commission's motion to dismiss the Unfair Competition claim is DENIED

12   WITHOUT PREJUDICE."  *Id*. at 65.

13         On November 16, 2009, plaintiffs filed their Second Amended Complaint.

14                     **ARGUMENT**

15   **I.**    **PLAINTIFFS' APA CHALLENGE TO THE USDA'S LICENSING DECISIONS**
           **FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS DID NOT EXHAUST AN**
16          **AVAILABLE ADMINISTRATIVE REMEDY**

17         Plaintiffs' APA challenge to the USDA's decisions to license the patents on the Autumn

18   King, Scarlet Royal, and Sweet Scarlet varieties to the Commission should be dismissed because

19   plaintiffs failed to exhaust an available administrative remedy.  As this Court has recognized, the

20   Bayh-Dole Act gives interested parties an opportunity to object to any proposed exclusive license of

21   a government-owned patent.  *See* Dkt. No. 84, at 55 (citing 35 U.S.C. § 209(e)).  In circumstances

22   nearly identical to those here, the Eleventh Circuit dismissed a challenge to the USDA's grant of an

23   exclusive license for a federally owned patent under the Bayh-Dole Act because the plaintiff had

24   failed to object to the proposed license.  *Southern Res. Inst. v. Griffin Corp.*, 938 F.2d 1249, 1253

25   (11th Cir. 1991).  This Court has held that *Southern Research Institute* "appl[ies] here to impose an

26   exhaustion requirement on plaintiffs."  Dkt. No. 84, at 56; *see also National Wildlife Fed'n v. EPA*,

27   286 F.3d 554, 562 (D.C. Cir. 2002) (per curiam); *Marathon Oil Co. v. United States*, 807 F.2d 759,

28   767 (9th Cir. 1986).

              MEM. ISO CTGC MTD SAC

As required by the Bayh-Dole Act, the USDA announced in the Federal Register that it intended to grant an exclusive license to the Commission for each of the patented varieties.  68 Fed. Reg. 22,671-01 (Apr. 29, 2003) (Sweet Scarlet) (Ex. 1); 69 Fed. Reg. 76,902 (Dec. 23, 2004) (Scarlet Royal & Autumn King) (Ex. 2).  The publication of each announcement was "sufficient to give notice of the contents of the document to a[ny] person subject to or affected by it."  44 U.S.C. § 1507; *see also Friends of Sierra R.R., Inc. v. ICC*, 881 F.2d 663, 667-668 (9th Cir. 1989) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons ….").  As the Court previously observed, "[a]ll three notices informed the public that the proposed licenses would be granted within ninety days unless the USDA received 'written evidence and argument which establishes that the grant of the license would not be consistent' with the Bayh-Dole Act and applicable regulations."  Dkt. No. 84, at 57.  Nevertheless, "Plaintiffs failed to present any evidence or argument during the prescribed comment period."  *Id.*  Thus, this Court held that plaintiffs' claims must be dismissed for failure to exhaust unless they fall within an "exception[] to judicially imposed exhaustion requirements."  *Id.*

The Court rejected plaintiffs' argument that "they could not have been aware of certain facts necessary to object to" the licenses.  *Id.* at 58.  Most of the alleged facts concerned the validity of the patents and could not be adjudicated in light of the government's sovereign immunity.  *See id.*  The only other fact plaintiffs argued they "could not have known" was that the USDA allegedly "would allow the Commission to limit distribution to a small number of nurseries, including nurseries with family ties to Commission board members."  *Id.* (quoting Dkt. No. 70, at 19-20).  They also alleged that the Federal Register notices did not disclose "the details regarding the planned royalty program" *Id.* (quoting Dkt. No. 70, at 20).  But the Court found no reason to believe that information about the Commission's plans to use nurseries to distribute the plant material "would have caused Plaintiffs to comment on the licensing proceeding."  *Id.*  And it concluded that "Plaintiffs have not demonstrated that exhaustion should be excused in this case."  *Id.* at 59.

In their SAC, plaintiffs once again allege that their failure to exhaust should be excused because they "lacked information needed to raise objections to the exclusive license[s] … at the time of the Federal Register Notices, and because the Federal Register notices lacked any information

from which Plaintiffs could have concluded that the exclusive licenses violated provisions of the

Bayh-Dole Act." SAC ¶ 80. Specifically, plaintiffs allege:

> At the time of these notices, Plaintiffs did not know and could not
> have known that the USDA authorized and that the Commission
> intended to charge patent licensing royalties for the distribution of the
> Patented Varieties from the same grower who already paid for a
> significant portion of their development costs. Plaintiffs also did not
> know and could not have known that the Commission intended to only
> allow three nurseries to distribute plant material for the Patented
> Varieties. Plaintiffs also did not know and could not have known that
> the Commission intended to include restrictions on the distribution and
> propagation of plant material by growers who obtained the Patented
> Varieties.

