# United States Court of Appeals for the Federal Circuit

2010-1546

DELANO FARMS COMPANY,
FOUR STAR FRUIT, INC., and GERAWAN FARMING, INC.,

**FILED**

Plaintiffs-Appellants,

DEC 2 8 2011

v.

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

THE CALIFORNIA TABLE GRAPE COMMISSION,

Defendant-Appellee,

and

UNITED STATES, DEPARTMENT OF AGRICULTURE,
and THOMAS J. VILSACK, Secretary of Agriculture,

Defendants-Appellees.

# Judgment

ON APPEAL from the United States District Court for the Eastern District of California

in CASE NO. 07-CV-1610.  LJO SMS

**RECEIVED**

This CAUSE having been heard and considered, it is

DEC 2 8 2011

ORDERED and ADJUDGED:

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

ENTERED BY ORDER OF THE COURT

DATED_____AUG 2 4 2011

*Jan Horbaly* / CMC

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By_____  Date: 12/22/11

**ISSUED AS A MANDATE:**   DEC 2 2 2011

# United States Court of Appeals
# for the Federal Circuit

---

**DELANO FARMS COMPANY,
FOUR STAR FRUIT, INC., AND GERAWAN
FARMING, INC.,**
*Plaintiffs-Appellants,*

**v.**

**THE CALIFORNIA TABLE GRAPE COMMISSION,**
*Defendant-Appellee,*

**and**

**UNITED STATES, DEPARTMENT OF
AGRICULTURE,
AND THOMAS J. VILSACK, SECRETARY OF
AGRICULTURE,**
*Defendants-Appellees.*

---

2010-1546

---

Appeal from the United States District Court for the
Eastern District of California in Case No. 07-CV-1610,
Senior Judge Oliver W. Wanger.

---

Decided: August 24, 2011

---

LAWRENCE M. HADLEY, Hennigan Dorman, LLP, of Los Angeles, California, argued for the plaintiffs-appellants. With him on the brief was OMER SALIK.

RANDOLPH D. MOSS, Wilmer Cutler Pickering Hale and Dorr, LLP, of Washington, DC, argued for the defendant-appellee The California Table Grape Commission. With him on the brief were BRIAN M. BOYNTON, STEVEN P. LEHOTSKY and THOMAS G. SAUNDERS.

SUSAN L.C. MITCHELL, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the defendants-appellees United States Department of Agriculture and Thomas J Vilsack, Secretary of Agriculture. Of counsel on the brief were TONY WEST, Assistant Attorney General, and JOHN J. FARGO, Director.

---

Before BRYSON, SCHALL, and PROST, *Circuit Judges*.

BRYSON, *Circuit Judge*.

The United States Department of Agriculture ("USDA") is the owner by assignment of three patents issued under the Plant Variety Protection Act for grapevines that produce table grapes. The three patented varieties are known as Sweet Scarlet (U.S. Patent No. PP15,891), Scarlet Royal (U.S. Patent No. PP16,229), and Autumn King (U.S. Patent No. PP16,284).

The USDA licensed its rights in the three patents to the California Table Grape Commission, an agency of the State of California. The Commission's mission is to promote that state's table grape industry. The Commission is funded by a tax levied on each box of table grapes produced in California.

The relationship between the Commission and the USDA is complex. Although the USDA owns the three patents at issue in this case, the Commission paid much of the cost of developing the patented varieties. The licenses for the three patents give the Commission the right to sublicense the patents and entitle the Commission to retain 60 percent of all royalties from its sublicensing efforts, with the remaining 40 percent to go to the USDA. Exercising its sublicensing power, the Commission authorized three nurseries to serve as exclusive distributors of the patented varieties. Grape growers who purchase the patented plants from those nurseries each sign a "Domestic Grower License Agreement." That agreement requires the growers to pay a royalty and forbids them from propagating the plants. The agreement also permits the Commission to order the destruction of the purchased plants if the Commission believes the growers to be violating the agreement.

The plaintiffs (collectively referred to as "Delano") are all California grape growers who purchased grapevines covered by the patents, signed the Domestic Grower License Agreement, and paid the licensing fee. They brought this action in the United States District Court for the Eastern District of California challenging the validity and enforceability of the three patents, as well as the conduct of the Commission and the USDA in licensing and enforcing the patents.

Delano sought a declaratory judgment that all three patents are invalid because of prior use and that the Sweet Scarlet patent is unenforceable because of inequitable conduct during prosecution. As outlined in Delano's complaint, the USDA began development of the patented varieties in the early 1990s. Dr. David Ramming, a USDA employee and one of the co-inventors of each of the

three varieties, allegedly displayed the fruit of the pat-
ented varieties at public meetings that were held before
the critical dates for each patent. According to the com-
plaint, Dr. Ramming had distributed the Sweet Scarlet
vines to approximately nine growers for "trials" before the
critical date, and at least three of those growers sold the
fruit of those vines. Delano also alleged that a California
grape grower had obtained the other varieties and had
reproduced those varieties in advance of the critical date.

