IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANO FARMS COMPANY, et al.,<br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE CALIFORNIA TABLE GRAPE<br>COMMISSION, et al.,<br><br>　　　　　Defendants. | Case No. 1:07-cv-01610-LJO-JLT<br><br>ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT<br><br>(Doc. 156)<br><br>ORDER DENYING REQUEST FOR JUDICIAL NOTICE<br><br>(Doc. 167) |

Before the Court is the motion of Plaintiffs for leave to file an amended complaint. Plaintiff seeks to amend the complaint to delete from it matters that are no longer at issue and to add claims for rescission/restitution and unjust enrichment against Defendant, California Table Grape Commission ("the Commission"). On May 22, 2012, the Court heard oral argument on the matter. For the following reasons, Plaintiffs' motion to amend the complaint is GRANTED.

I.  **Background**

This case involves three patent varieties under the Plaint Variety Protection Act for grapevines that produce table grapes: Sweet Scarlet, Scarlet Royal, and Autumn King. (Doc. 50 at 6-8, Doc. 140 at 3.) Defendant USDA, as the owner of the patents, licensed its rights in the patents to the Commission. (Id. at 4-6). However, the Commission, which is funded by taxes

1

levied upon each box of table grapes produced, paid much of the cost of developing the three patents. (Id. at 4). The licenses give the Commission the ability to sublicense the patents and allow the Commission to retain 60% of any royalties from the sublicenses. (Id. at 4-5; Doc. 140 at 4). The USDA receives the remaining 40% of royalties earned. (Id. at 4-5). The Commission authorized three nurseries to serve as exclusive distributors of the patent varieties. (Id. at 5). In order to purchase the patented plants from the selected nurseries, grape growers had to sign a "Domestic Grower's License Agreement" ('the Agreement').[1] (Id. at 5). The Agreement forbade a grower from propagating the plants and allowed the Commission to void the Agreement and order the destruction of the purchased plants, if the grower violated its terms. (Id).

Plaintiffs are California grape growers who purchased the patented plants, entered into the Agreement, and paid the licensing fee to obtain the plants. (Id. at 9). Plaintiffs' initiated this action to challenge the validity and enforceability of the three patents, as well as the conduct of the Commission and the USDA in licensing and enforcing the patents. (Doc. 50).

**II.   Procedural History**

Plaintiffs' initial Complaint, filed on November 5, 2007, named only the Commission. (Doc. 1). The Complaint alleged nine claims for relief: 1) Claims 1-3 alleged that the patents for all three varieties should be declared invalid (Doc. 1 at ¶¶ 66-86); Claim 4 alleged that the patent for the Sweet Scarlet variety should be declared unenforceable (Id. at ¶¶ 87-85); Claim 5 alleged that the Commission violated the Sherman Act and Clayton Act (Id. at ¶¶ 96-103); Claim 6 alleged the Commission misused the patents "in violation of antitrust laws and in a manner that attempts to extend [the] patents beyond their lawful scope" (Id. at ¶¶ 104-109); Claim 7 alleged unfair competition (Id. at ¶¶ 110-114); Claim 8 alleged unjust enrichment (Id. at ¶¶ 115-117); and Claim 9 alleged constructive trust (Id. at ¶¶ 118-121).

---

[1] After all of the briefing had been filed and considered and after the Court heard oral argument, the Commission filed its request for judicial notice. (Doc. 167) In doing so, the Commission seems to fail to appreciate that this document, in truth, is a sur-reply and seems to ignore also that such filings SHALL NOT be made without first seeking and obtaining the Court's permission to do so. Because the Court did not grant permission for this filing and because to grant the request would deprive Plaintiffs of due process, the Court **DENIES** the request.

The Commission filed a motion to dismiss all claims and argued, among other thing, that the United States is a necessary and indispensable party and had not waived its sovereign immunity. (Doc. 19). The District Court agreed and granted Defendant's motion with leave to amend as to that issue, as well as Plaintiff's antitrust claim, and the patent misuse claim. (Doc. 42 at 74). The Court denied the remainder of Defendant's motion.

