1  LAWRENCE M. HADLEY (SBN 157728)
   lhadley@mckoolsmithhennigan.com
2  MCKOOL SMITH HENNIGAN, P.C.
   865 South Figueroa Street, Suite 2900
3  Los Angeles, California 90017
   Telephone: (213) 694-1200
4  Fax: (213) 694-1234

5  RALPH B. WEGIS (SBN 67966)
   rwegis@ralphwegis.com
6  THE LAW OFFICES OF RALPH B. WEGIS
   1930 Truxtun Avenue
7  Bakersfield, CA  92201
   Telephone:  (661) 635-2100
8  Facsimile:  (661) 635-2107

9  BRIAN C. LEIGHTON (SBN 090907)
   bleighton@arrival.com
10 LAW OFFICES OF BRIAN C. LEIGHTON

11 Attorneys for Plaintiffs
   DELANO FARMS COMPANY, FOUR STAR FRUIT, INC.,
12 and GERAWAN FARMING, INC.

13

14                 UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16

17 DELANO FARMS COMPANY; FOUR      )  Case No.1:07-cv-01610-LJO-JLT
   STAR FRUIT, INC.; GERAWAN       )
18 FARMING, INC.,                  )  THIRD AMENDED COMPLAINT
                                    )
19                Plaintiffs,       )
                                    )  DEMAND FOR JURY TRIAL
20         vs.                      )
                                    )
21 THE CALIFORNIA TABLE GRAPE       )
   COMMISSION; UNITED STATES OF     )
22 AMERICA; UNITED STATES           )
   DEPARTMENT OF AGRICULTURE; TOM   )
23 VILSACK, SECRETARY OF THE UNITED )
   STATES DEPARTMENT OF             )
24 AGRICULTURE (IN HIS OFFICIAL     )
   CAPACITY),                       )
25                                  )
                 Defendants.        )
26 _____  )

27

28

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

For their third amended complaint against Defendant The California Table Grape Commission ("the Commission") and Defendants the United States of America ("U.S."), the United States Department of Agriculture ("USDA") and Tom Vilsack, Secretary of the United States Department of Agriculture (in his official capacity) ("Secretary Vilsack"), Plaintiffs Delano Farms Company; Four Star Fruit, Inc.; and Gerawan Farming, Inc. (collectively "Plaintiffs") allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this Third Amended Complaint ("TAC") challenging the USDA action in granting exclusive licenses to the Commission on certain grapevine varieties that the government has patented, and the licenses that the Commission has required each Plaintiff to enter into in order to acquire the grapevine varieties.  Plaintiffs contend that the licenses should be nullified because, among other things, the patents that are the subject of the licenses are invalid and (for one variety) unenforceable.  In granting the licenses, the government has allowed the Commission to charge significant royalties for use of the grapevines, limited distribution of the grapevines to three hand-picked nurseries (at least one with family ties to Commission board members), and prohibited the replacement of the grapevines from existing plants.  These restrictions discriminate against who may distribute the grapevines at issue and what growers can afford to produce and sell table grapes from the patented vines.  Moreover, the licensing provisions are completely unnecessary for funding to bring the patented grapevines (and fruit produced from the grapevines) to market or otherwise promote the use of the patented grapevines (and fruit produced) by the public.  To the contrary, the same farmers who must now pay significant royalties and fees to plant and reproduce the patented varieties already pay for a substantial portion of developing the patented grapevine varieties through a tax charged by the Commission on each box of table grapes sold.  For this reason, prior to licensing the grapevine patents to the Commission, and allowing the Commission to impose royalty and distribution restrictions, the USDA distributed newly-developed grapevine varieties to growers free of charge, allowing unlimited distribution and reproduction.

2.      Besides alleging that the patents subject to the licenses are invalid and unenforceable, Plaintiffs TAC seeks recession of the grower license agreements, restitution of royalties received by

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1   the Commission, and disgorgement by the Commission of wrongfully obtained royalties on invalid

2   patents.

3                              **JURISDICTION AND VENUE**

4          3.      This is a civil action arising under the Patent Act, 35 U.S.C. § 1 *et seq.,* and the

5   Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.,*  This Court has federal jurisdiction of such

6   federal question claims pursuant to 28 U.S.C. §§ 1331, 1337 and 1338(a).  This Court has

7   jurisdiction over the claims for declaratory judgment of invalidity pursuant to the Declaratory

8   Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9          4.      This Court has supplemental jurisdiction over the claims in this Complaint against

10  the Commission that arise under statutory and common law of the State of California pursuant to 28

11  U.S.C §1367(a), because the state law claims are so related to the federal claims that they form part

12  of the same case or controversy and derive from a common nucleus of operative facts.

13         5.      The acts and transactions complained of herein were conceived, carried out, made

14  effective, and had effect within the State of California and within this district, among other places.

15  Venue is proper under 28 U.S.C. §§1391(b) and 1391(c) in that Plaintiffs reside in this District,

16  Defendant the California Table Grape Commission resides in this District and has a regular and

17  established place of business in this District and in that a substantial part of the events or omissions

18  giving rise to the claims and the threatened and actual harm to Plaintiffs occurred in this District by

19  reason of Defendants' conduct as alleged below.

20                                  **THE PARTIES**

21         6.      Plaintiff Delano Farms Company is a corporation duly organized and existing under

22  the laws of the State of Washington, with its principle place of business at 815 Eighth Street, P.O.

23  Box 240, Hoquiam, Washington 98550.

24         7.      Plaintiff Four Star Fruit, Inc. is a corporation duly organized and existing under the

25  laws of the State of California, with its principle place of business at 13830 Avenue 24, Delano,

26  California  93215.

27         8.      Plaintiff Gerawan Farming, Inc. is a corporation duly organized and existing under

28  the laws of the State of California, with its principle place of business at 15749 East Ventura,

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1    Sanger, California 93657.

2         9.     Plaintiffs are engaged in the business, *inter alia*, of growing, harvesting and selling

3    table grapes.

