1  **LAWRENCE M. HADLEY (SBN 157728)**
   lhadley@mckoolsmithhennigan.com
2  **MCKOOL SMITH HENNIGAN, P.C.**
   865 South Figueroa Street, Suite 2900
3  Los Angeles, California 90017
   Telephone: (213) 694-1200
4  Fax: (213) 694-1234

5  **RALPH B. WEGIS (SBN 67966)**
   rwegis@ralphwegis.com
6  **THE LAW OFFICES OF RALPH B. WEGIS**
   1930 Truxtun Avenue
7  Bakersfield, CA  92201
   Telephone:  (661) 635-2100
8  Facsimile:  (661) 635-2107

9  **BRIAN C. LEIGHTON (SBN 090907)**
   bleighton@arrival.com
10 **LAW OFFICES OF BRIAN C. LEIGHTON**

11 Attorneys for Plaintiffs
   **DELANO FARMS COMPANY, FOUR STAR FRUIT, INC.;**
12 **GERAWAN FARMING, INC.**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| DELANO FARMS COMPANY; FOUR STAR FRUIT, INC.; GERAWAN FARMING, INC., | Case No.1:07-cv-01610-SEH-JLT |
|---|---|
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY** |
| vs. | TRIAL DATE: June 10, 2013<br>TIME: 8:30 a.m.<br>LOCATION: Fresno Federal Courthouse<br>JUDGE: Hon. Sam E. Haddon |
| THE CALIFORNIA TABLE GRAPE COMMISSION; UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF AGRICULTURE; TOM VILSACK, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE (IN HIS OFFICIAL CAPACITY), | |
| Defendants. | |

1    Plaintiffs Delano Farms Company, Four Star Fruit, Inc., and Gerawan Farming, Inc.
2    (collectively, "Plaintiffs") provide this response to Defendants' May 24, 2013 Notice of
3    Supplemental Authority. Although not contemplated by this Court's Pretrial Order, Defendants also
4    provided a "responsive trial brief" as part of the same document.

5    In their "responsive trial brief," Defendants disagree with Plaintiffs position regarding the
6    need to corroborate at trial Larry Ludy's anticipated testimony that he obtained the Autumn King
7    and Scarlet Royal varieties before the critical date. (Resp. Br. at 6). The Commission also disputes
8    that the positions it argued in the *Sandrini* case and its participation in Larry Ludy's destruction of
9    the relevant grapevines make corroboration unnecessary. Nonetheless, Defendants' concession in
10   their responsive trial brief renders these issues moot. Specifically, Defendants agree that they will
11   not contest at trial that "Jim and Larry Ludy acquired and grafted Autumn King and Scarlet Royal
12   plant material before the critical date…." (Resp. Br. at 8). With that stipulation, Plaintiffs agree that
13   the sole issue to be tried is whether any of the Ludys' uses were a "public use" under 35 U.S.C. §
14   102(b). Thus, the issue for trial is joined.

15   Plaintiffs, however, disagree that the Federal Circuit's decision in *Dey, L.P. v. Sunovion
16   Pharms., Inc.*, 2013 U.S. App. LEXIS 10010 (Fed. Cir. May 20, 2013), "forecloses" any arguments
17   that Plaintiffs have made on the public use issue, or "reinforces" Defendants' assertions that the uses
18   were not invalidating. (Resp. Br. at 1). To the contrary, the *Dey* decision applies the same "public
19   use" standards adopted by this Court in its March 25, 2013 Order on Cross Motions for Summary
20   Judgment. Indeed, applying those same standards, the Federal Circuit in *Dey* reached the same
21   conclusion that this Court reached in its Order on Cross Motions for Summary Judgment: Factual
22   issues -- "principally whether sufficient precautions were taken to exclude members of the public
23   from obtaining information about the potentially invalidating art" -- preclude summary judgment of
24   invalidity. *Dey*, 2013 U.S. App. LEXIS 10010 at *11. This issue identified by the Federal Circuit
25   for trial in *Dey* is essentially the same issue that this Court identified for trial here -- namely,
26   whether the Ludys "used the varieties openly and in the ordinary course of business without an
27   attempt to conceal the use…." (MSJ Order at 29).

28   Defendants' arguments regarding the *Dey* case rest on isolated quotes, largely taken out of

-1-

context. In the context of the entire opinion, it is plain that the *Dey* decision makes no change to the standards applicable to the public use bar. In discussing the legal standards for the public use bar, the Federal Circuit confirmed the following points of law:

1. "To decide whether a prior use constitutes an invalidating 'public use,' we ask 'whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.' *Invitrogen Corp. v. Biocrest Mfg.*, L.P., 424 F.3d 1374, 1380 (Fed. Cir. 2005)." *Id.* at *7.

2. "[W]e have set forth factors that may be helpful in analyzing the question of public use, including 'the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use.' *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004). And we have said that a public use may occur when 'a completed invention is used in public, without restriction.' *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995)." *Id.* at *8.