*Id.* ¶ 79.[5/] These allegations are insufficient for at least three reasons:

### A.    Plaintiffs Have Not Established That Ignorance Excuses A Failure To Exhaust

As an initial matter, the allegation that plaintiffs could not have known certain details

regarding the Commission's patenting and licensing program does not excuse their failure to

exhaust. The administrative exhaustion requirement is not excused simply because a party asserts

that it did not know facts it later contends were relevant. There are some established exceptions to

the general requirement that a party exhaust administrative remedies. For example, exhaustion is not

required where it would be futile. *See, e.g.*, *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d

1375, 1384 (Fed. Cir. 2008); *see also* Dkt. No. 84, at 57 (noting exception where an agency lacks

authority or jurisdiction to decide the issue presented). But no similar exception exists for situations

in which a party merely claims lack of knowledge. *See, e.g.*, *Bicycle Trails Council of Marin v.

Babbitt*, No. C-93-0009, 1994 WL 508892, at *4 (N.D. Cal. Sept. 1, 1994) ("Plaintiffs' failure to

realize that this rule as applied might harm their interests does not excuse their failure to participate

[in administrative proceedings]."). Indeed, such an exception would seriously undermine the

exhaustion requirement, since a party intent on bringing an after-the-fact challenge could almost

always assert that there was some arguably relevant information that it did not know. One purpose

of the rule is to require that those with a potential interest in administrative action do their

homework and raise relevant issues in a timely manner. *See Woodford v. Ngo*, 548 U.S. 81, 90

---

[5/]      The Commission actually collects assessments from shippers, *see* Cal. Food & Agric. Code
§ 65604; SAC ¶ 34, and charges royalties to licensed nurseries, *see* SAC ¶¶ 20, 46.

MEM. ISO CTGC MTD SAC

(2006) ("Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims."). The exception that plaintiffs would have this court create is fundamentally at odds with this purpose.

Additionally, the Bayh-Dole Act itself makes clear that a party cannot avoid having to exhaust on the ground that it lacks sufficient information to do so.  The Act merely requires agencies to give "public notice of the *intention to grant* an exclusive or partially exclusive license on a federally owned invention." 35 U.S.C. § 209(e) (emphasis added).  The Act does *not* require agencies to publish the details of the license in the Federal Register or otherwise disclose in the notice the type of information plaintiffs allege they could not have known.  It is clear on the face of the Act, therefore, that Congress did not consider knowledge of such details necessary to trigger plaintiffs' obligation to file objections within the prescribed comment period.

**B.    Plaintiffs Were On Inquiry Notice But Failed To Act With Reasonable Diligence**

Plaintiffs also cannot be excused from their failure to exhaust because it is clear that they were on at least *inquiry notice* of all the facts that they now allege they did not know and "could not have known." SAC ¶ 79.  To the extent lack of knowledge affords any basis for excusing exhaustion, it does so only in circumstances where the party has acted diligently.  Thus, in "applying the exhaustion requirement," a court must ask whether the party seeking to excuse its failure to exhaust "has been *reasonably diligent* in protecting his own interests." *Hastings v. Judicial Conference of U.S.*, 829 F.2d 91, 103 (D.C. Cir. 1987) (internal quotation marks omitted, emphasis added).

Here, plaintiffs' allegation that they "could not have known" certain facts, SAC ¶ 79, is wholly conclusory and falls far short of establishing that, in the exercise of reasonable diligence, they could not have discovered those facts.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts not "required to accept as true allegations that are merely conclusory"); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009) (complaint must contain "more than labels and conclusions").  In fact, it is clear that plaintiffs easily could have learned the facts they now allege.

MEM. ISO CTGC MTD SAC

Most obviously, plaintiffs could have simply read the Federal Register notices announcing the USDA's intent to grant the licenses to the Commission. Each of those notices stated that the USDA intended to grant the Commission an "exclusive license" that would be "royalty bearing." 68 Fed. Reg. 22,671-01; 69 Fed. Reg. 76,902. No additional information was required to put plaintiffs on notice that the Commission would be receiving authority—in its capacity as exclusive licensee— to charge royalties, grant sub-licenses, and include restrictions on the distribution and propagation of plant material. There is little point to receiving an "exclusive" license if distribution of the invention is not going to be restricted. The fact that a license is to be "royalty-bearing" plainly raises the prospect that the licensee will charge royalties. And there is nothing surprising about the possibility of a licensee having sub-license rights. Thus, to the extent plaintiffs opposed these aspects of the licenses granted to the Commission, they needed to file their objections within the 90-day comment period. *See Bicycle Trails Council*, 1994 WL 508892, at *2-4 (where regulation prohibited bicycle use in national parks except on park roads but allowed local superintendents to make exceptions, plaintiffs' failure to file timely objection was not excused even though "they did not realize how detrimental [the rule] would be to their interests" until the trails they used were actually closed).

If there remained any doubt, plaintiffs could have asked for additional information regarding the licenses being granted to the Commission. The Federal Register notices all stated that "for further information" members of the public could contact "June Blalock of the Office of Technology Transfer." 68 Fed. Reg. 22,671-01 (capitalization removed); 69 Fed. Reg. 76,902 (same). The notices then listed her *address and telephone number*. Plaintiffs could easily have written to Ms. Blalock or simply picked up the phone and called her to learn more about the "exclusive," "royalty-bearing" licenses that the USDA had announced it planned to grant the Commission. Indeed, plaintiffs could also have asked the Commission itself for clarification regarding its patenting and licensing program. When one of plaintiffs' counsel asked the Commission a series of questions about the patenting and licensing program in 2001 pursuant to a California Public Records Act request, *see* Letter from Brian Leighton to Kathleen Nave (Aug. 30, 2001) (Ex. 3), the Commission provided a detailed response within eight days, *see* Letter from Kathleen Nave to Brian Leighton

MEM. ISO CTGC MTD SAC

1   (Sept. 7, 2001) (Ex. 4).[6/]  Because plaintiffs do not allege that they took either of these simple steps,

2   their failure to exhaust cannot be excused.  *See United States v. Lansing*, 424 F.2d 225, 227 (9th Cir.