As to its inequitable conduct claim, Delano alleged
that in May 2004 the Commission sent a letter to all
table-grape growers and shippers in California. The
letter informed growers who were in possession of the
Sweet Scarlet variety that they could keep their vines and
avoid a lawsuit if they admitted to the fact of possession,
paid the Commission $2 per vine reproduced, paid the
Commission $2 per box of Sweet Scarlet grapes previously
shipped, and agreed not to take further steps to propagate
the plants. According to Delano's complaint, 17 growers
responded to the Commission, each acknowledging pos-
session and propagation of the patented variety more
than one year before the patent application was filed.
That information was not disclosed to the Patent and
Trademark Office ("PTO").

In addition to those claims brought against the USDA
and the Commission jointly, Delano brought claims
against the USDA alone, alleging that it had acted unlaw-
fully in obtaining the patents and entering into the licens-
ing       arrangement      with      the      Commission      ("the
administrative claims"). Against only the Commission,
Delano brought an antitrust claim and a related state law
unfair competition claim, both stemming from the Com-
mission's efforts to license the Sweet Scarlet patent.

The USDA and the Commission moved to dismiss De-
lano's declaratory judgment claims. They argued that the
action could not proceed because the USDA, as the pat-
entee, is an indispensable party but could not be joined
because it is immune from suit due to sovereign immu-
nity. The district court agreed. The court first held that
the license between the Commission and the USDA did
not transfer to the Commission all substantial rights in
the patents and that because the USDA retained substan-
tial rights in the patents, it had to be joined in order for
the action to proceed.

After concluding that the USDA was a necessary
party to the patent law claims, the district court turned to
the question whether Delano could sue the USDA on
those claims or whether those claims against the USDA
were barred by sovereign immunity. The district court
rejected Delano's argument that the Administrative
Procedure Act ("APA") waived sovereign immunity for the
declaratory judgment claims and thus ruled that sover-
eign immunity barred the joinder of USDA as a party
defendant. The court then addressed whether those
claims could go forward without the USDA as a party.
After conducting an analysis under Rule 19(b) of the
Federal Rules of Civil Procedure, the court concluded that
because the USDA was an indispensable party that could
not be joined, the action should be dismissed.

The court also granted the USDA's motion to dismiss
Delano's administrative claims. The court held that the
Patent Act provides a comprehensive and exclusive
scheme to test the validity of patents and that Delano
could not properly use administrative law remedies as an
alternative means to challenge the patents. As to De-
lano's administrative claims relating to the USDA's
licensing scheme, the court concluded that Delano failed

to raise its concerns before the USDA when the agency published the details of the licenses in the Federal Register. Accordingly, the court determined that Delano had not exhausted its administrative remedies. Delano has not appealed the court's ruling on the administrative claims.

Finally, the court granted the Commission's motion to dismiss Delano's antitrust claim and the related state law unfair competition claim. The court found that Delano had failed to plead a plausible market for the Sweet Scarlet grapes and dismissed the antitrust claim on that ground. As for the state law unfair competition claim, the court held that the state law claim required a showing that the Commission had violated some other law. Because the alleged predicate offense was the asserted antitrust violation, which the court had dismissed, the court dismissed the state law claim as well.

I

Delano first contends that the USDA transferred all substantial rights in the three patents to the Commission and that the USDA was therefore not a necessary party to the declaratory judgment claims brought under the Patent Act. It is well established that a patentee is a necessary party to an action on the patent, whether it be a coercive action or a declaratory judgment suit. If the patentee has transferred all substantial rights in the patent to an exclusive licensee, however, the licensee is treated as the assignee. In that event, the assignor, which is no longer regarded as the owner of the patent, need not be joined in any action brought on the patent. *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217-18 (Fed. Cir. 2010); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998).

In determining whether a licensee has obtained all substantial rights in the patent, an important consideration is whether the license grants to the licensee the right to enforce the patent and divests the licensor of that same right. *E.g., Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) (describing the scope of the licensee's right to sue infringers as often "the most important consideration"); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991). When a licensing agreement restrains or controls the licensee's sublicensing power, the licensor is generally regarded as having retained substantial control over patent enforcement, and the agreement is not treated as having given the licensee all substantial rights in the patent. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344-45 (Fed. Cir. 2001); *Vaupel*, 944 F.2d at 875-76.