On March 19, 2009, Plaintiffs filed their First Amended Complaint ("FAC"). (Doc. 50). The Complaint added the U.S, the USDA, and Secretary Vilsack as defendants. (Id.) The FAC contained 11 claims for relief: 1) Claim 1, alleged against the US, the USDA, and Secretary Vilsack, requested Declaratory Relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, (Doc. 50 at ¶¶ 71-102); Claims 2-4, as to all defendants, sought a declaration that the patents are invalid (Id. at ¶¶ 103-138); Claim 5, as to all defendants, sought a declaration that the 891 Patent (Sweet Scarlet) is unenforceable due to Defendants' inequitable conduct (Id. at ¶¶139-152); Claim 6 alleged the Commission violated the Sherman and Clayton Acts by monopolizing the national market for grapevine plant material (Id. ¶¶ 153-165); Claim 7, against the Commission, sought to have the exclusive license agreements between the United States and the Commission invalidated under the patent laws of the United States and the APA (Id. ¶¶ 166-176); Claim 8, against the Commission, sought to have the exclusive licenses declared void under state law (Id. at ¶¶ 177-185); Claim 9, against the Commission, alleged unfair competition in violation of California Business and Professions Code § 17200 and California common law (Id. ¶¶ 186-190); and Claims 10 and 11, against the Commission, alleged unjust enrichment (Id. ¶¶ 191-93) and constructive trust, (Id. ¶¶ 194-97).

All Defendants moved to dismiss the FAC primarily on the grounds of sovereign immunity. Defendants argued that the United States is an indispensable party with sovereign immunity and therefore could not be joined. (Docs. 66 and 68). The Court agreed and granted Defendants' motion with leave to amend as to that issue, Plaintiffs' antitrust claim, and the patent misuse claim. (Doc. 42 at 74). The Court denied the remainder of Defendants' motions.

In November 2009, Plaintiffs filed a Second Amended Complaint ("SAC"). (Doc. 87). The SAC alleged four claims for relief: 1) violation of the Bayh-Dole Act under the APA against

the US, USDA, and Secretary Vilsack; 2) unfair competition under California Business and Professions Code §17200 and California common law against the Commission; 3) unjust enrichment against the Commission, and 4) constructive trust against the Commission. (Id.) Defendants, again, filed motions to dismiss. (Doc. 97 and 99).

On July 26, 2010, the Court granted Defendants' motions to dismiss the entire SAC without leave to amend. (Doc. 121). Defendants argued that Plaintiffs had failed to exhaust their administrative remedies and therefore waived any APA claims, that Plaintiffs' failed to state a claim for unfair competition ("UCL"), and that the unjust enrichment and constructive trust claims, as derivative claims, must fail because Plaintiffs no longer had any substantive unfair competition or antitrust claims to base the derivative claims upon. (Id. at 2). The Court agreed with Defendants arguments and dismissed the APA claims with prejudice. (Id. at 21-42). The Court likewise dismissed the UCL claim with prejudice. (Id. at 42). Specifically, the Court found that Plaintiffs' UCL claim, based upon a "double payment"[2] theory, was pre-empted by the Bayh-Doyle Act. (Id. at 55). As a result, Plaintiffs' unjust enrichment and constructive trust claims were dismissed with prejudice because the substantive claims they depended upon had not survived. (Id. at 63).

Plaintiffs appealed the final judgment (Doc. 124) and several other motions. (Doc. 125). The United States Court of Appeals for the Federal Circuit affirmed in part, reversed in part, and remanded. (Doc. 140). The Court of Appeals addressed three primary issues: 1) whether the USDA was a necessary party to the declaratory judgment claims based upon the Patent Act; 2) if so, whether the USDA had waived sovereign immunity and could be joined as a party to such claims; and 3) whether the Plaintiffs properly pled an antitrust claim. (Id.) The Court agreed that the USDA was a necessary party to the declaratory relief claims because it did not transfer all substantive rights in the three patents to the Commission. (Id. at 9). However, the Court did not

---

[2] Plaintiffs' "double payment" theory alleged that the Commission engaged in unfair competition by using assessments collected from California growers to help fund the USDA's breeding program and then indirectly charged growers a licensing fee to use the patented varieties that the USDA developed. (See Doc. 84 at 63-65). With the exception of Plaintiffs' "double payment" theory, the remainder of Plaintiffs' UCL claim had been previously dismissed.

4

1  agree that sovereign immunity prevented the action. (Id. at 23).  The Court found that Congress

2  waived sovereign immunity for non-monetary claims under the Patent Act, like the ones alleged

3  by Plaintiffs.  (Id.)  As a result, the Court found that the USDA may be joined as a party to the

4  declaratory judgment claims on remand.  (Id.)  Finally, the Appellate Court affirmed the District

5  Court's finding that Plaintiffs had failed to plead a plausible market and therefore could not state

6  a claim for its antitrust claims.  (Id. at 27-28).