4         10.    Defendant The California Table Grape Commission is a corporation of the State of

5    California, established by the 1967 Ketchum Act. Cal. Food & Agric. Code §§65550 – 65551.

6    Defendant's principle place of business is at 392 W. Fallbrook, Suite 101, Fresno, California 93711.

7         11.    The stated purpose of the Commission is to expand and maintain the market for

8    California table grapes for the benefit of the State of California as well as the State's over five

9    hundred California table grape growers. The Commission is funded primarily by assessments levied

10   on each shipment of California table grapes and paid by the State's table grape shippers. No general

11   revenues of the State fund the Commission.

12        12.    Defendant the United States of America is a sovereign nation organized and existing

13   under the Constitution of the United States. Pursuant to Fed. R. Civ. P. 4(i), the United States may

14   be served through the United States Attorney for the Eastern District of California – Lawrence

15   Brown, United States Attorney's Office, 501 I Street, Suite 10-100, Sacramento, CA 95814.

16   Additionally, under Rule 4(i), a copy of the summons and complaint must be sent by registered or

17   certified mail to the Attorney General of the United States, Office of the Attorney General, U.S.

18   Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

19        13.    Defendant the United States of America and its representative, the United States

20   Department of Agriculture, reside and conduct business within the territorial jurisdiction of this

21   Court.

22        14.    Defendant United States Department of Agriculture is a United States federal

23   executive department, established by 7 U.S.C. § 2201. Defendant USDA's headquarters are located

24   at 1301 Independence Avenue, S.W., Washington, D.C. 20004.

25        15.    The stated purpose of the USDA is to provide leadership on food, agriculture, natural

26   resources, and related issues based on sound public policy, the best available science, and efficient

27   management.

28        16.    Defendant Tom Vilsack, Secretary of the United States Department of Agriculture,

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

has overall responsibility for the United States Department of Agriculture.  He is named in his
official capacity and may be served at the Department of Agriculture at 1301 Independence Avenue,
S.W., Washington, D.C. 20004.

## FACTS

*Overview*

17.    For years, California table grape growers and shippers have funded a research
program under the USDA to develop new table grape varieties.  Growers and shippers fund the
USDA research program through the Commission by an assessment on each box of table grapes
shipped in California.  Prior to 2002, the USDA provided the new varieties under development to
area growers for evaluation of growing potential and commercial marketability.  Once new varieties
appeared commercially viable, the USDA "released" the variety, and distributed plant material of
the variety to area growers free-of-charge.  The USDA did not charge California growers for the
new varieties since California growers and shippers already paid for a large portion of the
development.

18.    In the late 1990s, the Commission developed a secret scheme by which it and a few
select nurseries could profit from the new varieties that the USDA distributed for free.  At the urging
of the Commission during a series of privately-held meetings, the USDA agreed to begin patenting
new table grape varieties.  Although California shippers already funded much of the development,
the USDA secretly agreed to give the Commission an exclusive license to all new patented varieties,
and to allow the Commission to charge royalties when growers wished to obtain the new varieties.
The USDA also agreed to give the Commission exclusive enforcement powers over its new patent
rights.

19.    Under the Commission's "patent and licensing" scheme, the Commission hand-
selected three nurseries, without public notice, to exclusively sell all new patented table grape
varieties.  Unlike the prior free distribution, the hand-selected nurseries would be allowed to sell
new varieties to growers at a charge.  Additionally, the nurseries would be required to pay a royalty
to the Commission for each plant sold, which the nursery could pass onto the growers.  One of the
hand-selected nurseries now able to profit from newly developed varieties previously distributed

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1   without charge is owned by the son of a long-standing Commission member.

2        20.     When a grower seeks to obtain a new variety from a nursery, it is required to enter a

3   "Domestic Grower License Agreement" with the Commission.  Under the terms of the Agreement,

4   the grower cannot propagate the variety beyond the plant purchased.  Accordingly, to replace any

5   grapevine, a grower must purchase another plant from one of the three nurseries and pay a patent

6   royalty.  If the Commission believes the grower has violated the License Agreement in any way, it

7   can void the Agreement and order that all purchased plants be destroyed.

8        21.     The first three varieties that the Commission identified to the USDA for patenting

9   had been under development for years.  Indeed, at least one of the varieties had been distributed to

10  growers for wide-scale commercial evaluation and sale.

11       22.     Recognizing that at least one of the new varieties identified for patenting (and

12  perhaps all three) had been in the public domain for years, the Commission created a so-called

13  "amnesty program" to extort funds from growers already in possession of the varieties.  Under the

14  amnesty program, the Commission widely disseminated notices to growers and shippers stating that

15  they were in violation of the law if they possessed the varieties intended for patenting, even though

16  no patents had yet been granted.  The notices also offered confidential "settlements" to any growers

17  who, within a narrow window, agreed to license the varieties, pay a "penalty" to the Commission,

18  and accept the Commission's license restrictions on further propagation.  Growers and shippers who

19  refused the "amnesty" were threatened with lawsuits, including money damages and injunctions.

20  On information and belief, the U.S, through the USDA, knew of and authorized the amnesty

21  program.

22       23.     At least 17 growers confirmed possession of the varieties and agreed to pay the

23  penalties demanded by the Commission.

24       ***The Patented Varieties***

25            ***Sweet Scarlet***

26       24.     On February 20, 2003, the USDA filed patent application No. 371,512 (the "'512

27  Application") on a grapevine denominated "Sweet Scarlet."  The application listed David W.

28  Ramming and Ronald E. Tarallo as co-inventors.  On July 26, 2005, the '512 Application issued as

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1    U.S. Patent No. PP15,891, entitled "Grapevine Denominated Sweet Scarlet" (the "'891 patent").

2        25.    The United States of America, as represented by the Secretary of Agriculture, is the

3    owner by assignment of the '891 patent.

4        26.    On information and belief, the Commission is the exclusive licensee of the '891

5    patent pursuant to a license agreement entered into between the United States Government, as

6    represented by the United States Department of Agriculture, Agricultural Research Services, and the

7    Commission.  The exclusive license includes the right to license the '891 patent and to enforce the

8    '891 patent against alleged infringers.