3. "Although prior uses are often carried out by or at the direction of the inventor-patentee, we have held that 'third party prior use accessible to the public is a section 102(b) bar.' *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005). But even in the case of third-party uses, being 'accessible to the public' still requires public availability; secret or confidential third-party uses do not invalidate later-filed patents." *Id.* at *9.[1]

---

[1] Later in the opinion, the Federal Circuit distinguished between public uses by the inventor (or under the direction of the inventor) and "third-party use cases." *Id.* at *19. In making this distinction, the Federal Circuit found that statements in earlier cases to the effect that a public use "includes any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor" to be inapplicable to third-party use cases. *Id.* (internal citations and emphasis omitted). Although *Dey* involved a alleged invalidating prior use by a third party, the district court had relied significantly on inventor public use cases in granting summary judgment of invalidity. In contrast, here the distinction between inventor public uses and third-party public uses is not determinative. One reason the distinction makes no difference is because Larry Ludy, took no precautions to exclude members of the public from obtaining information about his uses of Autumn King and Scarlet Royal. Accordingly, the public use bar applies under either rule. Nonetheless, Plaintiffs reserve their right to assert on appeal that § 102(b) of the Patent Act makes no distinction between inventor public uses and third-party public uses. *See, e.g.*, *CLS Bank Int'l v. Alice Corp. Pty*, 2013 U.S. App. LEXIS 9493, at *182-*183 (Fed. Cir. May 10, 2013) (Additional Reflections of Chief Judge Rader) ("When all else fails, consult the statute!").

1       4.      "[W]e have applied section 102(b) to invalidate a patent based on third-party use
2 when the third party 'made no attempt to maintain confidentiality or to deliberately evade
3 disclosure,' *Eolas*, 399 F.3d at 1335; made no 'discernible effort to maintain the [invention] as
4 confidential,' *Baxter*, 88 F.3d at 1058; or 'made no efforts to conceal the device or keep anything
5 about it secret,' *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir.
6 1994)." *Id*. at *10.

7       5.      "The degree of confidentiality necessary to avoid a finding of public use naturally
8 depends on the circumstances. For example, if there is no confidentiality agreement in place, the
9 skill and knowledge of those observing an invention can shed light on the degree to which it was
10 kept confidential. Even limited disclosure to those who are skilled enough to know, understand, and
11 "easily demonstrate the invention to others," may mean that there was no reasonable expectation of
12 secrecy and that the invention was therefore in public use. *Netscape Commc'ns Corp. v. Konrad*,
13 295 F.3d 1315, 1321 (Fed. Cir. 2002)." *Id*.

14 Applying these already-settled legal standards, the Federal Circuit found that the district
15 court erred in holding, on summary judgment, that Dey's patents on drug formulations for the
16 treatment of chronic obstructive pulmonary disease were invalid. In holding Dey's patents invalid,
17 the district court found that the defendant's (Sunovion) earlier clinical trials on the same
18 formulations in a product called Brovana resulted in invalidating public uses under § 102(b). But
19 under the facts of the case, the Federal Circuit found that invalidity as a matter of law could not be
20 granted. Specifically, the Federal Circuit found that the following facts raised a triable issue as to
21 whether Sunovion had taken "sufficient precautions . . . to exclude members of the public from
22 obtaining information about the potentially invalidating" drug formulation (*id*. at *11):

23      1.      "The participants [in the clinical studies] . . . were given some information about the
24 study and were subjected to certain controls." *Id*. at *4. But "[p]articipants were not provided any
25 more specific information about the formulation [used in the clinical studies]. A Sunovion witness
26 testified that the specific formulation of Brovana remained '[un]available to the public' and
27 'confidential' even as of the time this action was brought." *Id*. at *5.

28      2.      "The participants in the study signed a consent form stating that the medications

-3-
Case No. 1:07-CV-01610-SEH-JLT                                              RESPONSE TO SUPP. AUTHORITY

1  "must be taken only by the person for whom it was intended" and that subjects would have to keep
2  usage logs and return unused medications." *Id.*

3      3.    "The test administrators [who were the only persons with knowledge of the inventive
4  formulations] were also subject to detailed restrictions. They had to sign a formal 'Clinical
5  Investigator Confidentiality Agreement' directing them to hold all proprietary information in
6  confidence for five years. They were forbidden from disclosing the study protocols or dispensing
7  the drug to any person who was not a trial subject, and they were held accountable for securely
8  storing the drug and maintaining records of its disposition and use. Like the trial subjects, the
9  investigators were instructed that unused supplies of the drug were to be returned upon completion
10 or termination of the study." *Id.* at \*5-\*6.

11      4.    "While [participants] were informed about the active chemical compound and the
12 range of possible dosages being investigated, they were not even told the identity of the particular
13 drug or formulation they were receiving. Also, "while it is true that participants were permitted to
14 discuss the study with their doctors, they were not in a position to reveal the composition of the
15 allegedly invalidating prior art, because they were unaware of the specifics of the inventive
16 formulations." *Id.* at \*15.

17 In short, *Dey* did not change the law regarding public use under § 102(b). But the factual
18 circumstances before the Federal Circuit in *Dey* differ substantially from the facts surrounding the
19 Ludys' uses of Autumn King and Scarlet Royal grapevines. In determining whether a prior use of a
20 claimed invention amounts to an invalidating public use under § 102(b), the facts matter. *Id.* at \*16
21 ("The 'public use' inquiry is replete with factual considerations"). If anything, the contrast in facts
22 between the Ludys' uses of the grapevine inventions prior to the critical date, on the one hand, and
23 the clinical trials at issue in *Dey*, on the other hand, highlight the difference between invalidating
24 public uses and uses that may be sufficiently confidential to avoid a finding of public use. Thus,
25 contrary to Defendants' argument, nothing in *Dey* demands a finding that the Ludys' uses were not
26 public uses under § 102(b).

-4-
Case No. 1:07-CV-01610-SEH-JLT      RESPONSE TO SUPP. AUTHORITY

DATED: June 3, 2013                    McKool Smith Hennigan, P.C.


                                       By: */s/ Lawrence M. Hadley*
                                           Lawrence M. Hadley

                                       **Attorneys for Plaintiffs
                                       DELANO FARMS COMPANY, FOUR
                                       STAR FRUIT, INC.;
                                       GERAWAN FARMING, INC.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 3, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

                                          /s/ *Lawrence M. Hadley*
                                              Lawrence M. Hadley