3   1970) ("[E]specially in view of the ease with which appellant could have inquired of the board and

4   learned the true status of his claim, we do not think it unreasonable to hold that he had no privilege

5   to remain in ignorance [of his right to pursue further administrative relief].").

6         Moreover, the details about the patenting and licensing program that plaintiffs allegedly

7   "could not have known" were all discussed at *open meetings* of the Commission before the deadlines

8   for submitting comments to the USDA.  For example, on April 1, 2003—28 days before publication

9   of the Sweet Scarlett notice and 118 days before the comment period closed (and nearly two years

10   before the Scarlet Royal and Autumn King comment periods closed)—the Commission's Executive

11   Committee described the Commission's plans for its patenting and licensing program in great detail,

12   including *all* of the aspects of the program that plaintiffs claim they could not have known.  *See* Ex.

13   5.  In *open session* the Executive Committee explained, among other things, that under the program

14   "all plant material would need to come from clean stock distributed by state-certified nurseries";

15   "nurseries selected as sublicensees would be asked to agree to an annual $5,000 per variety fee and

16   to a royalty of $1 on every productive unit of plant material sold"; and "growers would be required

17   to sign an agreement acknowledging that they are not allowed to self-propagate, self-graft, sell,

18   trade, or give plant material away."  *Id*.  The Committee also discussed the criteria for selecting

19   nurseries as sub-licensees and set a goal of selecting "multiple nurseries (three to four)."  *Id*.

20

---

21   [6/]     The Ninth Circuit has held that "[i]n deciding a motion to dismiss for a failure to exhaust

22   nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).  The Court may therefore consider all facts that bear on plaintiffs' failure to exhaust.  As a general matter, moreover, "it is proper … to

23   take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988)

24   (internal quotation marks omitted); *see also Sprewell*, 266 F.3d at 988 ("court need not … accept as true allegations that contradict matters properly subject to judicial notice").  Here, copies of the

25   Commission's "proceedings, records and acts" are public documents, *see* Cal. Food & Agric. Code § 65551, subject to judicial notice under Fed. R. Evid. 201(b)(2).  Finally, the Court may consider

26   "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading" without converting the

27   Commission's motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v.*

28   *FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998).

       MEM. ISO CTGC MTD SAC

1    Likewise, at its May 22, 2003 meeting—more than two months before the Sweet Scarlet comment

2    period closed (and twenty months before the Scarlet Royal and Autumn King periods closed)—the

3    Executive Committee again reviewed the criteria for selecting nurseries; agreed that "sublicensing

4    all nurseries who meet the qualifications was appropriate"; and noted that "domestic sublicensees

5    should be charged $5,000 annually and that the plant material fee to domestic growers should be $1

6    per productive unit."  *See* Ex. 6.  Not only were these meetings open to the public, *see* Cal. Gov't

7    Code § 11123 (Bagley-Keene Opening Meeting Law), but the meeting notices and agendas were

8    posted on the Commission's web site, *see* Exs. 5 & 6 ("A copy of this meeting agenda can be found

9    at www.freshCaliforniagrapes.com"); http://web.archive.org/web/20030606060656/tablegrape.com/

10   farmers/meetings.asp, and the meeting minutes were available on request.

11          Because plaintiffs did not exercise reasonable diligence in seeking out additional, available

12   information about the USDA licenses and the Commission's patenting and licensing program, their

13   alleged lack of knowledge affords no basis for excusing them from their failure to exhaust available

14   administrative remedies.

15          **C.      Plaintiffs Had Actual Knowledge Of The Facts**

16          Finally, although not necessary to defeat plaintiffs' claims, there is overwhelming and

17   indisputable evidence that before the Autumn King and Scarlet Royal comment periods closed,

18   plaintiffs had *actual* knowledge of the facts they claim they could not have known.  For example, on

19   May 7, 2004, the Commission sent a memo to *all* California growers and shippers about its patenting

20   and licensing program.  *See* Ex. 7; *see also* SAC ¶ 55.  Among other things, the memo stated that

21   "[t]here will be a one-time, plant royalty for domestic growers paid at the time of purchase from

22   licensed nurseries."  Ex. 7, at 1.  It also explained that "[p]lant material for licensed varieties will

23   only be available from commission-licensed nurseries."  *Id*. at 2.  And it stated that "[g]rowers will

24   not be able to propagate licensed plant material for their own use [o]r use by others" to "ensure that

25   only high quality, disease-free licensed plant material is planted."  *Id*.  Further information appeared

26   in a follow-up memo sent on July 12, 2004 (Ex. 8) and the Commission's *Grower Report* on August

27   20, 2004 (Ex. 9) and December 10, 2004 (Ex. 10).  All of these communications occurred before the

28   deadline for objecting to the Scarlet Royal and Autumn King licenses.