The license agreement between the USDA and the Commission gives the Commission the exclusive right to, among other things, use, propagate, and sell the patented varieties as well as to grant sublicenses to growers. But the "Patent Enforcement" section of the license does not give the Commission any right to enforce the patent against suspected infringers. Instead, the license anticipates that the USDA "may grant the right of enforcement to the Commission, pursuant to Title 35, Section 207(a)(2)." That section of the code allows federal agencies to transfer all substantial rights to licensees and to permit those licensees to sue infringers without joining the federal patent owner. Nothing in the license curtails the USDA's right as a patentee to sue on the patent. And the USDA is at liberty to decline to enforce the patent: the Commission "shall continue to pay royalties and fees accruing to USDA until such time as the Agreement is terminated by either party, even if the U.S. Government

elects not to enforce the Licensed Patents . . . against infringers." The most natural reading of the license is that the USDA did not transfer any right of enforcement to the Commission but left open the possibility that it might elect to do so at a later date.

Moreover, the USDA retained at least some control over the Commission's sublicensing program. Besides reserving for itself a royalty-free right to practice the invention and making the format of the Commission's sublicense agreements subject to prior submission to and approval by the USDA, the USDA expressly reserved the right to require that the Commission issue sublicenses, such as licensing arrangements that the USDA determines are necessary to fulfill health or safety needs or to ensure that the patented varieties are available in geographic areas outside the Commission's marketing and distribution area. In light of all the provisions preserving for the USDA various forms of control over the licensing and enforcement of the patents, we agree with the district court that the license agreement did not transfer to the Commission all substantial rights in the patents. For that reason, the district court correctly held that the USDA was a necessary party to Delano's declaratory judgment claims based on the Patent Act.

II

Delano next argues that sovereign immunity does not bar its Patent Act claims against the USDA.[1] In address-

---

[1] The Commission argues that Delano has not preserved its argument that the USDA can be joined in the patent law claims, because Delano took the position in the district court that it could proceed on those claims against the Commission alone and that it could proceed separately against the USDA under the APA. We do not

ing the issue of sovereign immunity, we apply our own
law in light of the special importance of ensuring national
uniformity on such questions. *See Pennington Seed, Inc.
v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir.
2006); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d
1111, 1124 (Fed. Cir. 2003). While we have not previ-
ously had occasion to decide the particular issue raised by
Delano's appeal, some of the regional circuits have, and
we are guided by the analysis of those courts. *See Fis-
kars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir.
2002).

It is a fundamental principle that the United States
and its agencies may not be sued in federal court unless
Congress has waived sovereign immunity; if Congress has
not waived the federal government's immunity for a
particular claim, courts lack jurisdiction over that claim
and must dismiss it. *United States v. Dalm*, 494 U.S. 596,
608 (1990). Delano asserts that the pertinent waiver of
sovereign immunity can be found in section 10(a) of the
APA, as amended, 5 U.S.C. § 702.[2] As amended, that
section reads:

A person suffering legal wrong because of
agency action, or adversely affected or aggrieved
by agency action within the meaning of a relevant
statute, is entitled to judicial review thereof. An
action in a court of the United States seeking re-

---

regard Delano's argument that the USDA is not a neces-
sary party to the patent law claims to constitute an
abandonment of its original contention that the Commis-
sion and the USDA can be sued jointly on those claims.

[2]    The parties refer to section 10 of the APA by the
section numbers used in the United States Code, so we
use the same convention.

lief other than money damages and stating a
claim that an agency or an officer or employee
thereof acted or failed to act in an official capacity
or under color of legal authority shall not be dis-
missed nor relief therein be denied on the ground
that it is against the United States or that the
United States is an indispensable party. . . .

Nothing herein

(1) affects other limitations on judicial review
or the power or duty of the court to dismiss any
action or deny relief on any other appropriate le-
gal or equitable ground; or

(2) confers authority to grant relief if any
other statute that grants consent to suit expressly
or impliedly forbids the relief which is sought.

The issue in this case is whether that waiver of sover-
eign immunity applies to Delano's request for declaratory
relief against the United States on a cause of action
arising under the Patent Act, or whether that waiver of
sovereign immunity applies only to agency actions for
which the APA prescribes a right to judicial review, i.e.,
"[a]gency action made reviewable by statute and final
agency action for which there is no other adequate rem-
edy in a court." 5 U.S.C. § 704. We hold that section 702
of the APA waives sovereign immunity for non-monetary
claims against federal agencies, subject to the limitations
in subsections (1) and (2). It is not limited to "agency
action" or "final agency action," as those terms are defined
in the APA. We therefore conclude that the waiver of
sovereign immunity in section 702 is broad enough to
allow Delano to pursue equitable relief against the USDA
on its patent law claims.