7  Once the matter was remanded, the parties filed a stipulation agreeing to file an answer to

8  the operative pleading. (Doc. 141).  On January 20, 2012, all Defendants answered.  (Docs. 144

9  and 145).  In both answers, Defendants state that the parties agreed that the FAC would serve as

10 the operative pleading and that Plaintiffs' First and Sixth through Eleventh claims for relief were

11 no longer at issue. (Doc. 144 at 1; Doc. 145 at 1-2).

12 Plaintiff filed this Motion to Amend the Complaint on April 6, 2012.    (Doc. 156).

13 Plaintiffs explain the changes proposed in their TAC as follows:

> The TAC would eliminate the general Administrative Procedures Act, antitrust and unfair competitions claims and their associated allegations, renumber the First, Second, and Third Claims for Relief as claims for declaratory relief of patent invalidity as to each of the three patents at issue, renumber the Fourth Claim for Relief as a claim for declaration of unenforceability, add a Fifth Claim for Relief for restitution after rescission against the Commission only, and add a Sixth Claim for Relief for unjust enrichment (seeking restitution and disgorgement) against the Commission only.

18 (Doc. 156-1 at 5-6.)

19 Defendant California Table Grape Commission ("the Commission") opposes the motion

20 only insofar as it seeks to add the Fifth and Sixth Claims for relief: rescission/restitution and

21 unjust enrichment, respectively.[3]  (Doc. 161 at 1).  The remaining defendants have not opposed

22 Plaintiffs' motion.

23 **III.   ANALYSIS AND DISCUSSION**

24 Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course

25 within 21 days of service, or if the pleading is one to which a response is required, 21 days after

26 service of the responsive pleading.  "In all other cases, a party may amend its pleading only with

---

[3] Given that the only dispute between the parties relates to Plaintiffs' additional claims for rescission/restitution and unjust enrichment, the Court will limit its discussion to those issues.

5

1  the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Since more
2  than 21 days have passed since the date of service of the Complaint and Defendants have not
3  unequivocally consented to an amended pleading, Plaintiffs are required to obtain leave from this
4  Court before they may proceed with an amended complaint. (Ibid.)

5  To reach a decision on a motion to amend under Rule 15(a), the Court must weigh the
6  factors for and against the requested amendment. Millar v. Bar Dist. 236 F.Supp.2d 1110*, 2002
7  U.S. Dist. LEXIS 22589, *5 (N.D Cal. November 15, 2002).  Fed. R. Civ. P. 15(a)(2) declares
8  that leave to amend should be freely given when justice so requires and only denied on a clear
9  showing other interests outweigh the general principle in favor of allowing an amendment.  (Id.)
10 In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory
11 motive on the part of the movant, repeated failure to cure deficiencies by amendments previously
12 allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility
13 of amendment, etc. -- the leave sought should, as the rules require, be "freely given."  Foman v.
14 Davis, 371 U.S. 178, 182.

15 These factors are not of equal weight as prejudice to the opposing party has long been held
16 to be the most critical factor in determining whether to grant leave to amend. Eminence Capital,
17 LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held,
18 it is the consideration of prejudice to the opposing party that carries the greatest weight"); Jackson
19 v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990); Howey v. United States, 481 F.2d 1187,
20 1190 (9th Cir. 1973).   The burden of showing prejudice falls on the party opposing amendment.
21 DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1986).  Absent prejudice, or a
22 strong showing of any of the remaining factors, "there exists a presumption under Rule 15(a) in
23 favor of granting leave to amend." Eminence Capital, LLC, at 1052 (emphasis in the original).

24 "In exercising [its] discretion, a court must be guided by the underlying purpose of Rule 15
25 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States
26 v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  However, the district court's discretion to deny leave
27 to amend is particularly broad where plaintiff has previously amended the complaint. Ascon
28

Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citing Leighton, 833 F.2d at 186 n. 3.; Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir.1980) (*Mir*).

### A. Prior Amendments

Since the matter was filed more than four years ago, Plaintiffs have amended their complaint several times and, indeed, this proposed amendment will be the fourth complaint Plaintiffs have drafted. There is no showing that the current amendments could not have been made in an earlier iteration. Although this factor alone is not sufficient to deny Plaintiffs the relief they seek, it weighs in favor of denying Plaintiffs' request.