9                *Autumn King*

10       27.    On September 28, 2004, the USDA filed patent application No. 953,387 (the "'387

11   Application") on a grapevine denominated "Autumn King."  The application listed David W.

12   Ramming and Ronald E. Tarallo as co-inventors.  On February 21, 2006, the '387 Application

13   issued as U.S. Patent No. PP16,284, entitled "Grapevine Denominated Autumn King" (the "Autumn

14   King or '284 patent").

15       28.    The United States of America, as represented by the Secretary of Agriculture, is the

16   owner by assignment of the '284 patent.

17       29.    On information and belief, the Commission is the exclusive licensee of the '284

18   patent pursuant to a license agreement entered into between the United States Government, as

19   represented by the United States Department of Agriculture, Agricultural Research Services, and the

20   Commission.  The exclusive license includes the right to license the '284 patent and to enforce the

21   '284 patent against alleged infringers.

22               *Scarlet Royal*

23       30.    On September 28, 2004, the USDA filed patent application No. 953,124 (the "'124

24   Application") on a grapevine denominated "Scarlet Royal."  The application listed David W.

25   Ramming and Ronald E. Tarallo as co-inventors.  On January 31, 2006, the '124 Application issued

26   as U.S. Patent No. PP16,229, entitled "Grapevine Denominated Scarlet Royal" (the "Scarlet Royal

27   or '229 patent").

28       31.    The United States of America, as represented by the Secretary of Agriculture, is the

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1    owner by assignment of the '229 patent.

2      32. On information and belief, the Commission is the exclusive licensee of the '229

3    patent pursuant to a License Agreement entered into between the United States Government, as

4    represented by the United States Department of Agriculture, Agricultural Research Services, and the

5    Commission.  The exclusive license includes the right to license the '229 patent and to enforce the

6    '229 patent against alleged infringers.

7       ***The Patent and Licensing Program***

8      33. The Commission requires that California grape shippers pay an assessment of

9    approximately $0.13 per box of table grapes.  The Commission operates at an annual surplus from

10   these assessments, but does not return any of the assessment money back to the California growers

11   or shippers.

12     34. Dr. Ramming, the co-inventor of the patented Autumn King, Sweet Scarlet and

13   Scarlet Royal varieties, is a researcher at the Agriculture Research Center ("ARC") of the USDA

14   located in Fresno, California.  For at least 20 years, Dr. Ramming has operated a research program

15   at the ARC relating to the development of new table grape varieties.  Since the early 1980s, the

16   Commission has funded a significant portion of Dr. Ramming's grapevine breading program with

17   funds collected through the shipper assessments.  In many years, the Commission's funding has

18   amounted to over one-third of the total table grape research budget at the ARC, excluding employee

19   salaries.

20     35. Prior to 2003, the USDA had never sought patent protection for any new table grape

21   variety developed at the ARC.  Instead, for nearly two decades, new grape varieties developed by

22   the ARC with California table grape shipper assessment revenues were distributed freely to

23   California growers by the USDA.  Specifically, once Dr. Ramming and his researchers developed a

24   new variety that had commercial potential, a number of growers would be selected to produce the

25   new variety as part of a "grower trial."  If the grower trials appeared successful, then the results

26   would be made publicly available and the variety would be "released" for distribution.  Releasing a

27   new variety was not an "official" act; rather, the USDA would announce the availability of the new

28   variety, and any grower (or any other person) could obtain "sticks" (i.e., plant material) of the new

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

variety without cost from the USDA ARC facility in Fresno, California.  Once a grower obtained the sticks, the grower could plant the new variety at its sole discretion, and reproduce and distribute plant material of the new variety without restriction.  In other words, the commercial risk associated with producing and selling table grapes from new USDA-developed varieties rested solely with growers (who had already funded much of the development costs).

36.    Growers participating in the "trials" were given plant material for the new variety, and allowed to reproduce the variety as needed, grow the new variety at their discretion, sell the fruit produced, and retain any profits.  While certain growers were selected for the trials, the USDA provided no mechanism for preventing other growers from accessing and reproducing the varieties as well.  Accordingly, when a variety under development appeared commercially successful, it was not uncommon for many growers to have reproduced and commercially sold the variety prior to an "release" by the USDA.  For example, when the USDA developed the "Princess" variety, it was well known that growers throughout the central valley had been reproducing Princess grapevines and selling Princess fruit for years.

37.    Neither the USDA nor the Commission had any incentive to restrict the distribution of new grapevines prior to a release, and never sought to do so.  Widespread reproduction and sales of new varieties allowed greater customer acceptance prior to release.  Additionally, growers and shippers contributed substantially to the development of new varieties in Dr. Ramming's grapevine breeding program.  Moreover, even after release, the USDA provided plant material from which growers could reproduce the variety free of charge.  For years, this system allowed for the successful commercialization of grapevine varieties developed by the USDA that were funded by California growers.

38.    The USDA, Dr. Ramming, and the Commission knew that plant material for varieties under development frequently entered the public domain prior to release.

39.    In the late 1990s, the Commission formed a plan to change this procedure.  Specifically, the Commission adopted a plan to request that the USDA seek patent protection on all new table grape varieties developed prior to general release.  Initially, the patents were intended to control competition from foreign growers.  In the past, foreign growers frequently obtained new

McKool Smith Hennigan, P.C.
LOS ANGELES, CALIFORNIA

1    table grape varieties developed through assessments on California growers, then competed with

2    California growers in market for the new varieties.  Under the Commission's plan, the distribution

3    of new table grape varieties would operate as follows:  (1) USDA would seek patent protection for

4    all new varieties, (2) the USDA would grant an exclusive license to the Commission to administer

5    the distribution of new patented varieties, (3) California table grape growers would be provided

6    patented varieties free of charge, and (4) the new patented varieties would either be excluded from

7    foreign growers or provided to foreign growers at high royalty rates.

8         40.    After several secret meetings between the Commission and the USDA, the USDA

9    ultimately agreed to seek patent protection as requested by the Commission.  The USDA further

10   agreed that the Commission could serve as the exclusive licensee for patented varieties in the

11   collection of royalties and enforcement against infringers.  However, unknown to Plaintiffs, the

12   USDA told the Commission that it could not, under U.S. trade agreements, refuse to provide the

13   new patented varieties to foreign growers, block foreign growers from importing table grapes from

14   the new patented varieties, or discriminate against foreign growers in charging royalties.