Even more remarkably, on February 10, 2005—more than five weeks before the Scarlet Royal and Autumn King deadline—the same three plaintiffs who brought this case filed a lawsuit in the U.S. District Court for the Eastern District of California challenging the Commission's patenting and licensing program. The complaint ("2005 Compl.") (Ex. 11) demonstrates beyond any doubt that plaintiffs were aware of the relevant details about the Commission's patenting and licensing program. A side-by-side comparison of what plaintiffs alleged then and what they allege now is striking:

| Current Allegations in SAC | Allegations in 2005 Complaint Before the Scarlet Royal and Autumn King Comment Period Closed |
|---|---|
| "Plaintiffs did not know and could not have known that the USDA authorized and that the Commission intended to charge patent licensing royalties for the distribution of the Patented Varieties from the same grower who already paid for a significant portion of their development costs.… Plaintiffs had every reason to believe that the distribution of the Patented Varieties would continue to be free of charge and restrictions to local growers (including Plaintiffs)[.]" SAC ¶ 79. | "[N]urseries, who wish to be sublicensees, [must] pay an annual $5,000.00 'participation fee' per variety and a one dollar 'per production unit royalty' to the Commission." 2005 Compl. ¶ 14. "[T]he nurseries will charge … growers their regular nursery fees plus at least the $1.00 fee per vine that said nurseries must pay the Commission, plus additional amounts to cover the $5,000.00 annual fee." *Id.* ¶ 16. "Plaintiffs are being required to pay for these varieties twice: Once in funding the research by USDA, which required annual assessments mandatorily imposed upon Plaintiffs to fund that research, and then again to pay at least $1.00 per vine to purchase said variety." *Id.* ¶ 19. |
| "Plaintiffs also did not know and could not have known that the Commission intended to allow only three nurseries to distribute the plant material for the Patented Varieties." SAC ¶ 79. | The Commission "sent to 'all state approved grape vine nurseries' in December of 2003, the 'criteria for selecting nurseries as sub-licensees' and requesting any interested 'grape vine nurseries'" to reply. 2005 Compl. ¶ 14.[7/] "The Commission then sent out to nurseries who responded with an intent of interest the "basic terms and conditions" for the licensed varieties…." *Id.* ¶ 15. |

---

[7/]    The December 10, 2003 letter to nurseries also stated, among other things, that "[s]ublicensees will be responsible for administering non-propagation agreements with growers" and that nurseries would be required to pay "an annual $5,000 participation fee per variety and a $1.00 per productive unit royalty." *See* Ex. 12.

| "Plaintiffs also did not know and could not have known that the Commission intended to include restrictions on the distribution and propagation of plant material by growers who obtained the Patented Varieties"  SAC ¶ 79. | "Each grower who desires to purchase said 'patented' varieties from said approved nurseries must sign a 'grower agreement,'" 2005 Compl. ¶ 16, which imposes restrictions on propagation. |
|---|---|

It is therefore apparent that plaintiffs' contention that they "did not know and could not have known" the facts on which they now base their challenge is—to put it charitably—mistaken. Publicly available documents, either sent to or accessible by plaintiffs, and *their own complaint*, belie plaintiffs' assertion.  Finally, the fact that plaintiffs indisputably had *actual* knowledge of these facts before the time to comment on the Autumn King and Scarlet Royal notices expired and that they, nonetheless, did not comment also undercuts any possible claim that these facts "would have caused Plaintiffs to comment on the [Sweet Scarlet] licensing proceeding," Dkt. No. 84, at 59.

\*        \*        \*

Because plaintiffs have not demonstrated that lack of knowledge excuses a failure to exhaust, that they acted diligently, or even that they in fact were ignorant of the facts they now allege, plaintiffs' APA claim should be dismissed for failure to exhaust.

## II.    PLAINTIFFS' UNFAIR COMPETITION CLAIM MUST BE DISMISSED

Plaintiffs' unfair competition claim also should be dismissed.  The California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq*., prohibits any "person" from engaging in "unlawful, unfair or fraudulent business act[s] or practice[s]."  *Id*. §§ 17201, 17203. The Court previously dismissed all aspects of plaintiffs' UCL claim except for their "double-payment" theory, which alleges that the Commission engaged in unfair competition by using assessments collected from California growers to help fund the USDA's breeding program and then indirectly charging growers a licensing fee to use the patented varieties that the USDA develops. *See* Dkt. No. 84, at 63-65.[8/]  With respect to that limited theory, the Court denied the Commission's motion to dismiss.  *Id*. at 64.  But, recognizing that the UCL claim was not the central focus of the

---

[8/]    The unfair competition count does not actually mention plaintiffs' double-payment theory. *See* SAC ¶¶ 84-88; FAC ¶¶ 186-190; Compl. ¶¶ 110-114.  Giving plaintiffs the benefit of every possible doubt, however, the Court found that allegations appearing earlier in the complaint "provide[d] adequate notice" of the theory despite this omission.  Dkt. No. 42, at 70-71.

1    Commission's prior briefing, the Court denied the Commission's motion "*without prejudice*."  *Id.* at

2    65 (emphasis added, capitalization removed).