A

The APA can be said to do three things with respect to judicial review of actions or failures to act by government agencies or employees:   First, it recognizes a right of judicial review for "agency action" made reviewable by another statute and provides rules governing such review. 5 U.S.C. §§ 702, 704, 706. Second, it creates a right of judicial review, even in the absence of a review-authorizing statute, for "final agency action" for which there is no other adequate remedy in a court. *Id.* at § 704. Third, and most importantly for present purposes, it waives sovereign immunity for any action stating a claim against the United States (or its officers or employees) and seeking relief other than money damages. *Id.* at § 702. The United States and the Commission argue that the waiver of sovereign immunity is limited to the first two categories—the types of judicial review recognized or created by the APA.   However, nothing in the text of section 702 limits its scope to "agency action," as defined in section 704 of the APA, or "final agency action," for which section 704 of the APA directly provides the right to judicial review.   A review of the background and judi-cial analysis of the sovereign immunity waiver in section 702 leads us to reject the defendants' argument.

As originally enacted in 1946, the APA provided a cause of action for review of certain actions of federal agencies and officials.   It did not, however, expressly waive sovereign immunity for either causes of action grounded in section 704 of the APA or for causes of action brought under other laws, such as a particular statute or the Constitution.   An action that did not fall within an exception to the general principles of sovereign immunity was therefore subject to dismissal even though the action was authorized by the APA.   In 1976, Congress amended

the APA to solve that problem. It did so by amending section 702 to include what is now the second sentence, which consists of a broad waiver of sovereign immunity for actions seeking relief other than money damages against federal agencies, officers, or employees.

The legislative history of the 1976 amendment to the APA reinforces the breadth of the statutory language. The reports of the judiciary committees of both Houses stated that the 1976 amendment was meant to "withdraw[] the defense of sovereign immunity in actions seeking relief other than money damages, such as an injunction, declaratory judgment, or writ of mandamus." S. Rep. No. 94-996, at 4 (1976); H.R. Rep. No. 94-1656, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6124-25.[3] In the past, the reports observed, courts charged with deciding whether sovereign immunity barred a particular suit had reached decisions that were unpredictable, illogical, and overly dependent on artful pleading. H.R. Rep. No. 94-1656, at 8. In view of the confusion and perceived unfairness in the application of the doctrine, the reports concluded that "the time now has come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Id.* at 9.

The Commission argues that the placement of the waiver of sovereign immunity in section 702 of the APA suggests that the waiver was meant to be limited to actions arising under the APA itself or under a statute directed at the review of "agency action" as that term is defined in the APA. The legislative history demonstrates,

---

[3] The Senate and the House reports are nearly identical. For simplicity, we will cite to the House version.

however, that the amendment was meant to be broader
than that. The committee reports broadly describe the
waiver as applying to "actions seeking relief other than
money damages. H.R. Rep. No. 94-1656, at 4. Moreover,
the Administrative Conference of the United States,
which proposed the waiver of sovereign immunity and
suggested that it be included in section 702, explained
that the amendment to section 702 was designed "to
eliminate the defense of sovereign immunity with respect
to any action in a court of the United States seeking relief
other than money damages and based on an assertion of
unlawful official action by a Federal officer or employee."
*Administrative Procedure Act Amendments of 1976: Hear-
ing Before the Subcomm. on Admin. Practice and Proce-
dure of the S. Comm. on the Judiciary*, 94th Cong. 230
(1976) (statement of Richard K. Berg, executive secretary
of the Administrative Conference of the United States).

Other courts have held that section 702 waives im-
munity for claims that are not brought pursuant to sec-
tion 704 of the APA. In *Trudeau v. Federal Trade
Commission*, 456 F.3d 178, 186 (D.C. Cir. 2006), the D.C.
Circuit held that the waiver of immunity in section 702
"is not limited to APA cases" and applies "regardless of
whether the elements of an APA cause of action are
satisfied." The plaintiff in that case sued the Federal
Trade Commission ("FTC"), based on the FTC's issuance
of a press release regarding him. He alleged that the FTC
had acted in excess of its statutory authority in issuing
the press release and that the FTC had violated his First
Amendment rights by using the press release to retaliate
against him for criticizing the agency. *Id.* at 185. The
D.C. Circuit acknowledged that the press release was not
"agency action" as defined in the APA, let alone "final
agency action." But that was irrelevant, according to the
court, because neither of the plaintiff's causes of actions

sought judicial review under section 704 of the APA. *See also Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) (1976 amendment to section 702 "eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or official acting in an official capacity"); *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244-45 (D.C. Cir. 1981) (R.B. Ginsburg, J.) ("amended § 702 eliminates the defense of sovereign immunity in actions for specific, non-monetary relief").