### B. Futility of Amendment

The Commission's primary argument in opposition to Plaintiffs' motion is that the new claims for relief proposed by Plaintiffs are futile for two reasons: 1) Plaintiffs did not plead the type of fraud necessary to proceed on a claim for restitution (i.e. Plaintiffs have not asserted fraud by the Commission and have not asserted that the fraud was perpetrated on Plaintiffs at the time Plaintiffs entered into the license) and 2) Plaintiffs paid royalties to the three nurseries, not the Commission, and there is no authority which would allow Plaintiff to collect royalties from third parties. (Doc. 161 at 6-7 and 10-14). Plaintiffs acknowledge that there is no authority which directly addresses the issues raised by their pleadings. However, Plaintiffs contend that they have pled sufficient facts to allow them to proceed at this pleading stage.

"Futility of amendment means that "it was not factually possible for [the] plaintiff to amend the complaint . . ." Allen, 911 F.2d at 373. Futility may be found also where added claims duplicate existing claims or are patently frivolous, or both. *See* Bonin, 59 F.3d at 846. The amendment requested by Plaintiff seeks to add a Rescission/Restitution claim and an Unjust Enrichment claim. (Doc. 156-2.)

#### 1. **Unjust Enrichment Claim**

The Commission correctly points out that Plaintiffs previously alleged a claim for Unjust Enrichment, the dismissal of which was affirmed on appeal. (Doc. 161 at 11-12). Although Plaintiffs' Motion to Amend states, "Plaintiffs have not previously pled claims for rescission, restitution, or unjust enrichment," Plaintiffs' Reply acknowledges that they previously asserted a

7

claim for unjust enrichment which was dismissed.  (Doc. 166 at 5).  Plaintiffs explain that the unjust enrichment claim in their proposed TAC differs from the previous claim because it is based upon their proposed Fourth Claim for Relief.  This Claim urges that, due to the inequitable conduct by the Commission, the patent for the Sweet Scarlet variety is unenforceable such that the enrichment that the Commission received was unjust.  Thus, the Court must consider whether Plaintiffs' proposed claim for unjust enrichment based upon the inequitable conduct claim, is futile.

A cause of action must underlie a request for unjust enrichment that gives rise to a right to restitution.  3W s.a.m. tout bois v. Rocklin Forest Products, Inc., 2011 WL 489735 (E.D. Cal. Feb. 7, 2011) (citing McBride v. Boughton, 123 Cal.App.4th 379, 387–88.  Thus, the futility of Plaintiffs' claim turns on whether Plaintiffs' have a right to restitution if they succeed in invalidating the patents and rescinding the Agreements. (See discussion below Part III.B.3).

### 2. **Rescission**

Although the Commission includes the rescission claim in its futility arguments against the restitution claim, it does not identify any facts or law to show that the rescission claim would be futile.  Given that rescission of the Agreement would naturally flow from a successful judgment invalidating the patents at issue, and the fact that there is no argument to the contrary, the Rescission claim cannot be considered futile.

### 3. **Restitution**

The parties agree that the standards set forth in Transitron Elec. Corp. v. Hughes Aircraft Co., 649 F.2d 871, 875 (1st Cir. 1981), apply here.  Transitron, in relying upon Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), agreed that a patent licensee could challenge the validity of a patent and, if successful, rescind the licensing agreement.  However, the licensee could not, without more, recover royalties paid prior to bringing suit.  Transitron, 649 F.2d at 874.  The only exception to this rule occurs when a patent holder has induced the licensee to enter into the license agreement through fraud.  (Id.)

The Transitron plaintiffs sought to expand the definition of fraud in royalty recovery cases to include mere fraud on the patent office and to accept as fraud something less than knowing and

deliberate misrepresentation to the licensees. (Id. at 875). However, Transitron explained that to broaden "the exception for fraud would undermine the security of royalty income and erode the economic value of patent rights . . . ." (Id. at 876). Transitron therefore held that "a licensee who would recover royalties paid to a licensor must establish nothing less than that he was induced to accept the license as a result of fraud in the normal sense. Mere patent invalidity is not enough, nor is a showing of "technical" fraud on either the patent office or the licensee, nor is a showing based on some theory of restitution or mistake." (Id.)