15        41.    Even though the USDA barred the Commission from implementing the original goals

16   behind the patenting program – namely, to control foreign competition – the Commission decided to

17   proceed with a patent and licensing plan.  The Commission secretly decided that it could effectively

18   increase its powers without any action from the California State Legislature, if the USDA would

19   patent all new varieties, and give the Commission exclusive control over how the varieties were

20   distributed.  In effect, such a plan would give the Commission a new source of revenue beyond that

21   allowed under California law, and would place with the Commission complete power over the sale,

22   reproduction, and distribution of new table grape varieties – powers that the Commission lacked

23   under the USDA's prior distribution program.  For example, the Commission recognized that if it

24   charged royalties to all growers of the new patented varieties, the Commission could effectively

25   collect an additional tax on table grape growers beyond the $0.13 per box of table grapes allowed

26   under California law.  Further, the Commission, which is controlled by a number of large growers,

27   recognized that it could limit access to new varieties, particularly by smaller growers, through the

28   amount of royalties it charged for obtaining the patented varieties, and through the terms of its

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1   sublicense agreements. Finally, the Commission recognized that it could control the reproduction

2   and distribution of new patented varieties by granting distribution rights to a few entities that it

3   would hand-select.

4   42.   In or about August 2001, the Commission entered into a secret Memorandum of

5   Understanding ("MOU") with the USDA, outlining the framework under which the USDA would

6   seek patent protection for new grapevine varieties and grant exclusive licenses to the Commission.

7   The MOU made clear that the Commission would be obligated to grant rights to foreign growers.

8   Neither the USDA nor the Commission provided notice of the MOU, and the existence and terms of

9   the MOU were not published in the Federal Register for notice and comment.

10   43.   Separate from the MOU, the Commission and the USDA secretly agreed that, in

11   exchange for seeking patent protection, and providing an exclusive license to the Commission, the

12   Commission would limit the number of entities licensed to distribute, reproduce, and sell the new

13   patented varieties. Although the USDA indicated that it was not interested in obtaining payments

14   for, or profiting from, any patents on new varieties, the USDA agreed that the Commission could

15   collect royalties on the sale of each patented grapevine plant and that the Commission would share

16   the royalty revenue with the USDA. The USDA further agreed to eliminate "grower trials" and

17   place stricter controls on the access to new varieties prior to an official "release." These "side"

18   terms were not disclosed publicly or published in the Federal Register for notice and comment.

19   *The Commission's Licenses to Nurseries and Plaintiffs*

20   44.   Ultimately, the Commission, with permission from the USDA, hand-select three

21   nurseries to reproduce, distribute and sell the patented varieties. The section of these nurseries was

22   not disclosed publicly or published in the Federal Register for notice and comment. The three

23   selected nurseries are: Sunridge Nurseries, Vintage Nurseries, and Casa Crystal Nurseries (the

24   "Licensed Nurseries"). Casa Crystal Nursery is owned by Andrew Zaninovich. Andrew's father is

25   Marco Zaninovich, who has been a long-time and active board member of the Commission.

26   45.   Each Licensed Nursery is authorized to sell Autumn King, Sweet Scarlet and Scarlet

27   Royal vines to growers who execute a "Domestic Grower License Agreement" with the

28   Commission. In accordance with the agreement between the Commission and the USDA, the

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1   Commission charges nurseries who distribute patented varieties a $5,000 participation fee per

2   patented variety and an additional $1 per production unit royalty. These costs are then passed on by

3   the nurseries to the California grape growers who purchase the patented plant material from the

4   nurseries, including Plaintiffs who purchased the Patented Varieties. These payment terms,

5   including the permission to allow the nurseries to charge the royalties to growers, who must also

6   purchase the plant material, were not disclosed publicly or published in the Federal Register for

7   notice and comment prior to their adoption.

8       46.    The Domestic Grower Agreements prohibit growers who purchase the Patented

9   Varieties from propagating the vines or distributing the vines to third parties. Under the Domestic

10  Grower Agreements, the Commission may revoke the patent sub-license of any grower who violates

11  the terms, and require the grower to destroy all Patented Varieties purchased. The terms of the

12  Domestic Grower Agreements, created by the Commission with the approval of the USDA, were not

13  disclosed publicly or published in the Federal Register for notice and comment prior to their

14  adoption.

15      47.    All royalties are paid to the Commission. On information and belief, the

16  Commission pays approximately one-half of the collected royalties to the USDA.

17      48.    The California table grape growers who bear the ultimate costs of the royalty fees

18  imposed by the Commission are the same California table grape growers who bear the cost of the

19  per box assessment charged by the Commission, which funds much of Dr. Ramming's breeding

20  program. Thus, California table grape growers essentially pay for the development of patented

21  varieties, then pay again to obtain the varieties.

22      49.    The Commission's Research Committee and Board oversee and administer the patent

23  and licensing program. Specifically, the Board sets the royalty rates on patented plants, determines

24  penalties for infringement, and establishes enforcement policy. The Research Committee oversees

25  Dr. Ramming's breeding program and makes recommendations regarding which new varieties

26  should be patented and released. To date, the USDA has only patented new varieties that the

27  Commission has recommended for patenting, and has only applied for patents after receiving a

28  recommendation from the Commission to do so.

1
*Release of the Patented Varieties*

2     50.   Development of the Patented Varieties began in about 1993.  Prior to 2003, the Dr.

3  Ramming had reproduced each of the Patented Varieties, produced fruit from each of the Patent

4  Varieties, and had evaluated the potential commercialization of each Patented Variety.

5     51.   By 2001, the Commission's Research Committee was actively evaluating the Sweet

6  Scarlet, Autumn King, and Scarlet Royal varieties (among others) for USDA release.  In 2002, the

7  Commission recommended that Sweet Scarlet be released.  The Commission also recommended that

8  the USDA seek patent protection on Sweet Scarlet as the first variety for patenting under the

9  Commission's new patent and licensing program.  After receiving the Commission's

10  recommendation, the UDSA proceeded with the release of Sweet Scarlet and filed a patent

11  application on the Sweet Scarlet variety in February 2003.