3        Now that plaintiffs' UCL claim is once again before the Court and no longer in the shadow

4    of their other claims, it is clear that it cannot withstand scrutiny because (A) it is preempted by

5    federal law; (B) the Commission is not a proper defendant under § 17200; and (C) plaintiffs' double-

6    payment theory is wholly insubstantial.

7        **A.    Plaintiffs' Claim Is Preempted By Federal Law**

8        Plaintiffs contend that the UCL prohibits the Commission from charging them royalties to

9    use the patented varieties because they paid the Commission assessments, a small portion of which

10    were used to fund a portion of the USDA's development of those varieties.  Federal patent law

11    preempts this claim.

12        State law "must yield" if it "interferes with or is contrary to federal law."  *Felder v. Casey*,

13    487 U.S. 131, 138 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)).  Thus, state law is

14    preempted not only where it countermands federal law, but also where it "stands as an obstacle to

15    the accomplishment of the full purposes and objectives of Congress."  *Hines v. Davidowitz*, 312 U.S.

16    52, 67 (1941).  In determining whether a conflict exists, "the entire scheme of the [federal] statute …

17    must be considered, and that which needs must be implied is of no less force than that which is

18    expressed."  *Id.* at 67 n.20 (internal quotation marks omitted).

19        The Patent Act and other federal patent laws do not contain an express preemption provision,

20    but it is well established that "state regulation … must yield to the extent that it clashes with the

21    balance struck by Congress in our patent laws."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489

22    U.S. 141 (1989).  Accordingly, courts have repeatedly recognized that federal patent law preempts

23    state tort claims that undermine the objectives of the patent system or the means chosen by Congress

24    for achieving those objectives.  *See, e.g.*, *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234

25    (1964); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Hunter Douglas, Inc. v. Harmonic*

26    *Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998).[9/]  In such cases, courts examine the plaintiffs'

27    _____

[9/]    *Hunter Douglas* applied Federal Circuit law to the preemption question before it, but stated
28    in dicta that it would have applied the law of the regional circuit in which the district court was
     located if there had been authority on point. 153 F.3d at 1333.  In *Midwest Industries, Inc. v.*

1  allegations and theories of liability to determine whether a conflict exists. *Hunter Douglas*, 153 F.3d

2  at 1335. "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent

3  law," then the state tort is preempted and "the plaintiff may not invoke the state law remedy." *Id*.

4         Here, plaintiffs' double-payment theory conflicts with federal law in three independent ways:

5         *First*, plaintiffs' contention that they are exempt from paying patent royalties because they

6  indirectly helped to fund the USDA's breeding program strikes at the heart of the rights granted by a

7  federal patent. "The grant of a patent is the grant of a statutory monopoly … meant to encourage

8  invention by rewarding the inventor with the right … to exclude others from the use of his

9  invention." *Sears*, 376 U.S. at 229. This exclusionary right allows the patentee to reap the rewards

10 of "whatever degree of market power it might gain thereby." *Valley Drug Co. v. Geneva Pharms.,*

11 *Inc.*, 344 F.3d 1294, 1304 (11th Cir. 2003). One way in which the patentee may do so is by charging

12 a royalty for the use of its invention.

13        A plaintiff cannot use state law to burden or otherwise interfere with this federal right. *See*

14 *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1374 (Fed. Cir. 2007) ("BIO").

15 In *BIO*, the Federal Circuit held that the Patent Act preempted a District of Columbia statute that

16 sought to regulate the prices of patented prescription drugs.[10] The price-control statute declared it

17 "unlawful for any drug manufacturer or licensee thereof" to sell or supply "a patented prescription

18 drug" if doing so "result[ed] in the prescription drug being sold in the District for an excessive

19 price." *Id*. at 1365 (quoting D.C. Code § 28-4553). The statute then authorized "[a]ny affected

20 party" to file a civil suit to enforce this prohibition on excessive prices. *Id*. at 1366 (quoting D.C.

21 Code § 28-4554). In finding that the statute conflicted with federal law, the Federal Circuit noted

22 that its prior decisions had "repeatedly recognized" the importance of "the pecuniary rewards

23 stemming from the patent right," *id*. at 1372, and that "Congress, too, ha[d] acknowledged the

24 central role of enhanced profits in the statutory incentive scheme it has developed," *id*. at 1373.

25 _____

26 *Karavan Trailers, Inc.*, 175 F.3d 1356, 1357 (Fed. Cir. 1999) (en banc), the Federal Circuit clarified
   that it will "apply Federal Circuit law in determining whether patent law conflicts with other federal
27 statutes or preempts state law causes of action."

   [10]      For preemption purposes, laws enacted by the District of Columbia are treated the same as
28 state laws and must yield when they conflict with an enactment of Congress. *BIO*, 496 F.3d at 1371.

1    Because the District's price-control statute "diminish[ed] the reward to patentees," and "thus

2    limit[ed] the full exercise of the exclusionary power that derives from a patent," it was "contrary to

3    the goals established by Congress in the patent laws" and therefore preempted. *Id*. at 1374.