The Ninth Circuit reached the same conclusion in *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525-26 (9th Cir. 1989). The plaintiffs in that case alleged that their First and Fourth Amendment rights were violated when employees of various federal agencies surreptitiously recorded church services. The court rejected the government's argument that section 702 waives immunity only for challenges involving "agency action" as that term is used in section 704 and defined in section 551(13). The court pointed to the legislative history, which refers to waiving sovereign immunity in all equitable actions against the government, and it noted that the second sentence in section 702 is not, by its terms, limited to cases involving "agency action." Accordingly, the court concluded that the waiver of sovereign immunity in section 702 is not limited to claims challenging conduct that constitutes "agency action." *Id.* at 525.

Recently, in *Veterans for Common Sense v. Shinseki*, 644 F.3d 845 (9th Cir. 2011), the Ninth Circuit reaffirmed that the waiver of sovereign immunity in section 702 is not limited to actions in which the APA creates the right to judicial review. In that case, an advocacy group alleged that the slow pace at which the Department of Veterans Affairs processes requests for mental health benefits

violates veterans' constitutionally protected rights to
those benefits.   The district court concluded that the
limitations on the APA cause of action found in section
704, including the requirement for "agency action," also
restrict the scope of the waiver of sovereign immunity in
section 702.   Because the delay in benefits adjudication
constituted neither "agency action" nor "final agency
action" within the meaning of section 704, the district
court ruled that section 702 did not waive sovereign
immunity for the veterans' action.   The Ninth Circuit
reversed; it held that the question whether section 702
waives sovereign immunity for the plaintiffs' non-APA
cause of action does not turn on whether the challenged
delays constituted "agency action" or "final agency ac-
tion."   Instead, the court held, the waiver of sovereign
immunity applies to the plaintiffs' request for an injunc-
tion to correct a constitutional violation even though the
request for judicial review was not based on the authority
granted by section 704 and did not involve "agency ac-
tion," as defined by the APA.[4]

---

[4]   Other courts have ruled similarly.   *See, e.g.,*
*Blagojevich v. Gates,* 519 F.3d 370, 372 (7th Cir. 2008)
(section 702 waives immunity for lawsuit by state gover-
nor alleging that Department of Defense violated a stat-
ute requiring governor's approval before transferring a
National Guard unit out of state); *Commonwealth of P.R.*
*v. United States,* 490 F.3d 50, 57-58 (1st Cir. 2007) (sec-
tion 702 waiver covers all equitable actions for specific
relief against a federal agency or officer acting in an
official capacity); *Black Hills Inst. of Geological Research*
*v. S.D. Sch. of Mines & Tech.,* 12 F.3d 737, 740 (8th Cir.
1993) (section 702 waives immunity for suit to quiet title
to fossil seized by the Department of Justice, even though
suit not brought as APA action challenging final agency
action); *Specter v. Garrett,* 995 F.2d 404, 410 (3d Cir.
1993) ("Our cases are also clear that the waiver of sover-
eign immunity contained in § 702 is not limited to suits

The Commission argues that in two previous cases this court has held that the waiver of sovereign immunity in section 702 applies only to suits based on a cause of action created by the APA. In the two cited cases—*Smith v. Secretary of the Army*, 384 F.3d 1288 (Fed. Cir. 2004), and *Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004)—we considered whether an APA-based action in district court is barred because the exclusive source of relief was through a suit for damages in the Court of Federal Claims. Each case held that a plaintiff cannot invoke the section 702 waiver to obtain judicial review under section 704 of the APA when Congress has provided an alternative and exclusive forum for such a dispute. However, neither case addressed the scope of Congress's consent to suit in an equitable action not brought under the authority of the APA.

The plaintiff in *Smith* was a retired Army physician who alleged that the Army had acted unlawfully by failing to accord him promotional credit for a masters degree. 384 F.3d at 1292. We held that his APA action

---

brought under the APA.") *rev'd on other grounds, Dalton v. Specter*, 511 U.S. 462 (1994); *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980) (section 702 waives immunity for causes of action arising under generally applicable statutes and the Constitution), *rev'd on other grounds*, 456 U.S. 728 (1982).

The Commission cites cases such as *SEC ex rel. Glotzer v. Stewart*, 374 F.3d 184 (2d Cir. 2004), as holding that section 702 waives sovereign immunity only for actions falling within the APA. Those cases hold that section 702 waives sovereign immunity for non-monetary claims brought under the APA seeking review of agency action, but they do not hold that the waiver of sovereign immunity is inapplicable to non-monetary claims arising under statutes other than the APA, such as the patent law claims in this case.

against the Army could not be maintained in district
court if damages and the ancillary equitable relief that
was available in the Court of Federal Claims would
provide an adequate remedy. *Id.* at 1293-94. Although
we characterized the waiver of immunity in section 702 as
subject to the limitations of section 704, *id.* at 1292, we
made that statement in the context of a district court
claim arising under the APA, which is subject to the
limitations imposed on such claims by section 704. *Id.* at
1290-91. We did not hold that the waiver of immunity
applies only to a cause of action based on the APA and
does not apply to a cause of action based on another
source, as in this case.