### a. Allegations of Fraud

Defendants complain that Plaintiffs have not pled a claim for "fraud" against the Commission with the particularity required by Fed. R. Civ. P. 9(b), therefore, Plaintiffs could not argue for restitution under the "fraud" exception. (Doc. 161 at 16-17 (citing Lear, 395 U.S. 653, 673 and Transitron Elec. Corp. v. Hughes Aircraft Co., 649 F.2d 871, 875 (1st Cir. 1981)).

Notably, it the appeal in this case, the United States Court of Appeals for the Federal Circuit determined that Plaintiffs sufficiently pled a cause of action for inequitable conduct against the federal defendants, but the issue of whether Plaintiffs properly pled such allegations against the Commission was not before that court. (Doc. 140 at 24).

In any event, Plaintiffs argue that their claims of inequitable conduct are "fraud-based." (Doc. 166 at 5). As to the Commission's inequitable conduct, Plaintiff's TAC alleges the following:

> For example, the Sweet Scarlet variety and its fruit was used, distributed and offered for sale and sold by growers and shippers prior to February 20, 2002, including uses by growers who were not part of grower trials. Both the Commission and the USDA knew of at least some non-grower trial uses. In May 2004, the Commission sent a notice to all California table grape growers and shippers stating that the USDA had applied for a patent on the Sweet Scarlet variety. Although no patent had yet issued, the Commission offered "amnesty" for any grower who had previously reproduced Sweet Scarlet. Under its so called "amnesty" program, a grower with Sweet Scarlet could keep the vines reproduced, so long as the grower (i) admitted to possession prior to July 2004, (ii) paid $2 per vine reproduced, (iii) paid $2 per box of Sweet Scarlet grapes previously shipped, and (iv) agreed to no further propagation of the Sweet Scarlet variety from the plants possessed.

(Doc. 156-2 ¶54).

> In July 2004, the Commission sent another notice to all California table grape growers and shippers extending the "amnesty" time period for one month, and extending the "amnesty" to include Autumn King and Scarlet Royal varieties.

(Id. at ¶55).

> In both notices, the Commission threatened to sue growers who did not come forward, and to seek money damages and injunctions. Yet, at the time of the second notice, the USDA patent application on Sweet Scarlet not only remained un-issued, but had been rejected by the USPTO. Moreover, the USDA had not even applied for a patent on either Autumn King or Scarlet Royal.

(Id. at ¶56).

> Plaintiffs have entered into a Domestic Grower License Agreement with the Commission for the '891 patent. In consideration for this limited, non-exclusive license, Plaintiffs have paid a license fee to a Licensed Nursery. Under the terms of this Agreement, Plaintiffs have a limited, nonexclusive license to the '891 patent to grow the Sweet Scarlet variety plants that they purchased, and sell the fruit produced from those plants. Plaintiffs cannot propagate the grapevines or distribute the vines to third parties. Furthermore, Plaintiffs are obligated to destroy all Sweet Scarlet plant material upon termination of the agreement.

(Id. at ¶60).

> The Sweet Scarlet variety was in public use through reproduction, and fruit from the Sweet Scarlet variety was publicly sold, prior to February 2002.

(Id. at ¶97).

> The prior possession and reproduction of the Sweet Scarlet variety, particularly by growers who admitted to such possession and reproduction under the Commission's "amnesty" program, was material to the patentability of the Sweet Scarlet variety.

(Id. at ¶98).

Plaintiffs' allegations that 1) the Commission threatened to sue growers who did not sign and agree to pay the amounts proposed by the amnesty agreement during a time when no patent had yet issued for the Sweet Scarlet variety (or any other variety), 2) that the growers who admitted to possession and reproduction under the amnesty program was material to the patentability of the Sweet Scarlet variety, and 3) that such actions created the need for growers to enter into the Domestic Grower License Agreement if they wanted to continue to sell the Sweet Scarlet variety are sufficient *for purposes of this motion* to allege that the fraud exception may apply to their claim for recovery of past royalties under Transitron, 649 F.2d at 876. Plaintiffs proposed claim for restitution is therefore not futile at this juncture. *See* Transitron, 649 F.2d at 876 (noting that "[p]roof of fraud on the patent office may, to be sure, be highly material to such a

showing; if one defrauds the patent office, the same fraudulent misinformation may carry over to the licensing negotiations.")

### b. Payment of Royalties to the Commission

Defendant's argue that Plaintiff have not paid royalties to the Commission; thus, a restitution argument for recovery of past royalties against the Commission is futile. Plaintiff's TAC alleges the following:

> The Commission charges nurseries who distribute patented varieties a $5,000 participation fee per patented variety and an additional $1 per production unit royalty. These costs are then passed on by the nurseries to the California grape growers who purchased the patented plant material from the nurseries, including Plaintiffs who purchased the Patented Varieties."