12     52.   Although the Commission recommended proceeding with the release of Sweet

13  Scarlet, the Commission decided to delay any release and patenting of Autumn King and Scarlet

14  Royal.  Instead, the Commission recommended that Autumn King and Sweet Scarlet undergo

15  further evaluation prior to release.  Approximately two years later, in 2004, the Commission finally

16  recommended release of Autumn King and Scarlet Royal.  At that time, the Commission further

17  recommended that the UDSA seek patent protection for Autumn King and Scarlet Royal.

18     53.   On information and belief, the Sweet Scarlet, Autumn King, and Scarlet Royal

19  varieties were already in the public domain prior to the time the USDA applied for patent protection

20  on each respective variety.

21     54.   For example, the Sweet Scarlet variety and its fruit was used, distributed, offered for

22  sale and sold by growers and shippers prior to February 20, 2002, including uses by growers who

23  were not part of grower trials.  Both the Commission and USDA knew of at least some non-grower-

24  trial uses.  In May 2004, the Commission sent a notice to all California table grape growers and

25  shippers stating that the UDSA had applied for a patent on the Sweet Scarlet variety.  Although no

26  enforceable patent had yet issued, the Commission offered "amnesty" for any grower who had

27  previously reproduced Sweet Scarlet.  Under its so-called "amnesty" program, a grower with Sweet

28  Scarlet could keep the vines reproduced, so long as the grower (i) admitted to possession prior to

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1   July 2004, (ii) paid $2 per vine reproduced, (iii) paid $2 per box of Sweet Scarlet grapes previously

2   shipped, and (iv) agreed to no further propagation of the Sweet Scarlet variety from the plants

3   possessed.

4          55.     In July 2004, the Commission sent another notice to all California table grape

5   growers and shippers extending the "amnesty" time period for one month, and extending the

6   "amnesty" to include Autumn King and Scarlet Royal varieties.

7          56.     In both notices, the Commission threatened to sue growers who did not come

8   forward, and to seek money damages and injunctions. Yet, at the time of the second notice, the

9   USDA patent application on Sweet Scarlet not only remained un-issued, but had been rejected by

10  the USPTO. Moreover, the USDA had not even applied for a patent on either Autumn King or

11  Scarlet Royal.

12         57.     On April 29, 2003, the USDA published notice in the Federal Register of its intent to

13  grant an exclusive license to the Commission for the Sweet Scarlet patent. The Federal Register

14  notice did not state the terms of the license, and provided no information on whether growers would

15  be authorized to reproduce or distribute the Sweet Scarlet variety, whether growers would incur any

16  costs to obtain the Sweet Scarlet variety, or whether growers would incur any royalty expenses for

17  the Sweet Scarlet variety. Indeed, the Federal Register notice contained no information whatsoever

18  regarding the exclusive licensing terms and conditions that the Commission had secretly negotiated

19  with the USDA. In or about 2003, the USDA entered into an exclusive license with the Commission

20  for the Sweet Scarlet patent.

21         58.     On December 23, 2004, the USDA published notice in the Federal Register of its

22  intent to grant an exclusive license to the Commission for the Autumn King and Scarlet Royal

23  patents. The Federal Register notice did not state the terms of the license, and provided no

24  information on whether growers would be authorized to reproduce or distribute the Autumn King

25  and Scarlet Royal varieties, whether growers would incur any costs to obtain the Autumn King and

26  Scarlet Royal varieties, or whether growers would incur any royalty expenses for the Autumn King

27  and Scarlet Royal varieties. Indeed, the Federal Register notice contained no information

28  whatsoever regarding the exclusive licensing terms and conditions that the Commission had secretly

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1 negotiated with the USDA.  In or about June, 2005, the USDA entered into an exclusive license with

2 the Commission for the Autumn King and Scarlet Royal patents.

3 ***Plaintiffs' Purchase of the Patented Varieties***

4 59.    Plaintiffs are in possession of the Autumn King, Sweet Scarlet and Scarlet Royal

5 varieties, which they purchased through Licensed Nurseries.  Plaintiffs paid the royalties on each

6 purchased plant imposed by the Commission.

7 60.    Plaintiffs have entered into a Domestic Grower License Agreement with the

8 Commission for the '891 patent.  In consideration for this limited, nonexclusive license, Plaintiffs

9 have paid a license fee to a Licensed Nursery.  Under the terms of this Agreement, Plaintiffs have a

10 limited, nonexclusive license to the '891 patent to grow the Sweet Scarlet variety plants that they

11 purchased, and sell the fruit produced from those plants.  Plaintiffs cannot propagate the grapevines

12 or distribute the vines to third parties.  Furthermore, Plaintiffs are obligated to destroy all Sweet

13 Scarlet plant material upon termination of the agreement.

14 61.    Plaintiffs have entered into a Domestic Grower License Agreement with respect to

15 the '284 patent.  In consideration for this limited, nonexclusive license, Plaintiffs have paid a license

16 fee to a Licensed Nursery.  Under the terms of this Agreement, Plaintiffs have a limited,

17 nonexclusive license to the '284 patent to grow the Autumn King variety plants that they purchased,

18 and sell the fruit produced from those plants.  Plaintiffs cannot propagate the grapevines or distribute

19 the vines to third parties.  Furthermore, Plaintiffs are obligated to destroy all Autumn King plant

20 material upon termination of the agreement.

21 62.    Plaintiffs have entered into a Domestic Grower License Agreement with respect to

22 the '229 patent.  In consideration for this limited, nonexclusive license, Plaintiffs have paid a license

23 fee to a Licensed Nursery.  Under the terms of this Agreement, Plaintiffs have a limited,

24 nonexclusive license to the '229 patent to grow the Scarlet Royal variety that they purchased, and

25 sell the fruit produced from those plants.  Plaintiffs cannot propagate the grapevines or distribute the

26 vines to third parties.  Furthermore, Plaintiffs are obligated to destroy all Scarlet Royal plant

27 material upon termination of the agreement.

28

1

## FIRST CLAIM FOR RELIEF

2

### (Declaration of Invalidity of '891 Patent Against All Defendants)

3      63.     Plaintiffs reallege and incorporate by reference all paragraphs 1-62 as if fully set

4   forth herein.