4         Just as the District of Columbia could not limit the price charged for patented prescription

5    drugs, plaintiffs may not use the UCL to limit the royalties they must pay for use of the patented

6    varieties. "It is a familiar doctrine that the prohibition of a federal statute may not be set at naught,

7    *or its benefits denied*, by state statutes or state common law rules." *Sola Elec. Co. v. Jefferson Elec.*

8    *Co.*, 317 U.S. 173, 176 (1942) (emphasis added). If plaintiffs and other growers who paid

9    assessments could enjoin the Commission from collecting royalties, it would substantially diminish

10   the value of the patents and undercut "the statutory framework of rewards and incentives"

11   established by Congress. *BIO*, 496 F.3d at 1374.

12        Moreover, the Court must consider the "prospect of all 50 States establishing similar

13   protections." *Bonito Boats*, 489 U.S. at 161. If California could exempt growers from paying

14   royalties on federal patents because the Commission used assessments to contribute to the USDA's

15   breeding program, could Denver exempt itself from paying any patent royalties on the ground that it

16   would be unfair for patentees who benefit from city services (roads, police protection, etc.) to

17   exercise their rights against the City? Could New Mexico adopt a law applying similar logic to

18   exempt a nonprofit that donates money to medical research from the reach of any resulting patents?

19   Could Texas say that college students need not pay royalties on university-owned patents because

20   their tuition helped pay for the university's research? Regardless of whether any of these measures

21   might "be a worthy undertaking," *BIO*, 496 F.3d at 1374, allowing state law to carve out such

22   exceptions would impermissibly alter the rights conferred by a patent, *id*., and undermine the federal

23   objective of achieving "national uniformity" in patent law, *Sears*, 376 U.S. at 231 n.7.

24        The Patent Act recognizes no exception to the rights conferred by a patent for parties who

25   allege that they helped fund the research that led to the patent—and with good reason. Such a rule

26   would open the door to claims to a royalty-free license from every taxpayer, creditor, shareholder,

27   and donor who believed his money had been used (directly or indirectly) to help create someone

28   else's invention. If a fundamental change like that is to be made to the patent system, it must be

17                                          MEM. ISO CTGC MTD SAC

1   made by Congress.  Plaintiffs may not use state law to carve out their own ad hoc exception.

2          *Second*, plaintiffs' double-payment theory conflicts with the purposes and provisions of the

3   Bayh-Dole Act.  Congress enacted the Bayh-Dole Act to facilitate the patenting and licensing of

4   inventions produced by the federal government or with federal support.  To that end, the Act

5   authorizes each federal agency to "apply for, obtain, and maintain patents or other forms of

6   protection … on inventions in which the Federal Government owns a right, title, or interest."  35

7   U.S.C. § 207(a)(1).  It also authorizes agencies to "grant nonexclusive, *exclusive*, or partially

8   exclusive licenses under federally owned inventions, royalty-free or *for royalties or other*

9   *consideration*, and on such terms and conditions … as determined appropriate in the public interest."

10  *Id*. § 207(a)(2) (emphasis added).

11         These provisions make clear that Congress intended to create a system in which federal

12  agencies could patent their inventions, grant exclusive licenses, administer their rights through third-

13  parties, and charge royalties.  These rights are unaffected by any financial support that a person may

14  have provided directly or indirectly to the invention's development.  Government patents are funded

15  in whole or in part by tax revenue and can be supported by entities working in partnership with the

16  government.  Yet, the Bayh-Dole Act permits the government to collect royalties from all licensees,

17  including taxpayers and any others who support the development of an invention.  The same is true

18  when businesses and nonprofit organizations obtain patents based on federally funded research.

19  Plaintiffs cannot use state law to countermand that federal judgment or "interfere[] with the

20  'methods by which the federal statute was designed to reach [its] goal.'"  *Ting v. AT&T*, 319 F.3d

21  1126, 1137 (9th Cir. 2003) (quoting *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)).

22         *Finally*, apart from its interference with the rights granted by federal law to patent holders

23  and their exclusive licensees, plaintiffs' UCL claim is also preempted because the patent holder in

24  this case is the federal government.  It is no accident that plaintiffs have paired their UCL claim

25  against the Commission with an APA claim directly challenging the USDA's decision to grant the

26  Commission exclusive, royalty-bearing licenses to the patented varieties.  It is ultimately those

27  licenses that plaintiffs target in their UCL claim when they seek to enjoin the Commission from

28  collecting royalties.  Indeed, enjoining the Commission would necessarily deprive the USDA of its

share of those royalties that the Commission collects on its behalf—something plaintiffs could not do in an action against the USDA. *See Hancock v. Train*, 426 U.S. 167, 179 (1976) ("[W]here Congress does not affirmatively declare its instrumentalities or property subject to [state] regulation, the federal function must be left free of regulation." (internal quotation marks omitted)); *cf.* Dkt. No. 84, at 63 ("[S]tate law cannot be used to challenge a contract entered into pursuant to federal law where the government is a party."). And just as plaintiffs could not use state law to directly enjoin the USDA from collecting royalties, they may not do so indirectly by imposing special burdens on the Commission in its capacity as the federal government's licensee. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988) ("[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor.").

       **B.**       **The Commission Is Not A Proper Defendant Under § 17200**

At an even more fundamental level, plaintiffs' UCL claim additionally fails because, as a public entity, the Commission is not a proper defendant under the UCL.