   *Christopher Village* was a complex case in which we
again considered whether a suit for damages in the Court
of Federal Claims is an "adequate remedy" that would
withdraw the APA's waiver of immunity. 360 F.3d at
1327-29. The Department of Housing and Urban Devel-
opment ("HUD") held a mortgage on a federally subsi-
dized low-income apartment complex that the plaintiffs
owned.  HUD threatened to foreclose.  The plaintiffs
brought an APA action in district court against HUD to
block the foreclosure and obtain a decree that HUD had
violated both the applicable regulations and HUD's
contract with the plaintiffs.  The district court ruled in
favor of HUD, and the plaintiffs appealed that decision to
the Fifth Circuit.  Before the Fifth Circuit decided the
appeal, HUD foreclosed on the property, and the apart-
ment complex was torn down. The Fifth Circuit acknowl-
edged that the request to enjoin the foreclosure had
become moot, but it went on to reverse the district court
and to hold that the agency had violated its contractual
and regulatory duties.  *Id.* at 1323-24.  The plaintiffs
subsequently filed an action in the Court of Federal
Claims seeking damages for breach of contract. When the

case reached this court, the question on appeal was whether the Fifth Circuit's judgment on liability had preclusive effect in the damages action. We held that the answer to that question depended on whether the district court had jurisdiction in the earlier case. *Id.* at 1326-27.

We explained that section 702 would have waived sovereign immunity as to the plaintiffs' APA-based action to block the foreclosure. 360 F.3d at 1326. Once HUD foreclosed and the property was razed, however, that request became moot. We characterized plaintiffs' action on that point as a "declaratory judgment as to the legality of HUD's action." *Id.* We held that the waiver of immunity in section 702 did not apply because there was an adequate remedy available elsewhere, namely, a damages action in the Court of Federal Claims. Because the Fifth Circuit had lacked jurisdiction to consider the legality of HUD's conduct, its judgment on liability was void. *Id.* at 1330-31. Again, the discussion of the waiver of sovereign immunity was in the context of a cause of action brought pursuant to section 704 of the APA, not in the context of a cause of action based on a separate statutory source, as in this case.

Any suggestion that our decisions in *Smith* and *Christopher Village* stand for the proposition that the waiver of sovereign immunity in section 702 is limited to causes of action created by the APA was dispelled in *Nebraska Public Power District v. United States*, 590 F.3d 1357 (Fed. Cir. 2010) (en banc). In that case, we held that section 702 waived immunity for an action seeking judicial review under section 119 of the Nuclear Waste Policy Act, 42 U.S.C. § 10139. In so doing, we specifically held that because the right to judicial review arose under a statute other than the APA, section 702 waived sovereign

immunity without the need to satisfy the requirements of section 704.  590 F.3d at 1371 & n.6.

Our decisions in *Smith*, *Christopher Village*, and other cases dealing with the intersection of actions in district court under the APA and actions in the Court of Federal Claims under the Tucker Act have no bearing on the sovereign immunity question presented in this case. When Congress amended section 702 in 1976, it made it clear that it did not intend that amendment to have any effect on the exclusive jurisdiction of the Court of Claims over suits for money damages falling within the jurisdiction of that court.  H.R. Rep. No. 94-1656, at 12-13; *see also Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 608-09 (D.C. Cir. 1992) (because the Tucker Act impliedly forbids an APA remedy in district court for breach of contract claims, the waiver of immunity in section 702 does not apply to those claims); 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action . . . .").[5]  Thus, the immunity waiver cannot

---

[5]    In a section entitled "Other Exclusive Remedies or Statutory Limitations," the House Report explains:

> Clause (2) of the third new sentence added to section 702 contains a second proviso concerned with situations in which Congress has consented to suit and the remedy provided is intended to be the exclusive remedy.  For example, in the Court of Claims Act, Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts. In the terms of the proviso, a statute granting consent to suit, i.e., the Tucker Act, "impliedly forbids" relief

Case 1:07-cv-01610-SEH-JLT Document 140 Filed 12/28/11 Page 21 of 28

DELANO FARMS v. CALIFORNIA TABLE                    20

serve as a "backdoor" to use the APA to obtain what
would amount to concurrent district court jurisdiction
over a monetary claim that could be brought in the Court
of Federal Claims. But that principle has no application
to Delano's Patent Act claims, which are not claims for
damages and are not within the exclusive jurisdiction of
the Court of Federal Claims.