(Doc. 156-2 ¶ 45).

> All royalties are paid to the Commission.

(Doc. 156-2 ¶ 47).

> The California table grape growers who bear the ultimate costs of the royalty fees imposed by the Commission are the same California table grape growers who bear the cost of the per box assessment charged to the Commission, which funds much of Dr. Ramming's breeding program. Thus, California table grape growers essentially pay for the development of patented varieties, then pay again to obtain the varieties."

(Doc. 156-2 ¶ 48).

> Plaintiffs are in possession of the Autumn King, Sweet Scarlet and Scarlet Royal varieties, which they purchased through Licensed Nurseries. Plaintiffs paid the royalties on each purchased plant imposed by the Commission.

(Doc. 156-2 ¶ 59). These allegations are sufficient to demonstrate that Plaintiff's claim for restitution is not futile.

### C. Undue Delay

In <u>Howey</u>, the Ninth Circuit Court of Appeals observed, "[t]he purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial policy." <u>Howey</u>, 481 F.2d at 1191. Thus, by itself, undue delay is insufficient to prevent the Court from granting leave to amend. <u>Leighton</u>, 833 F.2d at 186. However, in combination with other factors, delay may be sufficient to deny amendment. *See* <u>Hurn v. Ret. Fund Trust of Plumbing</u>, 648 F.2d 1252, 1254 (9th Cir. 1981)

11

(where the Court found a delay of two years, "while not alone enough to support denial, is nevertheless relevant").

When evaluating undue delay, the Court must consider whether "permitting an amendment would ... produce an undue delay in the litigation." Jackson, 902 F.2d at 1387. In addition, a Court should examine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Id. at 1388.

Defendants contend that Plaintiffs unjust enrichment and restitution claims are not based upon newly discovered evidence and therefore should have been pled much sooner. Plaintiffs do not offer any reason to justify their delay in seeking to add these claims; they merely rely on the maxim that "leave to amend should be freely granted." (Doc. 166 at 8).

This case was filed in November of 2007. (Doc. 1). Plaintiffs have been aware of the facts that gave rise to the rescission/restitution and unjust enrichment claims since that time, but have waited, inexplicably, until now to assert these newly pled theories of recovery (Doc. 166 at 8). Consequently, this Court finds that Plaintiffs have unduly delayed in waiting over four years to seek to add claims for restitution and unjust enrichment (based upon inequitable conduct).

### D.     Bad Faith

While Plaintiffs clearly could have been more forthcoming about their intent to add the latest causes of action, based upon the information before the Court, it does not appear that Plaintiffs' motion to amend was brought in bad faith. Likewise, the Commission does not assert that the motion was brought in bad faith.

### E.     Prejudice to the Commission

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. Eminence Capital, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. Cal. 1987); Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). There is a presumption under Rule 15(a) in favor of granting leave to amend where prejudice is not shown. Eminence Capital, 316 F.3d at

1052. One indicator of prejudice includes the need to reopen discovery. In re Fritz Cos. Secs. Litig., 282 F. Supp. 2d 1105, 1109 (N.D. Cal. 2003).

Apart from the undue delay and prior amendment argument (previously discussed), the Commission does not separately argue it would be prejudiced by the requested amendment. (Doc. 161 at 13-14). Given that discovery has not yet begun and the parties have recently signed a stipulation regarding the use of discovery in a prior litigation, the Court does not find the Commission would be prejudiced in its ability to prepare a defense to the Fifth and Sixth Causes of Action in the proposed Third Amended Complaint.

## IV.   CONCLUSION

After weighing the pertinent factors, the Court believes the scales tip in favor of allowing Plaintiffs leave to amend. Based upon the foregoing, the Court ORDERS:

1. Plaintiffs' motion to amend their complaint (Doc. 156), is GRANTED;
2. The Commission's Request for Judicial Notice (Doc. 167), is DENIED:
3. Plaintiffs SHALL file their third amended complaint within two court days of service of this order;
4. The Fifth and Sixth Claims for Relief in Plaintiffs' third amended complaint SHALL relate only to the Sweet Scarlet varieties.

IT IS SO ORDERED.

Dated:   **May 23, 2012**               /s/ Jennifer L. Thurston
                                         UNITED STATES MAGISTRATE JUDGE