5      64.     This claim arises under the patent laws of the United States, Title 35 of the United

6   States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United

7   States Code and the APA at 5 U.S.C. §§702, *et seq.*

8      65.     The U.S., USDA, and Secretary Vilsack engaged in a discrete and final agency

9   actions by licensing and enforcing the '891 patent.  The acts complained of herein constitute final

10  agency actions by the U.S., USDA and Secretary Vilsack subject to review under the APA.  These

11  acts mark the consummation of the U.S.'s, USDA's and Secretary Vilsack's decision-making

12  process.  These acts are not interlocutory, interim or tentative in nature.  These acts are those by

13  which rights or obligations have been determined or from which legal consequences will flow.

14  Specifically, the acts complained of herein have directly determined the rights and obligations of

15  Plaintiffs and the Commission with respect to the growing, distribution, sale, reproduction,

16  propagation and otherwise free use of the plant material and fruit of the Sweet Scarlet grapevine,

17  and the right to collect royalties and the right to exclude thereof.  These acts are arbitrary,

18  capricious, and otherwise not in accordance with applicable laws and regulations, including 35

19  U.S.C. §102(b).

20     66.     The Commission, as the exclusive licensee of the '891 patent, has demanded that

21  Plaintiffs enter a license agreement to plant and harvest fruit from Sweet Scarlet grapevines.

22     67.     Plaintiffs have paid for and obtained a license to the '891 patent, and possess Sweet

23  Scarlet grapevines.

24     68.     Plaintiffs assert that the '891 patent is invalid under at least 35 U.S.C. §102(b), and

25  that they should not be required to license the '891 patent from the Commission or pay royalties

26  therefor.

27     69.     An actual case and controversy exists between Plaintiffs and the Commission, the

28  U.S., the USDA and Secretary Vilsack concerning the '891 patent.

McKool Smith Hennigan, P.C.
LOS ANGELES, CALIFORNIA

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

70.     The action of the U.S., USDA and Secretary Vilsack in procuring the '891 patent was unlawful under 35 U.S.C. §102(b).

71.     Plaintiffs have been harmed directly by the U.S.'s, USDA's and Secretary Vilsack's actions, have suffered a legal wrong because of the U.S.'s, USDA's and Secretary Vilsack's actions and have been adversely affected and aggrieved by the U.S.'s, USDA's and Secretary Vilsack's actions. The U.S.'s, USDA's and Secretary Vilsack's actions have directly impacted Plaintiffs' day-to day business. As a result of the U.S.'s, USDA's and Secretary Vilsack's actions, Plaintiffs have been (1) restricted from growing, selling, distributing, reproducing, propagating or otherwise freely using plant material for the Sweet Scarlet grapevine, (2) restricted from growing, selling, reproducing, distributing, propagating or otherwise freely using the fruit for the Sweet Scarlet grapevine, and (3) forced to license and pay royalties to the Commission and its agents with respect to the Sweet Scarlet grapevine plant material.

72.     Plaintiffs are entitled to declaratory judgment from this Court that the '891 patent is invalid pursuant to at least 35 U.S.C. §102(b).

73.     This Court may and should hold unlawful and invalid the '891 patent pursuant to 5 U.S.C. §706(2)(A), (C), and (D).

## SECOND CLAIM FOR RELIEF

### (Declaration of Invalidity of '284 Patent Against All Defendants)

74.     Plaintiffs reallege and incorporate by reference all paragraphs 1-74 as if fully set forth herein.

75.     This claim arises under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United States Code and the APA at 5 U.S.C. §§702, et seq.

76.     The U.S., USDA, and Secretary Vilsack engaged in a discrete and final agency actions by licensing and enforcing the '284 patent. The acts complained of herein constitute final agency actions by the U.S., USDA and Secretary Vilsack subject to review under the APA. These acts mark the consummation of the U.S.'s, USDA's and Secretary Vilsack's decision-making process. These acts are not interlocutory, interim or tentative in nature. These acts are those by

1  which rights or obligations have been determined or from which legal consequences will flow.

2  Specifically, the acts complained of herein have directly determined the rights and obligations of

3  Plaintiffs and the Commission with respect to the growing, distribution, sale, reproduction,

4  propagation and otherwise free use of the plant material and fruit of the Sweet Scarlet grapevine,

5  and the right to collect royalties and the right to exclude thereof.  These acts are arbitrary,

6  capricious, and otherwise not in accordance with applicable laws and regulations, including 35

7  U.S.C. §102(b).

8         77.    The Commission, as the exclusive licensee of the '284 patent, has demanded that

9  Plaintiffs enter a license agreement to plant and harvest fruit from Sweet Scarlet grapevines.

10        78.    Plaintiffs have paid for and obtained a license to the '284 patent, and possess Sweet

11 Scarlet grapevines.

12        79.    Plaintiffs assert that the '284 patent is invalid under at least 35 U.S.C. §102(b), and

13 that they should not be required to license the '284 patent from the Commission or pay royalties

14 therefor.

15        80.    An actual case and controversy exists between Plaintiffs and the Commission, the

16 U.S., the USDA and Secretary Vilsack concerning the '284 patent.

17        81.    The action of the U.S., USDA and Secretary Vilsack in procuring the '284 patent was

18 unlawful under 35 U.S.C. §102(b).

19        82.    Plaintiffs have been harmed directly by the U.S.'s, USDA's and Secretary Vilsack's

20 actions, have suffered a legal wrong because of the U.S.'s, USDA's and Secretary Vilsack's actions

21 and have been adversely affected and aggrieved by the U.S.'s, USDA's and Secretary Vilsack's

22 actions.  The U.S.'s, USDA's and Secretary Vilsack's actions have directly impacted Plaintiffs' day-

23 to day business.  As a result of the U.S.'s, USDA's and Secretary Vilsack's actions, Plaintiffs have

24 been (1) restricted from growing, selling, distributing, reproducing, propagating or otherwise freely

25 using plant material for the Sweet Scarlet grapevine, (2) restricted from growing, selling,

26 reproducing, distributing, propagating or otherwise freely using the fruit for the Sweet Scarlet

27 grapevine, and (3) forced to license and pay royalties to the Commission and its agents with respect

28 to the Sweet Scarlet grapevine plant material.