1.      The UCL applies only to "person[s]" that "engage in unfair competition." Cal. Bus. & Prof. Code § 17203. The statute defines "person" to mean "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." *Id.* § 17201. It is well established that public entities "are not included in this definition of person." *Janis v. California State Lottery Comm'n*, 68 Cal. App. 4th 824, 831 (1998); *see also PETA, Inc. v. California Milk Prods. Advisory Bd.*, 125 Cal. App. 4th 871, 877-879 (2005); *California Med. Ass'n, Inc. v. Regents of Univ. of Cal.*, 79 Cal. App. 4th 542, 551 (2000); *Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1203-1204 (1999); *Community Mem'l Hosp. v. County of Ventura*, 50 Cal. App. 4th 199, 208-210 (1996).

The Commission unquestionably qualifies as a public entity for purposes of § 17200. The Legislature created the Commission "in the exercise of the police power" to perform functions "affected with the public interest" that advance the declared "policy" of the State and enhance the "welfare, public economy and health" of its people. Cal. Food & Agric. Code § 65500. The Secretary of Food and Agriculture appoints and may remove every member of the Commission. *See*

1    *id*. § 65550.  Anyone aggrieved by an action of the Commission may appeal to the Secretary to

2    reverse the Commission's decision.  *Id*. § 65650.5.  "In addition, like other entities in the state

3    government, the Commission is subject to transparency, auditing, and ethics regulations that aim to

4    promote public accountability."  *Delano Farms Co. v. California Table Grape Comm'n*, 586 F.3d

5    1219, 1221 (9th Cir. 2009) (holding the Commission to be the government for purposes of the First

6    Amendment).

7         The fact that the Legislature declared the Commission to be "a corporate body" and to

8    "possess all the powers of a corporation," Cal. Food & Agric. Code § 65551, does not make it a

9    proper defendant under the UCL.  The Commission is a *public* corporation created by the State to

10   serve public purposes, and California courts have long recognized that public corporations are not

11   among the "corporations" included in § 17201's definition of "person."  For example, a county is "a

12   body corporate and politic," Cal. Gov't Code § 23003, but does not constitute a "person" for

13   purposes of § 17201, *Community Mem'l Hosp.*, 50 Cal. App. 4th at 208-210.  Likewise, The Regents

14   of the University of California operates as a "corporation," Cal. Const. art. IX, § 9(a), but cannot be

15   sued under the UCL, *California Med. Ass'n*, 79 Cal. App. 4th at 551.[11/]

16        The Legislature's intent to exclude public corporations from the UCL's definition of

17   "person" is evident when the UCL is compared to the Unfair Practices Act, Cal. Bus. & Prof. Code

18   §§ 17000 *et seq*., which defines "person" to include any "company, corporation or *municipal or*

19   *other public corporation*."  *Id.* § 17021 (emphasis added).  Had the Legislature wished to include a

20   public entity such as the Commission within the meaning of "person" under § 17201, "it would have

21   done so by using language similar to that in section 17021."  *PETA*, 125 Cal. App. 4th at 879

22   (advisory board created pursuant to marketing order immune from claim under § 17200).[12/]

23   ─────────────────

[11/]    In *Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164, 1203-1204 (2006), the
24   California Supreme Court held that privately operated charter schools were subject to suit under the
     UCL.  But, unlike the Commission, the schools in *Wells* were not incorporated by the Legislature
25   and a state official did not appoint their boards.  Rather, the schools were owned and operated by
     for-profit companies that "d[id] not qualify as public entities," *id*. at 1203, and were either organized
26   as nonprofit corporations or operated directly by their owners, *id*. at 1180.

[12/]    The Commission may still be a proper *plaintiff* under the UCL, as this Court has already
27   recognized.  *See California Table Grape Comm'n v. RB Sandrini, Inc.*, No. 06-00842, 2007 WL
     1847631, at *73 (E.D. Cal. June 27, 2007).  But the reason the Commission may file suit under the
28   UCL is not that it is a "corporation" (and, therefore, a "person") within the meaning of § 17201.

2.    The Commission's status as a public entity not subject to suit under the UCL is reinforced by the provisions of the Ketchum Act that require plaintiffs to exhaust state administrative remedies before commencing state-law claims against the Commission.  The Ketchum Act provides that a person "aggrieved by any action of the Commission" must file a grievance with the Commission before bringing suit.  *See* Cal. Food & Agric. Code §§ 65650.5 & 65651.  Any adverse decision may then be appealed to the Secretary of the California Department of Food and Agriculture.  *See id.* § 65650.5.  On appeal, the Secretary "shall review the record of the proceedings before the commission" and "may reverse the action of the commission" if he finds that it "is not substantially sustained by the record, was an abuse of discretion, or illegal," or was "arbitrary or without evidentiary support."  *Id.*  The Secretary's decision is then "subject to judicial review upon petition of the commission or any party aggrieved by the decision."  *Id.*

The Legislature's creation of this administrative review mechanism shows that it considered the Commission to be a public entity and did not intend for the Commission to be subject to suit under the UCL.  Plaintiffs who believe that the Commission has engaged in an "unfair" practice are required to raise the issue with the Secretary and then, if still dissatisfied, seek judicial review.  They may not bring a UCL claim directly against the Commission, as plaintiffs have done here.