B

The district court noted that Congress has expressly
consented to suit in related areas, including the Quiet
Title Act, 28 U.S.C. § 2409a, and the statute addressing
government infringement of copyrights and patents, 28
U.S.C. § 1498. Because those statutes confer limited
consent to suit, the court concluded that they indicate
that Congress intended to carve out only a narrow excep-
tion to immunity in this area. Therefore, the court con-
cluded that even if the waiver of immunity in section 702
applies broadly as a general matter, it does not apply in
this case. Both defendants urge us to affirm on that
theory, but we do not find it persuasive.

Congress enacted the Quiet Title Act in 1972, four
years before the 1976 amendments to section 702. Before
then, a plaintiff who wished to challenge the govern-
ment's claim of title to real property had to wait until the
government decided to pursue a quiet title action or had

other than the remedy provided by the Act. Thus,
the partial abolition of sovereign immunity
brought about by this bill does not change existing
limitations on specific relief, if any, derived from
statutes dealing with such matters as government
contracts, as well as patent infringement, tort
claims, and tax claims.

to request discretionary relief from either Congress or the
President. *Block v. N.D. ex rel. Bd. of Univ. & Sch.
Lands*, 461 U.S. 273, 280-81 (1983). Alternatively, the
plaintiff could surrender the property and sue for compen-
sation in the Court of Claims under a takings theory.
H.R. Rep. No. 92-1559, at 6 (1972). The 1972 Act permit-
ted a district court to hear a quiet title action brought by
a private party. 28 U.S.C. § 2409a; *see also id.* at § 2410
(pre-1972 statute permitting joinder of the United States
in a quiet title action regarding land over which the
United States holds a security interest). Nothing in the
Quiet Title Act, however, suggests that Congress intended
the subsequent waiver of sovereign immunity in section
702 of the APA to be construed narrowly. In fact, the
House report accompanying the 1976 amendment to the
APA specifically addressed the Quiet Title Act and ex-
plained that the waiver of sovereign immunity in section
702 would extend the policy of that waiver to equitable
actions generally. The report observed:

> Just as there is little reason why the United
> States as a landowner should be treated any dif-
> ferently from other landowners in an action to
> quiet title, so too has the time now come to elimi-
> nate the sovereign immunity defense in all equi-
> table actions for specific relief against a Federal
> agency or officer acting in an official capacity.

H.R. Rep. No. 94-1656, at 9. That language makes it
quite clear that Congress intended both landowners and
plaintiffs with an equitable claim against the federal
government to have access to federal courts to vindicate
their claims.

Section 1498 provides no more support for the court's
sovereign immunity ruling. In section 1498, Congress

consented to pay damages for the unauthorized use or manufacture of a patented invention "by or for the United States." 28 U.S.C. § 1498. Although related to patents, this statute provides for the government, as a tortfeasor, to account in money damages for its unauthorized use of a patent. That Congress has consented to an action for money damages for patent infringement by the government does not in any way imply that Congress intended to bar equitable actions related to the validity of government-owned patents.

Accordingly, we agree with Delano that in section 702 of the APA Congress waived sovereign immunity for claims such as Delano's declaratory judgment claims under the Patent Act.[6] For that reason, we hold that the USDA may be joined as a party to the declaratory judgment claims on remand.

---

[6] The Commission makes a separate argument that section 702 waives immunity for equitable actions alleging that an agency "acted or failed to act" and that because the USDA does not collect royalties directly from plaintiffs, the agency has not "acted or failed to act" and thus the waiver of sovereign immunity in section 702 does not apply. To the contrary, USDA's act of obtaining ownership of the patents makes it subject to the declaratory judgment action seeking to invalidate the patents or hold them unenforceable. Such an action arises under the Patent Act, *see Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 19 n.19 (1983); *Jacobsen v. Katzer*, 535 F.3d 1373, 1377 (Fed. Cir. 2008), and states a claim against the patent owner for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, over which the district court has jurisdiction under 28 U.S.C. § 1338. Because that action seeks non-monetary relief based on the agency's official acts, section 702 waives the agency's sovereign immunity.

### III

As an alternative ground for affirming the district court's ruling on Delano's inequitable conduct claim, the Commission argues that Delano's complaint does not provide an adequate factual basis from which the court could conclude that anyone at the USDA made a deliberate decision to withhold the fact of prior use with the intent to deceive the PTO.

A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO. *Exergen v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318, 1330 (Fed. Cir. 2009); *see generally Therasense, Inc. v. Becton, Dickinson & Co.*, ___ F.3d ___, 2011 WL 2028255 (Fed. Cir. May 25, 2011) (en banc).