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1    83.    Plaintiffs are entitled to declaratory judgment from this Court that the '284 patent is

2    invalid pursuant to at least 35 U.S.C. §102(b).

3    84.    This Court may and should hold unlawful and invalid the '284 patent pursuant to 5

4    U.S.C. §706(2)(A), (C), and (D).

5                              **THIRD CLAIM FOR RELIEF**

6              **(Declaration of Invalidity of '229 Patent Against All Defendants)**

7    85.    Plaintiffs reallege and incorporate by reference all paragraphs 1-84 as if fully set

8    forth herein.

9    86.    This claim arises under the patent laws of the United States, Title 35 of the United

10    States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United

11    States Code and the APA at 5 U.S.C. §§702, et seq.

12    87.    The U.S., USDA, and Secretary Vilsack engaged in a discrete and final agency

13    actions by licensing and enforcing the '229 patent.  The acts complained of herein constitute final

14    agency actions by the U.S., USDA and Secretary Vilsack subject to review under the APA.  These

15    acts mark the consummation of the U.S.'s, USDA's and Secretary Vilsack's decision-making

16    process.  These acts are not interlocutory, interim or tentative in nature.  These acts are those by

17    which rights or obligations have been determined or from which legal consequences will flow.

18    Specifically, the acts complained of herein have directly determined the rights and obligations of

19    Plaintiffs and the Commission with respect to the growing, distribution, sale, reproduction,

20    propagation and otherwise free use of the plant material and fruit of the Sweet Scarlet grapevine,

21    and the right to collect royalties and the right to exclude thereof.  These acts are arbitrary,

22    capricious, and otherwise not in accordance with applicable laws and regulations, including 35

23    U.S.C. §102(b).

24    88.    The Commission, as the exclusive licensee of the '229 patent, has demanded that

25    Plaintiffs enter a license agreement to plant and harvest fruit from Sweet Scarlet grapevines.

26    89.    Plaintiffs have paid for and obtained a license to the '229 patent, and possess Sweet

27    Scarlet grapevines.

28    90.    Plaintiffs assert that the '229 patent is invalid under at least 35 U.S.C. §102(b), and

McKool Smith Hennigan, P.C.
LOS ANGELES, CALIFORNIA

1  that they should not be required to license the '229 patent from the Commission or pay royalties

2  therefor.

3      91.    An actual case and controversy exists between Plaintiffs and the Commission, the

4  U.S., the USDA and Secretary Vilsack concerning the '229 patent.

5      92.    The action of the U.S., USDA and Secretary Vilsack in procuring the '229 patent was

6  unlawful under 35 U.S.C. §102(b).

7      93.    Plaintiffs have been harmed directly by the U.S.'s, USDA's and Secretary Vilsack's

8  actions, have suffered a legal wrong because of the U.S.'s, USDA's and Secretary Vilsack's actions

9  and have been adversely affected and aggrieved by the U.S.'s, USDA's and Secretary Vilsack's

10  actions.  The U.S.'s, USDA's and Secretary Vilsack's actions have directly impacted Plaintiffs' day-

11  to day business.  As a result of the U.S.'s, USDA's and Secretary Vilsack's actions, Plaintiffs have

12  been (1) restricted from growing, selling, distributing, reproducing, propagating or otherwise freely

13  using plant material for the Sweet Scarlet grapevine, (2) restricted from growing, selling,

14  reproducing, distributing, propagating or otherwise freely using the fruit for the Sweet Scarlet

15  grapevine, and (3) forced to license and pay royalties to the Commission and its agents with respect

16  to the Sweet Scarlet grapevine plant material.

17      94.    Plaintiffs are entitled to declaratory judgment from this Court that the '229 patent is

18  invalid pursuant to at least 35 U.S.C. §102(b).

19      95.    This Court may and should hold unlawful and invalid the '229 patent pursuant to 5

20  U.S.C. §706(2)(A), (C), and (D).

21  **FOURTH CLAIM FOR RELIEF**

22  **(Declaration of Unenforceability for Inequitable Conduct Regarding '891 Patent Against All**

23  **Defendants)**

24      96.    Plaintiffs reallege and incorporate by reference all paragraphs 1-95 as if fully set

25  forth herein.

26      97.    The Sweet Scarlet variety was in public use through reproduction, and fruit from the

27  Sweet Scarlet variety was publicly sold, prior to February 2002.

28      98.    The prior possession and reproduction of the Sweet Scarlet variety, particularly by

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1    growers who admitted to such possession and reproduction under the Commission's "amnesty"

2    program, was material to the patentability of the Sweet Scarlet variety.

3         99.    On information and belief, the USDA and Dr. Ramming knew of the prior possession

4    and reproduction of the Sweet Scarlet variety by growers who admitted to such possession and

5    reproduction under the Commission's "amnesty" program.  Additionally, on information and belief,

6    Margaret A. Conner, John D. Fado, and/or Lesley Shaw, who prosecuted the application on the

7    Sweet Scarlet variety before the USPTO, knew of the prior possession and reproduction of the

8    Sweet Scarlet variety by growers who admitted to such possession and reproduction under the

9    Commission's "amnesty" program.

10        100.   Prior to issuance of the '891 patent, neither the USDA, nor Dr. Ramming, nor Ms.

11   Conner, Mr. Fado, and/or Ms. Shaw notified the USPTO of the prior possession and reproduction of

12   the Sweet Scarlet variety by growers who admitted to such possession and reproduction under the

13   Commission's "amnesty" program.

14        101.   The failure of the USDA, Dr. Ramming, and Ms. Conner, Mr. Fado, and/or Ms.

15   Shaw to fully disclose to the USPTO the prior possession and reproduction of the Sweet Scarlet

16   variety by growers who admitted to such possession and reproduction under the Commission's

17   "amnesty" program breached the duty of candor owed to the USPTO in applying for a patent on the

18   Sweet Scarlet variety.  On information and belief, this breach of the duty of candor was done with an

19   intent to deceive the USPTO and constitutes inequitable conduct.  Without the intentional

20   withholding of this material information from the PTO, the PTO would not have issued the '891

21   patent.

22        102.   The inequitable conduct described in the above paragraphs renders the '891

23   unenforceable.