Indeed, plaintiffs' failure to exhaust state administrative remedies before asserting their UCL claim against the Commission provides an independent basis to dismiss their claim.  The Ketchum Act plainly states that "[a]ny person subject to this chapter and allegedly aggrieved hereby or by *any* rule or order of the commission *shall comply with and exhaust the appeal procedure prescribed* … before application to any court for relief therefrom."  Cal. Food & Agric. Code § 65651 (emphasis added).  Plaintiffs are well aware of this provision:  In 2005, the Superior Court of California, Fresno County, relied upon it to dismiss their earlier lawsuit challenging the Commission's patenting and licensing program.  *See* Order Sustaining Demurrer of Defendant, *Delano Farms Co. v. California Table Grape Comm'n*, No. 05CECG02073 (Cal. Super. Ct. Nov. 4, 2005) (Ex. 13).  Here, plaintiffs

---

Rather, as the Commission explained in *Sandrini*, it is because the Legislature has given the Commission "all of the *powers* of a corporation," Cal. Food & Agric. Code § 65550 (emphasis added), among them the power to file suit under the UCL.  *See* Dkt. No. 129, at 10, *Sandrini*, No. 1:06-cv-00842-OWW-TAG (E.D. Cal. Apr. 23, 2007).

1    have not alleged that they exhausted the Ketchum Act's administrative review procedures before

2    bringing their UCL claim.  Thus, even if the Commission were subject to suit under the UCL (which

3    it is not), plaintiffs' claim would still have to be dismissed.

4         **C.    Plaintiffs' Unfair Competition Claim Fails As A Matter of Law**

5         In addition to all of its other shortcomings, plaintiffs' double-payment theory also fails as a

6    matter of law and logic.  "A business practice is unfair within the meaning of the UCL if it violates

7    established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury

8    to consumers which outweighs its benefits."  *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th

9    1457, 1473 (2006).  Imposing a user fee on those who benefit most directly from using the

10   government's property is none of these things.  It is what happens every time someone pays a toll to

11   cross a public bridge or pays a fee to camp in a national park.  That person may well have helped

12   pay for the construction of the bridge or the upkeep of the park, but the user fee recoups some of the

13   cost borne by the public at large and frees up public resources for other priorities.

14        So, too, with the Commission's patenting and licensing program.  Plaintiffs "point[] to no

15   legislative policy, or to any public policy 'tethered' to any specific constitutional, statutory or

16   regulatory provision … allegedly offended or violated," *Bernardo v. Planned Parenthood Fed'n of*

17   *Am.*, 115 Cal. App. 4th 322, 354 (2004), when the Commission charges users of the patented

18   varieties a royalty which it can then use to offset the costs of the patenting and licensing program

19   and to support priorities that redound to the benefit of all the growers who initially helped fund the

20   varieties' development.  This Court has already held that the Commission has authority to "engage

21   in its patenting and licensing program" and to "generate revenues through the collection of patent

22   royalties."  *RB Sandrini, Inc.*, 2007 WL 1847631, at *9; *see also Cel-Tech Commc'ns, Inc. v. Los*

23   *Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999) ("Acts that the Legislature has determined

24   to be lawful may not form the basis for an action under the unfair competition law.…).  Indeed,

25   under plaintiffs' view of the UCL, one could imagine a situation in which a grower with no interest

26   in using the patented varieties might allege that it is unfair *not* to recoup a portion of the patenting

27   and licensing program's costs from those growers who make use of the varieties.

28        Moreover, plaintiffs have never alleged that their assessments, either alone or in combination

1  with other growers, covered the *entire* cost of developing the patented varieties. To the contrary,

2  they alleged that "the Commission's funding has amounted to over one-third of the total table grape

3  research budget at the [USDA Agricultural Research Center], excluding employee salaries." SAC ¶

4  35. In other words, approximately two-thirds of the total development costs—and more if employee

5  salaries are considered—comes from other sources, such as federal tax revenues. Although

6  providing such assistance to growers, like plaintiffs, might well be permissible, it is, to say the least,

7  a stretch to contend that the UCL requires it. Accordingly, plaintiffs' UCL claim should be

8  dismissed.

### III.    PLAINTIFFS' UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST CLAIMS MUST BE DISMISSED

9

10        As the Court has recognized, plaintiffs' "unjust enrichment and constructive trust claims are

11  'dependent upon Plaintiffs' substantive … antitrust claims and unfair competition claims.'" Dkt.

12  No. 84, at 65 (quoting Dkt. No. 42, at 71); *see also McBride v. Boughton*, 123 Cal. App. 4th 379,

13  387 (2004); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.

14  App. 4th 384, 398 (2007). For the reasons set forth above, those claims must be dismissed.

### CONCLUSION

15

16        Plaintiffs have now had three opportunities to try to allege viable claims, but they have failed

17  to do so. The Court should dismiss the claims in the SAC with prejudice.

18

19  Date:   February 2, 2010

20                                                  Respectfully submitted,

21                                                  WILMER CUTLER PICKERING
                                                        HALE AND DORR LLP
22

23                                                  /s/ Randolph D. Moss

24                                                  _____
                                                    Randolph D. Moss
25
                                                    Attorneys for Defendant THE CALIFORNIA
26                                                  TABLE GRAPE COMMISSION

27

28

US1DOCS 7364416