Delano alleged that Dr. Ramming had detailed knowledge that the Commission had gone out of its way to seek out information regarding widespread prior use of the patented varieties, had learned of multiple instances of such use, and had encouraged those in possession of the patented varieties to cease such use. Delano also alleged that "[t]he Commission and Dr. Ramming discussed the fact that public uses and sales of new varieties prior to seeking patent protection could jeopardize the Commission's patenting program." A reasonable jury could infer that Dr. Ramming knew of the prior use, appreciated that the prior use was material, and decided not to disclose that information to the PTO, with deceptive intent.

The Commission suggests that the general presumption of regularity that attaches to the official acts of a federal employee, such as Dr. Ramming, counsels against a conclusion that he may have acted with deceptive intent. *See Hakim v. Cannon Avent Grp., PLC*, 479 F.3d 1313, 1317 (Fed. Cir. 2007) (discussing that presumption as it applies to a patent examiner). Even if relevant, that presumption is not absolute. If Delano's complaint is sufficient to plead inequitable conduct, it is also sufficient to overcome any presumption of regularity that may apply to Dr. Ramming.

IV

In its last federal claim, which is directed only at the Commission, Delano alleges that by entering into sublicensing arrangements with grape growers for the Sweet Scarlet patent, the Commission has enforced a fraudulently obtained patent in violation of section 2 of the Sherman Act. The district court ruled that Delano failed to plead sufficient facts to define a plausible market over which the Commission had allegedly exerted its economic power and therefore dismissed that claim.

A patent owner or assignee that enforces a patent that was procured by fraud on the PTO loses the exemption from antitrust liability that ordinarily protects a patent holder in its enforcement efforts. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). To establish the antitrust portion of a *Walker Process* allegation, a plaintiff must show that the defendant held monopoly power in the relevant market and willfully acquired or maintained that power by anticompetitive means. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1367-68 (Fed. Cir. 1998). A plaintiff must also define the market within which the defendant engaged in

the challenged conduct. Without a definition of the relevant market, the anticompetitive effects of an improperly obtained patent are impossible to measure. *Walker Process*, 382 U.S. at 177. Delano pleaded the antitrust element of its claim under both a monopolization and an attempted monopolization theory. The market analysis is the same under both. *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008).

The product market is defined by reference to the reasonable interchangeability in use among competing products or by reference to the cross-elasticity of demand between a product and its substitutes. For instance, if an increase in the price of Sweet Scarlet would lead its purchasers to switch to a different variety, Sweet Scarlet and that substitute can be regarded as part of the same market. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); *see also Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 507 (9th Cir. 2010). The product market can include submarkets that form a separate market or markets for antitrust purposes. *Brown*, 370 U.S. at 325. In addition to cross-elasticity of demand, the Supreme Court has identified other factors that a plaintiff may reference as it defines a submarket, including "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price change, and specialized vendors." *Id.*

Delano alleged that each variety of grapes forms a distinct submarket within the general market for table-grape-bearing vines. The Sweet Scarlet submarket, which is the critical market here, is said to be the market for grapevines "having the characteristics of late season

ripening, seedless fruit, attractive pale green coloration, cylindrical to ovoid fruit shape, firm fruit texture with neutral sweet flavor, and medium to tight cluster." Those characteristics are taken directly from the patent for Sweet Scarlet. Sweet Scarlet patent, col.4, ll. 22-27. Delano asserts that those characteristics are "uniquely valuable and distinct from other grapevine plant materials" and that other grapevines cannot be reasonable substitutes.

Delano cannot rely on the naked assertion that non-infringing goods are not an adequate substitute for a patented product, especially when it is undisputed that other vines possess at least some of the relevant characteristics. For example, the patent for the Autumn King variety states that it is "distinguished from other commercial grape cultivars known to us by a combination of characteristics, including its late season ripening seedless fruit with attractive pale green coloration, its medium firm fruit texture with a neutral sweet flavor, its cylindrical to ovoid fruit shape and its medium to tight cluster." Autumn King patent, col. 3, ll. 60-66. As in monopolization cases not involving a patented product, Delano needed to make some allegation that, if proved, would define the market or the submarket with reference to consumer demand for the product and consumer demand for its reasonable substitutes. To be sure, at this early stage in the proceedings, Delano did not have to provide empirical or statistical evidence that would define the market with precision. *See Newcal Indus.*, 513 F.3d at 1045. But the aspects of an invention that may have led the PTO to issue a patent are not *per se* coterminous with the features of the patented product that may lead consumers to select that product over other similar ones. Because Delano failed to point to anything other than the issuance of a patent for Sweet Scarlet grapes that would

provide a plausible basis for finding that Sweet Scarlet grapes form a relevant antitrust market, we uphold the district court's decision dismissing Delano's antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Each party shall bear its own costs for this appeal.

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By_____  Date: 12/22/11