24        103.   The U.S., USDA, and Secretary Vilsack engaged in a discrete and final agency

25   actions by licensing and enforcing the '891 patent.  The acts complained of herein constitute final

26   agency actions by the U.S., USDA and Secretary Vilsack subject to review under the APA.  These

27   acts mark the consummation of the U.S.'s, USDA's and Secretary Vilsack's decision-making

28   process.  These acts are not interlocutory, interim or tentative in nature.  These acts are those by

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

1  which rights or obligations have been determined or from which legal consequences will flow.

2  Specifically, the acts complained of herein have directly determined the rights and obligations of

3  Plaintiffs and the Commission with respect to the growing, distribution, sale, reproduction,

4  propagation, and otherwise free use of the plant material and fruit of the Sweet Scarlet grapevine,

5  and the right to collect royalties and the right to exclude thereof.  These acts are arbitrary,

6  capricious, and otherwise not in accordance with applicable laws and regulations, including the duty

7  of candor before the USPTO.

8       104.    The action of the U.S., USDA and Secretary Vilsack in procuring the '891 patent was

9  arbitrary, capricious and otherwise not in accordance with applicable laws and regulations, because

10  in doing so the U.S., USDA and Secretary Vilsack breached the duty of candor before the USPTO.

11       105.    Plaintiffs have been harmed directly by the U.S.'s, USDA's and Secretary Vilsack's

12  actions, have suffered a legal wrong because of the U.S.'s, USDA's and Secretary Vilsack's actions

13  and have been adversely affected and aggrieved by the U.S.'s, USDA's and Secretary Vilsack's

14  actions.  The U.S.'s, USDA's and Secretary Vilsack's actions have directly impacted Plaintiffs' day-

15  to day business.  As a result of the U.S.'s, USDA's and Secretary Vilsack's actions, Plaintiffs have

16  been (1) restricted from growing, selling, distributing, reproducing, propagating, or otherwise freely

17  using plant material for the Sweet Scarlet grapevine, (2) restricted from growing, selling,

18  reproducing, distributing, propagating or otherwise freely using the fruit for the Sweet Scarlet

19  grapevine, and (3) forced to license and pay royalties to the Commission and its agents with respect

20  to the Sweet Scarlet grapevine plant material.

21       106.    An actual case and controversy exists between Plaintiffs and the Commission, the

22  U.S., the USDA and Secretary Vilsack concerning enforceability of the '891 patent.

23       107.    Plaintiffs are entitled to judgment from this Court that the '891 patent is

24  unenforceable for inequitable conduct during the prosecution of the '891 patent application and that

25  the U.S's, USDA's and Secretary Vilsack's actions in prosecuting, procuring, accepting issuance,

26  maintaining and exclusively licensing to the Commission the '891 patent are final agency actions

27  that are arbitrary, capricious and not otherwise in accordance with applicable laws and regulations at

28  least under the duty of candor before the USPTO.

108.   This Court may and should hold unenforceable the '891 patent pursuant to 5 U.S.C. §706(2)(A), (C), and (D).

## FIFTH CLAIM FOR RELIEF

### (Restitution After Rescission Against the Commission)

109.   Plaintiffs reallege and incorporate by reference all paragraphs 1-108 as if fully set forth herein.

110.   Plaintiffs are entitled to unilaterally rescind the Domestic Grower License Agreements for the plaint varieties covered by the '891, '284, and '299 patents on the basis of the invalidity and unenforceability of the patents.

111.   Once rescinded, Plaintiffs are entitled to recover all funds and other consideration provided by Plaintiffs to nurseries that sold to Plaintiffs the plaint material covered by the Domestic Grower License Agreement, and received by the Commission in the form of royalty payments, which funds and consideration have been wrongfully retained by the Commission.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment Against the Commission)

112.   Plaintiffs reallege and incorporate by reference all paragraphs 1-111 as if fully set forth herein.

113.   By virtue of the acts described above, including the receipt of royalties on patents that were knowingly issued though intentionally false and misleading statements to the PTO, and then subsequently licensing, enforcing, and collecting royalties on the resulting patents, the Commission engaged in a course of wrongful and unjust conduct.

114.   In connection with this wrongful and unjust conduct, the Commission received monies paid by Plaintiffs in the form of royalties.  As a result of the Commission's wrongdoing, the Commission was unjustly enriched.

115.   As a direct result of their improper acts, Plaintiffs suffered losses, and the Commission has been unjustly enriched in an amount to be determined according to proof. Plaintiffs are entitled and hereby seek restitution and disgorgement of the benefits acquired by the Commission as a result of their wrongful and unjust conduct.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs prays for the following relief against Defendants:

A.     Declaring that the '284, '891 and '229 patents are invalid;

B.     Declaring that the '891 patent is unenforceable;

C.     Declaring that the Commission and the USDA committed inequitable conduct in the prosecution and procurement of the '891 patent;

D.     Rescission of the Domestic Grower License Agreement between Plaintiffs and the Commission for the plaint varieties covered by the '891, '284, and '299 patents.

E.     Restitution and disgorgement of all royalty fees obtained by the Commission in connection with the Patented Varieties;

F.     That Plaintiffs recover the costs of this suit together with reasonable attorneys' fees;

G.     That Plaintiffs have such other and further relief as the nature of this case may require and as the Court may deem just and proper.

DATED:  May 23, 2012                    McKool Smith Hennigan, P.C.


                                        By   */s/ Lawrence M. Hadley*
                                             Lawrence M. Hadley

                                        Attorney for Plaintiffs
                                        DELANO FARMS COMPANY; FOUR STAR
                                        FRUIT, INC.; GERAWAN FARMING, INC.

McKool Smith Hennigan, P.C.
LOS ANGELES, CALIFORNIA

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury as to all issues so triable.

3

4

5   DATED:  May 23, 2012                                     McKool Smith Hennigan, P.C.

6

7

8                                                           By:   /s/ Lawrence M. Hadley
                                                                  Lawrence M. Hadley

9                                                           Attorney for Plaintiffs
10                                                          DELANO FARMS COMPANY; FOUR STAR
                                                            FRUIT, INC., and  GERAWAN FARMING,
11                                                          INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKool Smith Hennigan, P.C.
LOS ANGELES, CALIFORNIA